1  JOHN L. BURRIS, Esq., SBN 69888
   BENJAMIN NISENBAUM, Esq., SBN 222173
2  JAMES COOK, Esq., SBN 300212
   KATHERINE MACELHINEY, Esq., SBN 355532
3  KRITHI BASU, Esq., SBN 359258
4  **Burris, Nisenbaum, Curry & Lacy, LLP**
   Airport Corporate Centre
5  7677 Oakport Street, Suite 1120
   Oakland, California 94621
6  Telephone: (510) 839-5200
   Facsimile: (844) 273-6873
7  John.Burris@bncllaw.com
   Ben.Nisenbaum@bncllaw.com
8  James.Cook@bncllaw.com
   Katherine@bncllaw.com
9  Attorneys for Plaintiffs except Mr. Pugh
10
11 CARMELA CARAMAGNO, SBN 139279
   LAW OFFICES OF CARMELA CARAMAGNO
12 P.O. Box 1811
   Lafayette, CA 94549
13 Telephone: (510) 525-1001
   caramagnolaw@gmail.com
14 Attorney for Plaintiff
   TERRYONN DESHANN PUGH
15

16

### UNITED STATES DISTRICT COURT

17

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

18

19

| | |
|---|---|
| 20 TRENT ALLEN, individually; TERRYONN PUGH, individually; SHAGOOFA KHAN, individually; ADAM CARPENTER, individually; JOSHUA BUTLER, individually; DEJON RICHARDS, individually; DRESHAWN JACKSON, individually; KARDELL SMITH, individually; DANIEL MACKIN, individually; TERRY DWAYNE ROBINSON, JR., individually; MANDINGO CAIN, individually; AMADEO GARCIA, JR., individually; ARON TYSON, individually; DAUNTE GELLINGTON, individually; ROBERT YOUNG, individually; TERRY THOMAS, individually; SHAQUILLE | CASE NO.: 3:23-cv-01895-VC Consolidated with case nos. 23-cv-03773-VC, 3:23-cv-06573-VC, and 4:24-cv-01774-KAW <br><br> FOURTH AMENDED CONSOLIDATED COMPLAINT FOR DAMAGES <br><br> DEMAND FOR JURY TRIAL <br><br> Consol. Complaint Filed: 02/02/2024 <br> Complaint Filed (Allen): 04/19/2023 <br> Complaint Filed (Robinson): 08/11/2023 <br> Deemed Related: 11/08/2023 <br> Complaint Filed (Pugh): 03/24/2024 |

HILLARD, individually; DANYEL EARL
LACY, individually; KAYCEE SUITTER,
individually; MARCELL LEWIS,
individually; GREGORIO YARBOROUGH,
individually; QUINCY MASON, individually;
TAHJAY MCCULLOUGH, individually;
JAMARI ALLEN; individually;

        Plaintiffs,

    v.

CITY OF ANTIOCH, a municipal
corporation; ROB BERNALL, individually
and in his official capacity as the City
Manager for the CITY OF ANTIOCH;
CORNELIUS JOHNSON, individually and in
his official capacity as the City Manager for
the CITY OF ANTIOCH; FORREST EBBS,
individually and in his official capacity as the
City Manager for the CITY OF ANTIOCH;
KWAME REED, individually and in his
official capacity as the City Manager for the
CITY OF ANTIOCH; TAMMANY
BROOKS, individually and in his official
capacity as police chief for the CITY OF
ANTIOCH; TONY MOREFIELD,
individually and in his official capacity as
interim police chief for the CITY OF
ANTIOCH; STEVEN FORD, individually and
in his official capacity as police chief for the
CITY OF ANTIOCH; MATTHEW NUTT,
individually and in his official capacity as a
police officer for the CITY OF ANTIOCH;
JOSH EVANS, individually and in his official
capacity as a police sergeant for the CITY OF
ANTIOCH; ERIC ROMBOUGH, individually
and in his official capacity as a police officer
for the CITY OF ANTIOCH; MORTEZA
AMIRI, individually and in his official
capacity as a police officer for the CITY OF
ANTIOCH; SCOTT DUGGAR, individually
and in his official capacity as a police officer
for the CITY OF ANTIOCH; JOHN
RAMIREZ, individually and in his official
capacity as a police officer for the CITY OF
ANTIOCH; TIMOTHY MANLY
WILLIAMS, individually and in his official

Deemed Consolidated:    06/26/2024
Trial Date:          None Yet Set

capacity as a police officer for the CITY OF
ANTIOCH; TOM LENDERMAN,
individually and in his official capacity as a
police officer for the CITY OF ANTIOCH;
LOREN BLEDSOE, individually and in his
official capacity as a police sergeant for the
CITY OF ANTIOCH; THOMAS SMITH,
individually and in his official capacity as a
police officer for the CITY OF ANTIOCH;
CALVIN PRIETO, individually and in his
official capacity as a police officer for the
CITY OF ANTIOCH; ANDREA
RODRIGUEZ, individually and in her official
capacity as a police officer for the CITY OF
ANTIOCH; JONATHAN ADAMS,
individually and in his official capacity as a
police officer for the CITY OF ANTIOCH;
DEVON WENGER, individually and in his
official capacity as a police officer for the
CITY OF ANTIOCH; DANIEL HARRIS,
individually and in his official capacity as a
police officer for the CITY OF ANTIOCH;
ROBERT GERBER, individually and in his
official capacity as a police officer for the
CITY OF ANTIOCH; KYLE HILL,
individually and in his official capacity as a
police officer for the CITY OF ANTIOCH;
Officer BROCK MARCOTTE, individually
and in his official capacity as a police officer
for the CITY OF ANTIOCH; AARON
HUGHES, individually and in his official
capacity as a police officer for the CITY OF
ANTIOCH; RYAN GEIS, individually and in
his official capacity as a police officer for the
CITY OF ANTIOCH; RICK HOFFMAN,
individually and in his official capacity as a
sergeant for the CITY OF ANTIOCH; JIMMY
WISECARVER, individually and in his
official capacity as a sergeant for the CITY OF
ANTIOCH; JOHN FORTNER, individually
and in his official capacity as a lieutenant for
the CITY OF ANTIOCH; BRAYTON
MILNER, individually and in his official
capacity as a police officer for the CITY OF
ANTIOCH; DEVIN EIGARD, individually
and in his official capacity as a police officer
for the CITY OF ANTIOCH;
CONSTANTINE KAWALYA, individually

and in his official capacity as a police officer
for the CITY OF ANTIOCH; RYAN DUFF,
individually and in his official capacity as a
police officer for the CITY OF ANTIOCH;
JACOB KING, individually and in his official
capacity as a police officer for the CITY OF
ANTIOCH; GUSTAVO JIMENEZ,
individually and in his official capacity as a
police officer for the CITY OF ANTIOCH;
ASHLEY LUNDIN, individually and in her
official capacity as a police officer for the
CITY OF ANTIOCH; GARY LOWTHER,
individually and in his official capacity as a
police sergeant for the CITY OF ANTIOCH;
DUSTIN DIBBLE, individually and in his
official capacity as a police officer for the
CITY OF ANTIOCH; KYLE SMITH,
individually and in his official capacity as a
police officer for the CITY OF ANTIOCH;
JAKE EWART, individually and in his official
capacity as a police officer for the CITY OF
ANTIOCH; JAMES BEDGOOD, individually
and in his official capacity as a police officer
for the CITY OF ANTIOCH; ROBERT
GREEN, individually and in his official
capacity as a sergeant for the CITY OF
ANTIOCH; JAMES STENGER, individually
and in his official capacity as a sergeant for the
CITY OF ANTIOCH; RANDALL GRAGG,
individually and in his official capacity as a
police officer for the CITY OF ANTIOCH;
KEVIN TJAHJADI, individually and in his
official capacity as a police officer for the
CITY OF ANTIOCH; RYAN MCDONALD,
individually and in his official capacity as a
police officer for the CITY OF ANTIOCH;
MATTHEW KOCH, individually and in his
official capacity as a sergeant for the CITY OF
ANTIOCH; DANIEL NAVARRETTE,
individually and in his official capacity as a
police officer for the CITY OF ANTIOCH;
CASEY BROGDON, individually and in his
official capacity as a police officer for the
CITY OF ANTIOCH; JONATHAN
DOWNIE, individually and in his official
capacity as a police officer for the CITY OF
ANTIOCH; STEVEN MILLER, individually
and in his official capacity as a police officer

for the CITY OF ANTIOCH; ANTIOCH POLICE DEPARTMENT OFFICER MOORE, individually and in his official capacity as a police officer for the CITY OF ANTIOCH; and DOES 26-100, inclusive,

Defendants.

## **INTRODUCTION**

1.       In the early 2000s, Black and brown people migrated away from east and west Oakland's urban sprawl, blight and oppressive policing. They relocated east to cities such as Tracy, Pittsburgh, and Antioch. They sought the imprimatur of authentic citizenship intrinsic in the greenery and rolling hills of those East Bay communities. Instead, these people were subjected to a systematic and intentional effort to repress their existence through discriminatory and violent policing. The victims complained about the conspiracy, spoken or unspoken, of abuse over the years. Their calls for justice and reform went unheard for years and years. On April 11, 2023, local media published certified proof of the depth of many Antioch Police Department Officers' bigotry, racism, willingness to falsify evidence, and their celebration of their own uses of unconstitutional and unreasonable force.

2.       On March 28, 2023, the Office of the District Attorney of Contra Costa County published an investigative report detailing crimes of moral turpitude and criminal offenses committed by sworn law enforcement officers within the CITY OF ANTIOCH Police Department. From 2019-2022, Antioch police officers and sergeants exchanged hundreds of salacious text messages riddled with vile and offensive language about community members. In those text threads, officers bragged about using excessive force and beating arrest subjects so severely that the officers themselves hurt their hands and feet. The District Attorney's report detailed "derogatory, homophobic, and sexually explicit language and photographs shared by members of the Antioch Police Department that demonstrates their racial bias and animus towards African Americans and other people of color in the community." Over a period of at least four years, the Antioch Police Department officers regularly referred to citizens as "niggers," "niggas," "monkeys," "gorillas,"

"faggots," "water buffalos," "cunts," "pussies," "fat bitches," and more. Officers celebrated the violent targeting of Black community members ("we just ran down a monkey"; "I'm only stopping them cuz they black [sic]"; "I'll bury that nigger in my fields"; "I can't wait to forty all of them"). Furthermore, officers admitted to serious acts of lying and falsification ("we'll just say he refused to comply"; "I sometimes just say people gave me a full confession when they didn't. gets filed easier [sic]"). Appallingly, at least 45 officers participated in or were aware of this misconduct and did nothing.

3.      The widespread abuse by large numbers of the Antioch Police Department population, detailed in the investigative report, highlights a pattern and practice of discriminatory law enforcement based on race and gender. Officers engaged in vile derogatory speech, physical mistreatment of community members, and violations of individual civil rights. The abuses in question were the product of a culture of intolerance within the CITY OF ANTIOCH Police Department. This culture is rooted in the deliberate indifference of high-ranking City officials, who have routinely acquiesced in the misconduct and otherwise failed to take necessary measures to curtail and prevent it. Despite the repeated and frequent nature of the misconduct and civil rights violations committed by its officers, high ranking CITY OF ANTIOCH officials failed to take any or appropriate remedial action. As a result, officers engaged in repeated and serious acts of misconduct and civil rights violations against citizens living, visiting, and/or traveling in Antioch.

4.      Plaintiffs, all of whom experienced malicious treatment by Antioch Police Department officers during the time frame in which officers exchanged these text messages, recently discovered that the officers' treatment of them was based in racial animus, misogyny, homophobia, and other offensive conduct. Plaintiffs have reason to believe that each of their interactions with Antioch Police Department officers constituted numerous civil rights violations. Plaintiffs are informed and believe and thereon allege that said civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, false imprisonment, malicious prosecution, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct.

5.     Plaintiffs, demanding a jury trial, bring this action against the above-named Defendants, inclusive, pursuant to Title 42 U.S.C. §§ 1983 and 1988, and the Fourth Amendment to the United States Constitution. It is alleged that these violations were committed during the course and scope of the above-mentioned law enforcement officers' employment with the aforementioned government agencies and DOES 26-100.

## JURISDICTION AND VENUE

6.     This action arises under Title 42 of the United States Code, §§ 1983, 1985, and 1986. Title 28 of the United States Code, §§ 1331 and 1343 confers jurisdiction upon this Court. The unlawful acts and practices alleged herein occurred in California, which is within the judicial district of this Court. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants are believed to reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## PARTIES

7.     Plaintiff **TRENT ALLEN** ("ALLEN") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. On March 30, 2021, Mr. ALLEN was arrested and brutally beaten by Defendant CITY OF ANTIOCH Police Officers ERIC ROMBOUGH, BROCK MARCOTTE, and JOHN RAMIREZ. Leading up to ALLEN's arrest, Defendant ROMBOUGH exchanged text messages about TRENT ALLEN with many CITY OF ANTIOCH Police Officers, including Defendant Officers ROBERT GERBER, JONATHAN ADAMS, and THOMAS SMITH. These messages included photographs of TRENT ALLEN before and after his arrest, including injuries Mr. ALLEN sustained during the arrest, and describing Mr. ALLEN in homophobic and racially-charged language. Notably, Defendant ROMBOUGH bragged about his conduct in arresting TRENT ALLEN, stating in text messages that he "40d [ALLEN] right next to his throat," gave ALLEN "6 muzzle thumps," and that he tried to "kick [ALLEN'S] head over the fence." ROMBOUGH also stated "I tried to knock him unconscious" and referred to ALLEN as "faggot" and "nigger" multiple times. Defendant CITY OF ANTIOCH Police Officers, including Defendants Officer MARCOTTE, TIMOTHY MANLY-WILLIAMS, SCOTT DUGGAR, JOSH EVANS, GARCIA, ADAMS, SMITH, and GERBER, each participated in text

conversations celebrating the violence ROMBOUGH inflicted on TRENT ALLEN during his arrest. Concurrent to Defendant CITY OF ANTIOCH Police Department's criminal investigation into TRENT ALLEN, Defendant MANLY WILLIAMS did knowingly engage in illegal wiretap and destruction of evidence. TRENT ALLEN remains in-custody, having been incarcerated since his arrest on March 30, 2021.

8.     Plaintiff **TERRYONN DESHANN PUGH** ("PUGH") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. PUGH was arrested by Defendant Officers ERIC ROMBOUGH, BROCK MARCOTTE, TIMOTHY MANLY WILLIAMS, SCOTT DUGGAR, and RYAN MCDONALD on March 31, 2021. ROMBOUGH conspired with DEFENDANTS to shoot Plaintiff PUGH with 40 mm rubber bullets in the days leading up to PUGH's arrest. Defendant ROMBOUGH bragged about his conduct following Plaintiff PUGH's arrest, took pictures of PUGH's injured buttocks while PUGH was in the hospital following the shooting, and sent the photograph to civilians in violation of PUGH's rights of privacy. PUGH was also arrested, brutalized, and called racial slurs by Defendant Officers CALVIN PRIETO, ANDREA RODRIGUEZ, and MATTHEW NUTT on November 10, 2020.

9.     Plaintiff **SHAGOOFA KHAN** ("KHAN") has been and is a resident of California and a United States Citizen. She brings this action on her own behalf. Ms. KHAN was arrested and prosecuted maliciously and without provocation or cause by Defendant CITY OF ANTIOCH Police Officers on January 15, 2021. Ms. KHAN was charged with felony arson and battery on an officer. KHAN completed diversion, however she never entered a plea agreement. The charges were eventually dismissed. The arresting and investigating Defendant CITY OF ANTIOCH Officers, included but not limited to Defendants EVANS, MANLY WILLIAMS, TOM LENDERMAN, LOREN BLEDSOE, THOMAS SMITH, and CASEY BROGDON, are key participants in the ongoing investigation by Federal Agencies into the discriminatory text messages sent among CITY OF ANTIOCH Police Department officers and sergeants. Concurrent with Ms. KHAN's arrest, Defendant Officer EVANS sent racist and misogynistic text messages about her to multiple CITY OF ANTIOCH officers, including but not limited to Defendant Officers ROMBOUGH, MANLY

1    WILLIAMS, BLEDSOE, T. SMITH, LENDERMAN, STENGER, HOFFMAN, WISECARVER,

2    and BROGDON, in which EVANS described Ms. Khan as an "[A]rabian nights cum dumpster."

3        10.    Plaintiff **ADAM CARPENTER** ("CARPENTER") has been and is a resident of

4    California and a United States Citizen. He brings this action on his own behalf. CARPENTER was

5    arrested maliciously and without provocation or cause on November 3, 2020 by multiple CITY OF

6    ANTIOCH Police Officers, including Defendants MORTEZA AMIRI, ROMBOUGH, DUGGAR,

7    MARCOTTE, and MANLY WILLIAMS. From January 2020 up until the date of his arrest, these

8    and other CITY OF ANTIOCH Police Officers conducted nearly ten traffic stops on Mr.

9    CARPENTER. Concurrent with CARPENTER's arrest and traffic stops, Defendant Officers

10   including ROMBOUGH, DUGGAR, MARCOTTE, AMIRI, and MANLY WILLIAMS, planned

11   via text message to arrest and tow people for "driving while black," and referred to the subjects of

12   such stops as "monkeys," "gorillas," "niggers," and "turds."[1] Defendant AMIRI texted Defendant

13   Officers to "keep their cameras off," and that the "game plan" was to "violate rights, forty people,

14   and catch turds." Defendants MARCOTTE and ROMBOUGH similarly texted describing their on-

15   duty conduct near the time of CARPENTER's arrest as "violating civil rights." While Mr.

16   CARPENTER was subjected to multiple traffic stops, Defendant Officers RODRIGUEZ and

17   PRIETO agreed to write a large amount of traffic citations in and around Antioch, targeting a

18   specific group of people they referred to as "niggers."

19       11.    Plaintiff **JOSHUA BUTLER** ("BUTLER") has been and is a resident of California

20   and a United States Citizen. He brings this action on his own behalf. Mr. BUTLER was arrested

21   maliciously and without provocation or cause by Defendant CITY OF ANTIOCH Police Officers

22   on February 3, 2022. Multiple Defendant officers, including JOSH EVANS, BRAYTON MILNER,

23   and KYLE HILL, arrested BUTLER for allegedly discharging a firearm, despite never finding a

24   weapon. Concurrent with Mr. BUTLER's arrest, Defendant CITY OF ANTIOCH Police Officers,

25   including Defendant Officer EVANS, sent numerous text messages about Black people, calling

26   them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.:

27   

28   _____
     [1] Defendants use language describing feces such as "[number] 2's", "pieces of shit", and "turds" throughout their text threads as a reference to Black and Brown people.

"faggot," "pussies," "cunt," "fat bitch"). EVANS sent text messages to other CITY OF ANTIOCH Officers in which he lamented that bruises "never look as good on black guys." In these text messages, Defendant EVANS regularly referred to Black people as "niggers." Discussing an unknown subject, EVANS texted Defendant AMIRI: "I'm going to bury that nigger in my fields" and "yes, it was a hard R on purpose." Since the date of the arrest, DEFENDANTS Officers of Defendant CITY OF ANTIOCH have conducted nearly ten traffic stops on Mr. BUTLER, each time verbally accosting him with racist slurs and obscenities. None of these traffic stops have resulted in additional arrests.  On May 26, 2023, BUTLER's firearm case was dismissed.

12.    Plaintiff **DEJON RICHARDS** ("RICHARDS") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. Mr. RICHARDS was arrested and brutalized in 2020 by Defendant CITY OF ANTIOCH Police Department Officers, including Defendant Officer DUGGAR. During the arrest, DUGGAR repeatedly called RICHARDS a "bitch," told him that he had no rights, and slammed RICHARDS' head on the car–causing a laceration to the left side of his face. Concurrent to Mr. RICHARDS' arrest, DUGGAR sent text messages to other Antioch officers in which he referred to Black people as "niggas." Around the time of RICHARDS' arrest, Defendant DUGGAR also participated in text message threads with Defendant CITY OF ANTIOCH Police Officers in which they discussed plans to violate civil rights while on duty, and celebrated images of injuries inflicted by CITY OF ANTIOCH Police Officers. One image was so offensive it caused a Defendant CITY OF ANTIOCH Police Sergeant to respond: "we're all going to prison."  Mr. RICHARDS was incarcerated for one year prior to his case being dismissed.

13.    Plaintiff **DRESHAWN JACKSON** ("JACKSON") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. JACKSON was arrested on February 21, 2018 by CITY OF ANTIOCH Police Department Officers, including Defendant CITY OF ANTIOCH Police Officer ROMBOUGH. During the arrest, ROMBOUGH admitted to JACKSON that he had "a beer or two," then demanded that JACKSON get out of the car. JACKSON was charged with possession of a firearm and was incarcerated for 15 months. In April 2022, JACKSON's case was dismissed by the District Attorney. While employed as a

Defendant CITY OF ANTIOCH Police officer, Defendant ROMBOUGH along with Defendants AMIRI and WENGER conspired and agreed together and with other CITY OF ANTIOCH Police officers to injure, oppress, threaten, and intimidate residents of Antioch, California and the surrounding districts. As a part of this scheme, ROMBOUGH, AMIRI, and WENGER used force as punishment to subjects beyond any imposed by the criminal justice system, and repeatedly referenced violating civil rights while acting in their official capacity for Defendant CITY OF ANTIOCH. Defendant ROMBOUGH proudly admitted to brutalizing arrestees on multiple occasions and often referred to arrestees with homophobic and racially-charged language. Moreover, concurrent to the arrest of DRESHAWN JACKSON, Defendant ROMBOUGH was collecting spent 40 mm ammunitions which he used to create a "trophy flag" to commemorate his use of force on individuals in and around Antioch. ROMBOUGH bragged about this flag in multiple text messages with Defendant CITY OF ANTIOCH Police Department officers and others.

14. Plaintiff **KARDELL SMITH** ("KARDELL SMITH") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. KARDELL SMITH was arrested on state possession charges in 2019 by Defendant CITY OF ANTIOCH Police Officers, including Defendant Officers AMIRI and ROMBOUGH. KARDELL SMITH served parole and then later was picked up on the same charges by the federal government. On April 13, 2022, a federal judge dismissed KARDELL SMITH's case, dropped every charge, and withdrew all previous pleadings. Concurrent with SMITH's arrest Defendant Officers including ROMBOUGH and AMIRI exchanged text messages about Black people in and around Antioch, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). AMIRI and ROMBOUGH proudly admitted to brutalizing arrestees on multiple occasions within these threads. ROMBOUGH boasted about "violating civil rights" and "only stopping [people] cuz they black [sic]." AMIRI admitted to serious offenses including falsification, claiming: "I sometimes just say people gave me a full confession when they didn't. gets filed easier [sic]."

15. Plaintiff **DANIEL MACKIN** ("MACKIN") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. MACKIN was brutalized on

June 15, 2021, by CITY OF ANTIOCH Police Department Officers, including Defendant Officers ROMBOUGH, MARCOTTE, and MILNER, in the presence of Defendant SERGEANT MATTHEW KOCH, during the execution of a search warrant operation set up by Defendant Officer ADAMS. As a result of this encounter, Mr. MACKIN was shot with a 40 mm less-lethal launcher and beaten so severely that he sustained a metacarpal fracture in his foot, spent six months in a wheelchair, and underwent multiple surgeries. About two weeks before the encounter, ROMBOUGH and MILNER exchanged text messages planning in advance to deploy a 40 mm less-lethal launcher against MACKIN. Two days before arresting MACKIN, Defendant CITY OF ANTIOCH Officers ROMBOUGH and AMIRI made plans to "dog bite" and "40mm deployment" when they would next be on duty together, i.e., the day Mr. MACKIN was subjected to the use of extreme force by Defendants. In the days following Mr. MACKIN's arrest, AMIRI and ROMBOUGH exchanged texts about an email from Defendant CITY OF ANTIOCH Police Department leadership, regarding "the new BWC and MVAR policies are effective immediately, and the use of these devices should start at the beginning of the next scheduled shift." AMIRI and ROMBOUGH both agreed they were "over it," and later strategized to avoid being caught on each other's cameras. Officers AMIRI and ROMBOUGH have since been federally indicted for violating civil rights during the time frame in which Mr. MACKIN's violent arrest occurred.

16.    Plaintiff **TERRY DWAYNE ROBINSON, JR.** ("ROBINSON") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. ROBINSON was arrested and brutalized on July 1, 2022, by Defendant CITY OF ANTIOCH police officers, including Defendant Officers MATTHEW NUTT, DUSTIN DIBBLE, and JOSHUA EVANS. NUTT is implicated in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. NUTT was a member of these group text changes and received all of the salacious text messages uncovered in this scandal.

17.    Plaintiff **MANDINGO CAIN** ("CAIN") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. CAIN was searched and arrested without provocation or cause by CITY OF ANTIOCH Defendant Officers DEVIN EIGARD, CONSTANTINE KAWALYA, T. SMITH, JONATHAN DOWNIE, and STEVEN MILLER on

October 3, 2022. The officers accused CAIN of illegally transporting a firearm. Mr. CAIN was charged, but the charges were eventually dismissed. At least one of the Defendant CITY OF ANTIOCH officers is a key participant in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants.

18.    Plaintiff **AMADEO GARCIA, JR.** ("GARCIA") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. GARCIA was arrested and brutalized on December 19, 2022, by multiple Defendant CITY OF ANTIOCH Police Officers who conducted an unlawful search of GARCIA's vehicle. GARCIA was charged with multiple counts of possession, but these charges were eventually dismissed.

19.    Plaintiff **ARON TYSON** ("TYSON") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. On October 3, 2020, Mr. TYSON was arrested and brutalized by Defendant CITY OF ANTIOCH Police Officers, including AMIRI, when they conducted an unlawful search of TYSON's vehicle. TYSON was charged with possession, but the charges were eventually dismissed in August 2022.

20.    Plaintiff **DAUNTE GELLINGTON** ("GELLINGTON") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf.  Mr. GELLINGTON was brutalized on April 30, 2023, by several CITY OF ANTIOCH Police Officers who falsely accused him of threatening his brother. Mr.  GELLINGTON was beaten so severely by CITY OF ANTIOCH Police Officers that he sustained a broken toe, bruised ribs, and scars on his knees and shoulders.

21.    Plaintiff **ROBERT YOUNG** ("YOUNG") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. YOUNG was harassed and robbed on July 3, 2022 by Defendant CITY OF ANTIOCH Police Officer ERIC ROMBOUGH. Officer ROMBOUGH is a key participant in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. ROMBOUGH boasted about "violating civil rights" and collecting trophies to commemorate the violence he inflicted on his victims.

22.     Plaintiff **TERRY THOMAS** ("THOMAS") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. THOMAS was slammed to the ground and arrested during an illegal search of his mother's home on July 12, 2022, by several CITY OF ANTIOCH Police Officers, including Defendants ROMBOUGH, GERBER, HILL, and DUGGAR. TERRY THOMAS was charged with murder and incarcerated, but the charges were ultimately dismissed in August 2023. Officer ROMBOUGH is a key participant in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. ROMBOUGH boasted about "violating civil rights" and "only stopping [people] cuz they black [sic]." Officer GERBER is also implicated in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. GERBER sent text messages containing photos of gorillas and referring to Black people as "fag[s]" to other Antioch officers.

23.     Plaintiff **SHAQUILLE HILLARD** ("HILLARD") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. HILLARD was searched and arrested without provocation or cause in April, 2022, by CITY OF ANTIOCH Police Department officers, including but not limited to Defendant Officers HUGHES and AMIRI. Mr. HILLARD was illegally searched and charged with gun possession. HILLARD was also harassed by CITY OF ANTIOCH Police Officers throughout multiple incidents occurring between January of 2020 and September of 2022. Concurrently, Defendant CITY OF ANTIOCH Police Officers, including AMIRI and HUGHES, planned and celebrated forcible civil rights violations within discriminatory text messages among Antioch Police Department officers and sergeants. During this time Defendant AMIRI also admitted to serious offenses of falsification, claiming: "I sometimes just say people gave me a full confession when they didn't. gets filed easier [sic]."

24.     Plaintiff **DANYEL EARL LACY** ("LACY") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. Mr. LACY was maliciously targeted, wrongfully searched, and wrongfully arrested by several CITY OF ANTIOCH Police Officers including Defendant Officers ROMBOUGH, MANLY WILLIAMS, HUGHES, and KYLE SMITH, on April 22, 2020 at 1600 Buchanan Road in Antioch, CA.  The CITY OF

ANTIOCH police officers searched a car that did not belong to LACY, claimed to find a firearm, and then arrested LACY. Mr. LACY was charged with illegal possession of a firearm and spent three months in jail, but all charges were eventually dismissed in August 2023.

25.     Plaintiff **KAYCEE SUITTER** ("SUITTER") has been and is a resident of California and a United States Citizen. She brings this action on her own behalf. On December 19, 2022, Ms. SUITTER was unlawfully held, handcuffed, and searched in a parking garage while with her boyfriend, Plaintiff AMADEO GARCIA, by Defendant CITY OF ANTIOCH Police Officers including but not limited to Defendant Officers MARCOTTE, SMITH, and RODRIGUEZ.  After the search SUITTER was charged with possession of cocaine with intent to distribute; possession of fentanyl and methamphetamine; and possession of a firearm, but all charges were dismissed on December 27, 2022.  Defendant Officers MARCOTTE, SMITH, and RODRIGUEZ are all key participants in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. Defendant Officer SMITH sent text messages to other CITY OF ANTIOCH Police Officers in which he referred to Black people as "niggas" and to women as "bitches." Defendant Officer RODRIGUEZ sent texts agreeing to target Black people for traffic citations, stating that it "will be easy" and "a good time."

26.     Plaintiff **MARCELL LEWIS** ("LEWIS") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. On November 15, 2020, Mr. LEWIS was unlawfully held, handcuffed, and searched by CITY OF ANTIOCH police officers including, but not limited to, Defendant Officers AMIRI and DANIEL NAVARRETTE. Subsequent to Mr. LEWIS's encounter with CITY OF ANTIOCH Police Officers, Defendant AMIRI shared in a text message that the word "nigger" is commonly "commonly used around the [CITY OF ANTIOCH Police Department] tbh. Every group messages with supervisors and IA sgt's matter of fact it was just said today in our group thread with multiple supervisors in it."

27.     Plaintiff **GREGORIO YARBOROUGH** ("YARBOROUGH") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. On August 15, 2023, Defendant CITY OF ANTIOCH Police Officers RYAN GEIS, RYAN DUFF, JACOB KING, GUSTAVO JIMENEZ, JONATHAN DOWNIE, ASHLEY LUNDIN, and GARY

1    LOWTHER used excessive force when they held YARBOROUGH at gunpoint and shot him with a

2    40 mm less-lethal launcher without justification.

3         28.    Plaintiff **QUINCY MASON** ("MASON") has been and is a resident of California

4    and a United States Citizen. He brings this action on his own behalf. In September of 2018, CITY

5    OF ANITIOCH Police Department officers, including Defendants EVANS, AMIRI, STENGER,

6    KYLE SMITH, TJAHJADI, and HUGHES, assaulted Mr. MASON without justification.

7         29.    Plaintiff **TAHJAY MCCULLOUGH** ("MCCULLOUGH") has been and is a

8    resident of California and a United States Citizen. He brings this action on his own behalf. On

9    November 10, 2020, CITY OF ANTIOCH Police Department officers, including Defendant

10   Officers PRIETO, RODRIQUEZ, AMIRI, and MOORE, physically assaulted Mr. MCCULLOUGH

11   without justification.

12        30.    Plaintiff **JAMARI ALLEN** ("JAMARI ALLEN") has been and is a resident of

13   California and a United States Citizen. He brings this action on his own behalf. On approximately

14   August 21, 2020, several CITY OF ANTIOCH Police Department officers, including Defendants

15   AMIRI, WENGER, and ROBERT GREEN, needlessly and repeatedly sicced an Antioch Police

16   Department canine on JAMARI ALLEN to cause him injury after he had already surrendered and

17   was in the custody of Defendant Officers.

18        31.    Defendant **CITY OF ANTIOCH** ("CITY") is an incorporated public entity duly

19   authorized and existing as such in and under the laws of the State of California; and at all times

20   herein mentioned, Defendant City has possessed the power and authority to adopt policies and

21   prescribe rules, regulations and practices affecting the operation of the CITY OF ANTIOCH Police

22   Department and its tactics, methods, practices, customs and usage. At all relevant times, Defendant

23   CITY was the employer of Defendant OFFICERS, individually and as peace officers.

24        32.    Defendant **ROB BERNAL** ("BERNAL"), at all times mentioned herein, was

25   employed by Defendant CITY OF ANTIOCH as the City Manager from March 2017, through the

26   end of the year 2021. He is being sued individually and in his official capacity as the Manager for

27   the CITY OF ANTIOCH.  Plaintiffs allege that as City Manager, BERNAL had final policy-making

28   authority over CITY OF ANTIOCH POLICE DEPARTMENT policies and procedures.  At all

material times, BERNAL was responsible for supervising, enacting, and enforcing CITY OF ANTIOCH POLICE DEPARTMENT conduct, policies, and practices including the absence of needed policies and practices; and for the hiring, retention, supervision, and training of employees, agents, and leadership of CITY Police Department.

33.    Defendant **CORNELIUS JOHNSON** ("JOHNSON"), at all times mentioned herein, was employed by Defendant CITY OF ANTIOCH as the City Manager from or around December 16, 2021, through approximately July 14, 2023. He is being sued individually and in his official capacity as the Manager for the CITY OF ANTIOCH.  Plaintiffs allege that as City Manager, JOHNSON had final policy-making authority over CITY OF ANTIOCH POLICE DEPARTMENT policies and procedures.  At all material times, JOHNSON was responsible for supervising, enacting, and enforcing CITY OF ANTIOCH POLICE DEPARTMENT conduct, policies, and practices including the absence of needed policies and practices; and for the hiring, retention, supervision, and training of employees, agents, and leadership of CITY Police Department.

34.    Defendant **FOREST EBBS** ("EBBS"), at all times mentioned herein, was employed by Defendant CITY OF ANTIOCH as the City Manager following the resignation of JOHNSON. He is being sued individually and in his official capacity as the Manager for the CITY OF ANTIOCH.  Plaintiffs allege that as City Manager, EBBS had final policy-making authority over CITY OF ANTIOCH POLICE DEPARTMENT policies and procedures. At all material times, EBBS was responsible for supervising, enacting, and enforcing CITY OF ANTIOCH POLICE DEPARTMENT conduct, policies, and practices including the absence of needed policies and practices; and for the hiring, retention, supervision, and training of employees, agents, and leadership of CITY Police Department.

35.    Defendant **KWAME REED** ("REED"), at all times mentioned herein, was employed by Defendant CITY OF ANTIOCH as the City Manager starting on or about June 26, 2023.  He is being sued individually and in his official capacity as the Manager for the CITY OF ANTIOCH.  Plaintiffs allege that as City Manager, REED has final policy-making authority over CITY OF ANTIOCH POLICE DEPARTMENT policies and procedures. At all material times, REED was responsible for supervising, enacting, and enforcing CITY OF ANTIOCH POLICE

1  DEPARTMENT conduct, policies, and practices including the absence of needed policies and

2  practices; and for the hiring, retention, supervision, and training of employees, agents, and

3  leadership of CITY Police Department.

4          36.     Defendant **CITY POLICE CHIEF TAMMANY BROOKS** ("BROOKS"), at all

5  times mentioned herein, was employed by Defendant CITY as the Chief of Police for the CITY,

6  from May 2017 through October 2021, and was acting within the course and scope of that

7  employment. He is being sued individually and in his official capacity as the Chief of Police for the

8  CITY.  Plaintiffs allege Defendant BROOKS was aware of the openly racist conduct of the police

9  officers he employed, their use of excessive force as set forth herein, the widespread acceptance

10  within the Antioch Police Department of unconstitutional actions by Antioch police officers as set

11  forth in the instant Complaint. On January 13, 2021, at approximately 8:22 pm, Defendant AMIRI

12  sent text messages to Defendant CITY OF ANTIOCH Police officers and sergeants, including

13  Defendants EVANS, GERBER, MILNER, EWART, DUGGAR, RAMIREZ, MARCOTTEE,

14  LENDERMAN, ADAMS, MANLY WILLIAMS, FORTNER, HOFFMAN, WISECARVER,

15  STENGER, GRAGG, and multiple DOES. The texts constrained information from a recent news

16  article which accounted that cell phones were seized on large scale from City of Oakland Police

17  Officers as part of an investigation into sexist and racist comments made by Oakland Police

18  Officers. In response to this text from AMIRI, several CITY OF ANTIOCH Police Officers and

19  Sergeants replied, responded with texts which described plans to destroy similar evidence from their

20  own phones if they were to be confiscated. One CITY Police Sergeant stated that Chief

21  TAMMANY BROOKS "knew something we don't when he sent that email about his new work

22  phone number and talking about PRA requests."

23          37.     Plaintiffs allege that Defendant BROOKS was aware of the misconduct by CITY OF

24  ANTIOCH Police Officers against Plaintiffs and CITY OF ANTIOCH residents, knowingly failed

25  to take any remedial measures, and furthermore tolerated, encouraged, and ratified the repeated and

26  widespread pattern and practice of unconstitutional actions by Defendant CITY OF ANTIOCH

27  Police Officers as set forth herein.

28

38.     Defendant **CITY INTERIM POLICE CHIEF TONY MOREFIELD**
("MOREFIELD"), at all times mentioned herein, was employed by Defendant CITY as the Interim
Chief of Police for the CITY, from October 2021 through May 2022, and was acting within the
course and scope of that employment. He is being sued individually and in his official capacity as
the Interim Chief of Police for the CITY. Plaintiffs allege Defendant MOREFIELD was aware of
the openly racist conduct of the police officers he employed, their use of excessive force as set forth
herein, the widespread acceptance within the Antioch Police Department of unconstitutional actions
by Antioch police officers as set forth in the instant Complaint, and failed to take any remedial
measures, and tolerated, encouraged and ratified the repeated and widespread pattern and practice of
Unconstitutional actions by Defendant CITY OF ANTIOCH police officers as set forth herein.

39.     Defendant **CITY POLICE CHIEF STEVEN FORD** ("FORD"), at all times
mentioned herein, was employed by Defendant CITY as the Chief of Police for the CITY, from
May 2022 through present, and was acting within the course and scope of that employment. He is
being sued individually and in his official capacity as the Chief of Police for the CITY.  Plaintiffs
allege Defendant FORD was aware of the openly racist conduct of the police officers he employed,
their use of excessive force as set forth herein, the widespread acceptance within the Antioch Police
Department of unconstitutional actions by CITY OF ANTIOCH Police Officers as set forth in the
instant Complaint, and failed to take any remedial measures, and tolerated, encouraged and ratified
the repeated and widespread pattern and practice of unconstitutional actions by Defendant CITY OF
ANTIOCH Police Officers as set forth herein.

40.     Defendant **OFFICER MATTHEW NUTT** ("NUTT"), at all times mentioned
herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the
course and scope of that employment. He is being sued individually and in his official capacity as
an OFFICER of the CITY. NUTT participated in the unlawful conduct against Plaintiff
ROBINSON. Moreover, NUTT is implicated in the ongoing investigation by local and federal
agencies into the discriminatory text messages sent among Antioch Police Department officers and
sergeants. NUTT received numerous hateful text messages from his fellow CITY OF ANTIOCH
police officers about Black people, calling them "gorillas," "niggers," "monkeys," and using other

targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). NUTT was a recipient of texts in which Defendant Officers bragged about "violating civil rights," "only stopping [people] cuz they black [sic]," and "sometimes just say[ing] people gave me a full confession when they didn't." Despite being a direct witness to this behavior, NUTT never intervened nor reported it to supervisors. As a result, NUTT is implied to be a part of the conspiracy between the officers at the CITY OF ANTIOCH Police Department to act in concert to promote racial discrimination and unconstitutional conduct under the color of their position as sworn peace officers. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

41.    Defendant **OFFICER JOSH EVANS** ("EVANS"), at all times mentioned herein, was employed by Defendant CITY as a SERGEANT of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as a SERGEANT of the CITY OF ANTIOCH Police Department. EVANS sent text messages about an unknown subject, detailing plans to "smash in and bite him, 40mm him, and call him a cunt." EVANS referred to Black people as "niggers" numerous times, and in discussing an unknown subject, he once stated: "I'm going to bury that nigger in my fields." In his role as a Sergeant leadership for Defendant CITY OF ANTIOCH Police Department, EVANS was aware of the openly racist conduct of the police officers he supervised, their use of excessive force as set forth herein, the widespread acceptance within the Antioch Police Department of unconstitutional actions by Defendant CITY OF ANTIOCH Police Officers as set forth in the instant Complaint, and failed to take any remedial measures, and tolerated, encouraged and ratified the repeated and widespread pattern and practice of unconstitutional actions by Defendant CITY OF ANTIOCH police officers as set forth herein.

EVANS' actions were a part of the Defendant Officers' conspiracy to act in concert to promote racial animus, bias and discriminatory practices by the CITY OF ANTIOCH Police Department. These actions directly led to the damages of the Plaintiffs named herein.

42.    Defendant **OFFICER ERIC ROMBOUGH** ("ROMBOUGH"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official

capacity as an OFFICER of the CITY. ROMBOUGH robbed Plaintiff YOUNG and was involved in the unlawful arrest and force used against Plaintiffs ALLEN, PUGH, CARPENTER, JACKSON, MACKIN, THOMAS, LACY, YARBOROUGH, and MASON. Defendant ROMBOUGH has been employed with the CITY OF ANTIOCH Police Department since 2017, and throughout that tenure has been an active participant in the ongoing discriminatory text messages and conspiracy to violate civil rights among Antioch Police Department officers and sergeants. Moreover, between at least November 2020 to August 2021, Defendant ROMBOUGH deployed the 40mm lethal launcher to shoot at least eleven (11) subjects in and around Antioch. As part of this scheme, he secured photographs of the subjects' injuries and collected spent cartridges as trophies, as demonstrated by the following August 24, 2021 text messages:

> **ROMBOUGH**:      Can u please get photos of him
> **OFFICER-15**:      Yup
>                                 [photograph] Black tip tattoo 😂
> **ROMBOUGH**:      Lmao

ROMBOUGH also sent text messages to other Antioch officers in which he referred to Black people as "niggers," "niggas," "gorillas," and "monkeys." On other occasions, ROMBOUGH boasted about "violating civil rights" and "only stopping [people] cuz they black [sic]."

43.      ROMBOUGH has been federally indicted for civil rights violations against citizens of Antioch in his capacity as a CITY OF ANTIOCH Police Officer. ROMBOUGH acted in concert with named and DOE DEFENDANTS, to promote a culture of racial discrimination within the CITY OF ANTIOCH Police Department and to promote unconstitutional conduct under the color of their position as sworn peace officers. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

44.      Defendant **OFFICER MORTEZA AMIRI** ("AMIRI"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY OF ANTIOCH.  In 2018, Defendant AMIRI was partnered with CITY Police Department service K-9 "Purcy" and assigned to the CITY Police Department's Canine Unit. As part of this assignment Defendant AMIRI received hundreds hours of training between 2018-

2021, which included topics such as when it is appropriate to deploy a police canine and other relevant legal standards. Between approximately March 2019, to November 2021, Defendant AMIRI deployed canine Purcy to bite at least twenty-eight (28) subjects in and around Antioch. After each bite, AMIRI also messaged multiple recipients from his personal cell phone. Included in these conversations were Defendant Officers ROMBOUGH and WENGER about the bites, and often AMIRI gave each bite victim a consecutive number memorializing the number of dog bites he had accumulated up until that point. Further, AMIRI sent with these messages photographs and/or videos of each subject's injuries, contrary to CITY Police Department policy.  These messages also included plans between ROMBOUGH, WENGER, and other Defendant CITY OF ANTIOCH Police Officers and Sergeants to deploy a canine without cause against individuals in and around Antioch, California. As part of the Contra Costa District Attorney's investigation into race-based misconduct at ADP, Officer AMIRI self-reported that close to sixty-eight percent of his total reported and confirmed dog bites were suffered by African Americans.

AMIRI is a key participant in the ongoing investigation into the discriminatory text messages sent among CITY OF ANTIOCH Police Department officers and sergeants, during which AMIRI sent texts to other Antioch officers in which he referred to Black people as "gorillas" and "pussies." He also admitted to serious offenses of falsification, claiming: "[i] sometimes just say people gave me a full confession when they didn't. gets filed easier [sic]." On multiple occasions, text messages show that AMIRI encouraged other CITY OF ANTIOCH Police Officers to participate in excessive force against civilians in Antioch, California, and to cover it up through false reports:

| AMIRI: | **Let's fuck some people up next work week** |
|---|---|
| **WENGER:** | Bro Fuck the mother fucking yes |
| **WENGER:** | Bite some nerds and crush some dweebs bro! |
| **AMIRI:** | hell yeah bro. **Ill find some shit. Ill write it. Just come over and crush some skulls alongside Purcy. Ill handle the rest lol.** |

AMIRI's text messages also show that he has intentionally terrorized civilians:

| **OFFICER-9:** | [...]  **"Officer [DOE-9] how long did you know Officer AMIRI and in the course of your friendship did you ever know him to act under color of authority"** |
|---|---|

**AMIRI:**    **lol putting a pistol in someone's mouth and telling them to stop stealing isn't illegal... it's an act of public service to prevent further victims of crimes.**

AMIRI has been federally indicted for civil rights violations against citizens of Antioch in his capacity as a CITY OF ANTIOCH Police Officer. AMIRI acted in concert with DEFENDANTS, and others presently unknown, to promote a culture of racial discrimination and unconstitutional acts by the CITY OF ANTIOCH Police Department. This conspiracy between AMIRI and other DEFENDANTS directly led to the damages suffered by the Plaintiffs named herein.

45.    Defendant **OFFICER SCOTT DUGGAR** ("DUGGAR"), at all times mentioned herein, was employed by Defendant CITY of ANTIOCH as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY OF ANTIOCH. DUGGAR is a key participant in the ongoing investigation into the discriminatory text messages sent among CITY OF ANTIOCH Police Department officers and sergeants. DUGGAR sent text messages to other Antioch officers in which he referred to Black people as "niggas." DUGGARS' actions are indicative of the conspiracy between the officers at the CITY OF ANTIOCH Police Department to act in concert to promote racial discrimination and unconstitutional conduct under the color of their position as sworn peace officers. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

46.    Defendant **OFFICER JONATHAN RAMIREZ** ("RAMIREZ"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. RAMIREZ is implicated in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. RAMIREZ sent texts to other Antioch officers in which he expressed a desire to "40 that mfr [Thorpe] during the protest today [sic]." This is a reference to the potential use of a .40mm less lethal launcher being utilized on current CITY OF ANTIOCH Mayor, Lamar Thorpe.

RAMIREZ also sent numerous text messages in which he called Black people "niggas" and "niggers." RAMIREZ's actions are indicative of the conspiracy between the officers at the CITY OF ANTIOCH Police Department to act in concert to promote racial discrimination and unconstitutional conduct under the color of their position as sworn peace officers. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

47.     Defendant **OFFICER TIMOTHY MANLY WILLIAMS** ("MANLY WILLIAMS"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. MANLY WILLIAMS is implicated in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. MANLY WILLIAMS received numerous hateful text messages from his fellow CITY OF ANTIOCH police officers about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). Furthermore, MANLY WILLIAMS was a recipient of texts in which Defendant Officers bragged about "violating civil rights," "only stopping [people] cuz they black [sic]," and "sometimes just say[ing] people gave me a full confession when they didn't." Despite being a direct participant in and witness to this behavior, MANLY WILLIAMS never intervened nor reported it to supervisors. MANLY-WILLIAMS conduct is indicative of the conspiracy between the officers at the CITY OF ANTIOCH Police Department to act in concert to promote racial discrimination and unconstitutional conduct under the color of their position as sworn peace officers. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

48.     Defendant **OFFICER TOM LENDERMAN** ("LENDERMAN"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. LENDERMAN is implicated in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. LENDERMAN received numerous hateful text messages from his fellow CITY OF

ANTIOCH police officers about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). Furthermore, LENDERMAN was a recipient of texts in which Defendant Officers bragged about "violating civil rights," "only stopping [people] cuz they black [sic]," and "sometimes just say[ing] people gave me a full confession when they didn't." Despite being a direct witness to this behavior, LENDERMAN never intervened nor reported it to supervisors. Defendant's actions are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

49.     Defendant **OFFICER LOREN BLEDSOE** ("BLEDSOE"), at all times mentioned herein, was employed by Defendant CITY as a SERGEANT of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as a SERGEANT of the CITY. BLEDSOE is implicated in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. BLEDSOE received numerous hateful text messages from his fellow CITY OF ANTIOCH police officers about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). Furthermore, BLEDSOE was a recipient of texts in which Defendant Officers bragged about "violating civil rights," "only stopping [people] cuz they black [sic]," and "sometimes just say[ing] people gave me a full confession when they didn't." BLEDSOE was a member of these group text chats, and by refusing to intervene and halt the heinous behavior of fellow officers, BLEDSOE failed to perform his supervisory duties. Defendant's actions are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

50.     Defendant **OFFICER THOMAS SMITH** ("T. SMITH"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the

course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. THOMAS SMITH is a key participant in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. THOMAS SMITH sent text messages to other Antioch officers in which he referred to Black people as "niggas" and to women as "bitches." Defendant's actions are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

51.     Defendant **OFFICER CALVIN PRIETO** ("PRIETO") at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. PRIETO is a key participant in the discriminatory text messages sent among CITY OF ANTIOCH Police Department officers and sergeants. PRIETO sent text messages to other Antioch officers in which he referred to Black people as "niggas" and to women as "bitches." He also agreed to act in concert with other DEFENDANTS to violate civil rights, including but not limited to an agreement to take DNA samples off unconscious subjects and to write a large amount of traffic citations by targeting a race-specific group in a specific area in and around Antioch, California:

| | |
|---|---|
| **RODRIGUEZ**: | I don't know if I can do the DRE cuz he's knocked out now. |
| **PRIETO**: | **No we'll just say he refused to comply and take the blood** |
| […] | |
| **PRIETO**: | **I wanna push tho. Like hit those 30 cities.** |
| **RODRIGUEZ**: | Okay we just hafta go to the areas where we can. |
| **PRIETO**: | **Make these niggers eat shit. Yes of course.** |
| **RODRIGUEZ**: | Yes that will be easy. And it will be a good time. Lol start off quick with the numbers. |
| **PRIETO**: | **yes of course. Get it in and fuck things up.** |
| […] | |
| **PRIETO**: | **Well get busy and start towing niggers shit. Come with a stack of** [Cal. Highway Patrol Vehicle Impound Forms] |

Defendant's actions are emblematic of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly lead to the damages suffered by the Plaintiffs named herein.

52.    Defendant **OFFICER ANDREA RODRIGUEZ** ("RODRIGUEZ") at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. She is being sued individually and in her official capacity as an OFFICER of the CITY. RODRIGUEZ is a key subject of the District Attorney's investigation into the discriminatory text messages sent amongst Antioch Police Department officers and sergeants. He also agreed to act in concert with other DEFENDANTS to violate civil rights, including but not limited to an agreement to take DNA samples off unconscious subjects and to write a large amount of traffic citations by targeting a race-specific group in a specific area in and around Antioch, California. RODRIGUEZ sent text messages agreeing to target Black people for traffic citations, stating that it "will be easy" and "a good time."

RODRIGUEZ's actions are emblematic of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly lead to the damages suffered by the Plaintiffs named herein.

53.    Defendant **OFFICER JONATHAN ADAMS** ("ADAMS"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. ADAMS is a key participant in the discriminatory text messages sent among Antioch Police Department officers and sergeants. ADAMS sent text messages to other Antioch officers in which he referred to individual subjects as "faggots" and "niggers," and joked about all Black people looking the same. He also boasted about using cruel and excessive force, including but not limited to a message in which he bragged to a CITY OF ANTIOCH Police Sergeant and other Defendant Officers that he "got that faggot to agree to eat his own dick."

ADAMS's actions are emblematic of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

54.    Defendant **OFFICER DEVON WENGER** ("WENGER"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY.  Since, July 2018, WENGER has been employed as a police officer with the Defendant CITY OF ANTIOCH Police Department. On August 25, 2023, WENGER was suspended by CITY OF ANTIOCH Police Department in relation to his misconduct that was exposed in the ongoing Antioch and Federal investigations into the rampant discriminatory misconduct within the CITY OF ANTIOCH Police Department. On August 16, 2023, a Grand Jury handed down an indictment onto Defendants WENGER, AMIRI, and ROMBOUGH, for Conspiracy Against Rights under 18 U.S.C. § 241 and Deprivation of Rights Under Color of Law under 18 U.S.C. § 242. WENGER engaged in this conspiracy beginning at a time unknown, no later than February 2019, and continued through at least 2022. Each of the Plaintiffs' suffered injuries resulting from contact with Defendant Officers, all of which occurred during the time WENGER was employed by CITY OF ANTIOCH Police Department as an officer and while he was engaged in a conspiracy to violate civil rights. Not just a passive recipient to the messages relaying those plans, for over four years WENGER knowingly sought out and used unconstitutionally excessive force against subjects in and around Antioch, California:

| | |
|---|---|
| **WENGER:** | **Please find this guy and fuck him in the ass** |
| **ROMBOUGH:** | Deal |
| **AMIRI:** | ill [K9] bite em |
| […] | |
| **WENGER:** | Pics of [suspect] please my dude!!! That bitch [suspect] has talked so much shit to me! Thank you for biting that piece of shit! |
| **AMIRI:** | [IMG_1072; IMG_1067; IMG_1070; IMG_1066; IMG_1069] |
| **WENGER:** | You're my hero. |
| […] | |

| AMIRI: | if [ ] didn't have all those body cams and that was us... we would have fucked him up more. He didn't get what he deserved |
|---|---|
| WENGER: | I agree, That's why I don't like body cams |
| […] | |
| WENGER: | Home boy got lumped up!!!! |
| | Hahahah The [a corporal] special and the morty special |
| AMIRI: | [...] I walked out the tent and **game planned how to fuck him up**. Went back and did justice. Wish you were there. Inside a tent **with no cams... you would have loved it**. [ ] agreed to keep cameras off. |
| WENGER: | Bro...fuuuuuuuck yes!!! Fuck that nerd!! |
| […] | |
| WENGER: | We need to get into something tonight bro!! Lets go 3 nights in a row dog bite!!! |
| WENGER: | Lets get faggot ass [Lieutenant] something to stress about lol |

Despite being a direct participant in and witness to this behavior, WENGER never intervened nor reported it to supervisors. Defendant's actions are part of the conspiracy between the officers at the CITY OF ANTIOCH Police Department in which officers and superiors acted in concert to promote racial discrimination by officers within the CITY OF ANTIOCH Police Department. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

55.    Defendant **OFFICER DANIEL HARRIS** ("HARRIS"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. HARRIS is implicated in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. HARRIS received numerous hateful text messages from his fellow CITY OF ANTIOCH police officers about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). Furthermore, HARRIS was a recipient of texts in which Defendant Officers bragged about "violating civil rights," "only stopping [people] cuz they black [sic]," and "sometimes just say[ing] people gave me a full confession when

they didn't." Despite being a direct witness to this behavior, HARRIS never intervened nor reported it to supervisors. Defendant's actions are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

56.    Defendant **OFFICER ROBERT GERBER** ("GERBER"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. GERBER is implicated in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. GERBER sent text messages containing photos of gorillas and referring to Black people as "fag[s]" to other Antioch officers. GERBER also received numerous hateful text messages from his fellow CITY OF ANTIOCH police officers about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). Furthermore, GERBER was a recipient of texts in which Defendant Officers bragged about "violating civil rights," "only stopping [people] cuz they black [sic]," and "sometimes just say[ing] people gave me a full confession when they didn't."  GERBER was also aware of the misconduct but failed to intervene, as demonstrated by these January 2022 text messages:

> **ADAMS:**      … I'm in a meeting with [CITY OF ANTIOCH Police Department Leadership] and Gerber and Hoffman discussing black people.

Defendant's actions are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

57.    Defendant **OFFICER KYLE HILL** ("HILL"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. HILL was involved in the arrest of Plaintiff TERRY THOMAS. Defendant's actions

are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

58.     Defendant **OFFICER BROCK MARCOTTE** ("MARCOTTE"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. MARCOTTE was involved in the arrest of Plaintiffs ALLEN, PUGH, GARCIA, CARPENTER, MACKIN, MASON, and SUITTER. MARCOTTE is implicated in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. Defendant's actions are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

59.     Defendant **OFFICER AARON HUGHES** ("HUGHES"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. HUGHES was involved in the arrests of Plaintiffs HILLIARD, LACY, and MASON. HUGHES is implicated in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. HUGHES sent text messages with racially derogatory language referencing Black people, as demonstrated by the following May 4, 2020 text message to Defendant AMIRI:

**HUGHES**:     Bro the circus is in town…but it seems they only brought monkeys

Defendant's actions are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial

1  discrimination by officers within the ANTIOCH police department. This conspiracy between the

2  officers directly led to the damages suffered by the Plaintiffs named herein.

3       60.     Defendant **OFFICER RYAN GEIS** ("GEIS"), at all times mentioned herein, was

4  employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and

5  scope of that employment. He is being sued individually and in his official capacity as an OFFICER

6  of the CITY. GEIS was involved in the arrest of Plaintiff YARBOROUGH. Defendant's actions are

7  indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police

8  Department officers acted in concert to promote racial discrimination by officers within the

9  ANTIOCH police department. This conspiracy between the officers directly led to the damages

10  suffered by the Plaintiffs named herein.

11       61.     Defendant **OFFICER MOORE** ("MOORE") at all times mentioned herein, was

12  employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and

13  scope of that employment. He is being sued individually and in his official capacity as an OFFICER

14  of the CITY. MOORE was involved in the arrest of Plaintiff MCCULLOUGH. Defendant's actions

15  are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch

16  Police Department officers acted in concert to promote racial discrimination by officers within the

17  ANTIOCH police department. This conspiracy between the officers directly lead to the damages

18  suffered by the Plaintiffs named herein.

19       62.     Defendant **OFFICER RICK HOFFMAN** ("HOFFMAN"), at all times mentioned

20  herein, was employed by Defendant CITY as a SERGEANT of the CITY and was acting within the

21  course and scope of that employment. He is being sued individually and in his official capacity as a

22  SERGEANT of the CITY OF ANTIOCH Police Department. HOFFMAN was involved in the

23  arrest of Plaintiff MASON. HOFFMAN is implicated in the District Attorney's investigation into

24  the discriminatory text messages sent among Antioch Police Department officers and sergeants.

25  HOFFMAN participated in text message threads with Defendant CITY OF ANTIOCH Police

26  Officers in which they discussed plans to violate civil rights on duty and used derogatory slurs

27  against civilians, including Plaintiffs. In his role as a Sergeant leadership for Defendant CITY OF

28  ANTIOCH Police Department, HOFFMAN was aware of the openly racist conduct of the police

officers he supervised, their use of excessive force as set forth herein, the widespread acceptance within the Antioch Police Department of unconstitutional actions by Defendant CITY OF ANTIOCH Police Officers as set forth in the instant Complaint, and failed to take any remedial measures, and tolerated, encouraged and ratified the repeated and widespread pattern and practice of unconstitutional actions by Defendant CITY OF ANTIOCH police officers as set forth herein.

HOFFMAN's actions were a part of the Defendant Officers' conspiracy to act in concert to promote racial animus, bias and discriminatory practices by the CITY OF ANTIOCH Police Department. These actions directly led to the damages of the Plaintiffs named herein.

63. Defendant **OFFICER JIMMY WISECARVER** ("WISECARVER"), at all times mentioned herein, was employed by Defendant CITY as a SERGEANT of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as a SERGEANT of the CITY OF ANTIOCH Police Department. WISECARVER is implicated in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. WISECARVER participated in text message threads with Defendant CITY OF ANTIOCH Police Officers in which they discussed plans to violate civil rights on duty and used derogatory slurs against civilians, including Plaintiffs. In his role as a Sergeant leadership for Defendant CITY OF ANTIOCH Police Department, WISECARVER was aware of the openly racist conduct of the police officers he supervised, their use of excessive force as set forth herein, the widespread acceptance within the Antioch Police Department of unconstitutional actions by Defendant CITY OF ANTIOCH Police Officers as set forth in the instant Complaint, and failed to take any remedial measures, and tolerated, encouraged and ratified the repeated and widespread pattern and practice of unconstitutional actions by Defendant CITY OF ANTIOCH police officers as set forth herein.

WISECARVER's actions were a part of the Defendant Officers' conspiracy to act in concert to promote racial animus, bias and discriminatory practices by the CITY OF ANTIOCH Police Department. These actions directly led to the damages of the Plaintiffs named herein.

64. Defendant **OFFICER JOHN FORTNER** ("FORTNER"), at all times mentioned herein, was employed by Defendant CITY as a LIEUTENANT of the CITY and was acting within

1    the course and scope of that employment. He is being sued individually and in his official capacity

2    as a LIEUTENANT of the CITY OF ANTIOCH Police Department. Plaintiffs allege Defendant

3    FORTNER was aware of the openly racist conduct of the police officers he employed, their use of

4    excessive force as set forth herein, the widespread acceptance within the Antioch Police Department

5    of unconstitutional actions by CITY OF ANTIOCH Police Officers as set forth in the instant

6    Complaint, and failed to take any remedial measures, and tolerated, encouraged and ratified the

7    repeated and widespread pattern and practice of unconstitutional actions by Defendant CITY OF

8    ANTIOCH Police Officers as set forth herein.

9         FORTNER's actions were a part of the Defendant Officers' conspiracy to act in concert to

10   promote racial animus, bias and discriminatory practices by the CITY OF ANTIOCH Police

11   Department. These actions directly led to the damages of the Plaintiffs named herein.

12        65.    Defendant **OFFICER BRAYTON MILNER** ("MILNER"), at all times mentioned

13   herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the

14   course and scope of that employment. He is being sued individually and in his official capacity as

15   an OFFICER of the CITY. MILNER is a key participant in the discriminatory text messages sent

16   among Antioch Police Department officers and sergeants. MILNER planned in advance to use

17   excessive force against individuals, including Plaintiff MACKIN, and admitted to violating civil

18   rights, as demonstrated by the following text messages:

19        **ROMBOUGH**:    Hoffman wanted me to vet mackin and where he stashes his
                            stuff before we do a search
20        **ROMBOUGH**:    Can I forty dvance please?
          **MILNER**:      Read my mind. I was just going to nicely ask you to find a
21                         reason to 40 him
22        […]
          **MILNER**:      I violate rights on the street but don't like in the courtroom.
23                         Lie.

24        MILNER's actions are emblematic of the conspiracy between the officers at the Antioch

25   Police Department. Antioch Police Department officers acted in concert to promote racial

26   discrimination by officers within the ANTIOCH police department. This conspiracy between the

27   officers directly led to the damages suffered by the Plaintiffs named herein.

28

66. Defendant **OFFICER DEVIN EIGARD** ("EIGARD"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. EIGARD was involved in the arrest of Plaintiff CAIN. Defendant's actions are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

67. Defendant **OFFICER CONSTANTINE KAWALYA** ("KAWALYA"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. KAWALYA was involved in the arrest of Plaintiff CAIN. Defendant's actions are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

68. Defendant **OFFICER RYAN DUFF** ("DUFF"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. DUFF was involved in the arrest of Plaintiff YARBOROUGH. Defendant's actions are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

69. Defendant **OFFICER JACOB KING** ("KING"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. KING was involved in the arrest of Plaintiff YARBOROUGH. Defendant's actions

are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

70.     Defendant **OFFICER GUSTAVO JIMENEZ** ("JIMENEZ"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. JIMENEZ was involved in the arrest of Plaintiff YARBOROUGH. Defendant's actions are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

71.     Defendant **OFFICER ASHLEY LUNDIN** ("LUNDIN"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. She is being sued individually and in his official capacity as an OFFICER of the CITY. LUNDIN was involved in the arrest of Plaintiff YARBOROUGH. Defendant's actions are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

72.     Defendant **OFFICER GARY LOWTHER** ("LOWTHER"), at all times mentioned herein, was employed by Defendant CITY as a SERGEANT of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as a SERGEANT of the CITY OF ANTIOCH Police Department. LOWTHER was involved in the arrest of Plaintiff YARBOROUGH. Plaintiffs allege Defendant LOWTHER was aware of the openly racist conduct of the police officers he employed, their use of excessive force as set forth herein, the widespread acceptance within the Antioch Police Department of unconstitutional actions by CITY OF ANTIOCH Police Officers as set forth in the instant Complaint, and failed to take any

remedial measures, and tolerated, encouraged and ratified the repeated and widespread pattern and practice of unconstitutional actions by Defendant CITY OF ANTIOCH Police Officers as set forth herein.

LOWTHER's actions were a part of the Defendant Officers' conspiracy to act in concert to promote racial animus, bias and discriminatory practices by the CITY OF ANTIOCH Police Department. These actions directly led to the damages of the Plaintiffs named herein.

73.     Defendant **OFFICER DUSTIN DIBBLE** ("DIBBLE"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. DIBBLE was involved in the arrest of Plaintiff ROBINSON. Defendant's actions are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

74.     Defendant **OFFICER KYLE SMITH** ("K. SMITH"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. KYLE SMITH was involved in the arrests of Plaintiffs MASON and LACY. Defendant KYLE SMITH is a key participant in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. KYLE SMITH exchanged numerous hateful text messages with his fellow CITY OF ANTIOCH police officers about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). KYLE SMITH also celebrated his fellow CITY OF ANTIOCH police officers' uses of excessive force. Defendant's actions are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

75.    Defendant **OFFICER JAKE EWART** ("EWART"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. EWART was involved in the arrest of Plaintiff LACY. EWART is a participant in the discriminatory text messages sent among Antioch Police Department officers and sergeants. Defendant's actions are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

76.    Defendant **OFFICER JAMES BEDGOOD** ("BEDGOOD"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. BEDGOOD was involved in the arrest of Plaintiff LACY. Defendant's actions are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial discrimination by officers within the ANTIOCH police department. This conspiracy between the officers directly led to the damages suffered by the Plaintiffs named herein.

77.    Defendant **OFFICER ROBERT GREEN** ("GREEN"), at all times mentioned herein, was employed by Defendant CITY as a SERGEANT of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an SERGEANT of the CITY. GREEN was involved in the arrest of Plaintiff JAMARI ALLEN. Plaintiffs allege Defendant GREEN was aware of the openly racist conduct of the police officers he employed, their use of excessive force as set forth herein, the widespread acceptance within the Antioch Police Department of unconstitutional actions by CITY OF ANTIOCH Police Officers as set forth in the instant Complaint, and failed to take any remedial measures, and tolerated, encouraged and ratified the repeated and widespread pattern and practice of unconstitutional actions by Defendant CITY OF ANTIOCH Police Officers as set forth herein.

GREEN's actions were a part of the Defendant Officers' conspiracy to act in concert to promote racial animus, bias and discriminatory practices by the CITY OF ANTIOCH Police Department. These actions directly led to the damages of the Plaintiffs named herein.

78.    Defendant **OFFICER JAMES STENGER** ("STENGER"), at all times mentioned herein, was employed by Defendant CITY as a SERGEANT of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an SERGEANT of the CITY. STENGER was involved in the arrest of Plaintiff MASON. STENGER is implicated in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. STENGER participated in text message threads with Defendant CITY OF ANTIOCH Police Officers in which they created justifications for excessive uses of force to include in police reports. Plaintiffs allege Defendant STENGER was aware of the openly racist conduct of the police officers he employed, their use of excessive force as set forth herein, the widespread acceptance within the Antioch Police Department of unconstitutional actions by CITY OF ANTIOCH Police Officers as set forth in the instant Complaint, and failed to take any remedial measures, and tolerated, encouraged and ratified the repeated and widespread pattern and practice of unconstitutional actions by Defendant CITY OF ANTIOCH Police Officers as set forth herein.

STENGER's actions were a part of the Defendant Officers' conspiracy to act in concert to promote racial animus, bias and discriminatory practices by the CITY OF ANTIOCH Police Department. These actions directly led to the damages of the Plaintiffs named herein.

79.    Defendant **OFFICER KEVIN TJAHJADI** ("TJAHJADI"), at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. TJAHJADI was involved in the arrest of Plaintiff MASON. TJAHJADI is a participant in the discriminatory text messages sent among Antioch Police Department officers and sergeants. Defendant's actions are indicative of the conspiracy between the officers at the Antioch Police Department. Antioch Police Department officers acted in concert to promote racial

1  discrimination by officers within the ANTIOCH police department. This conspiracy between the

2  officers directly led to the damages suffered by the Plaintiffs named herein.

3       80.    Defendant **OFFICER RYAN MCDONALD** ("MCDONALD"), at all times

4  mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting

5  within the course and scope of that employment. He is being sued individually and in his official

6  capacity as an OFFICER of the CITY. MCDONALD was involved in the arrest of Plaintiff PUGH.

7  MCDONALD is a participant in the discriminatory text messages sent among Antioch Police

8  Department officers and sergeants. Defendant's actions are indicative of the conspiracy between the

9  officers at the Antioch Police Department. Antioch Police Department officers acted in concert to

10  promote racial discrimination by officers within the ANTIOCH police department. This conspiracy

11  between the officers directly led to the damages suffered by the Plaintiffs named herein.

12       81.    Defendant **OFFICER MATTHEW KOCH** ("KOCH"), at all times mentioned

13  herein, was employed by Defendant CITY as a SERGEANT of the CITY and was acting within the

14  course and scope of that employment. He is being sued individually and in his official capacity as

15  an SERGEANT of the CITY. KOCH approved of the excessive uses of force against Plaintiffs

16  TRENT ALLEN and TERRYONN PUGH. KOCH is a participant in the discriminatory text

17  messages sent among Antioch Police Department officers and sergeants. Plaintiffs allege Defendant

18  KOCH was aware of the openly racist conduct of the police officers he employed, their use of

19  excessive force as set forth herein, the widespread acceptance within the Antioch Police Department

20  of unconstitutional actions by CITY OF ANTIOCH Police Officers as set forth in the instant

21  Complaint, and failed to take any remedial measures, and tolerated, encouraged and ratified the

22  repeated and widespread pattern and practice of unconstitutional actions by Defendant CITY OF

23  ANTIOCH Police Officers as set forth herein.

24       KOCH's actions were a part of the Defendant Officers' conspiracy to act in concert to

25  promote racial animus, bias and discriminatory practices by the CITY OF ANTIOCH Police

26  Department. These actions directly led to the damages of the Plaintiffs named herein.

27       82.    Defendant **OFFICER DANIEL NAVARRETTE** ("NAVARRETTE"), at all times

28  mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting

1   within the course and scope of that employment. He is being sued individually and in his official

2   capacity as an OFFICER of the CITY. NAVARRETTE was involved in the arrest of Plaintiff

3   LEWIS. Defendant's actions are indicative of the conspiracy between the officers at the Antioch

4   Police Department. Antioch Police Department officers acted in concert to promote racial

5   discrimination by officers within the ANTIOCH police department. This conspiracy between the

6   officers directly led to the damages suffered by the Plaintiffs named herein.

7          83.     Defendant **OFFICER CASEY BROGDON** ("BROGDON"), at all times mentioned

8   herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the

9   course and scope of that employment. He is being sued individually and in his official capacity as

10  an OFFICER of the CITY. BROGDON is implicated in the District Attorney's investigation into

11  the discriminatory text messages sent among Antioch Police Department officers and sergeants.

12  BROGDON participated in text message threads with Defendant CITY OF ANTIOCH Police

13  Officers in which they discussed plans to violate civil rights on duty and used derogatory slurs

14  against civilians, including Plaintiffs. In his role as a supervisor for Defendant CITY OF ANTIOCH

15  Police Department, BROGDON was aware of the openly racist conduct of the police officers he

16  supervised, their use of excessive force as set forth herein, the widespread acceptance within the

17  Antioch Police Department of unconstitutional actions by Defendant CITY OF ANTIOCH Police

18  Officers as set forth in the instant Complaint, and failed to take any remedial measures, and

19  tolerated, encouraged and ratified the repeated and widespread pattern and practice of

20  unconstitutional actions by Defendant CITY OF ANTIOCH police officers as set forth herein.

21         BROGDON's actions were a part of the Defendant Officers' conspiracy to act in concert to

22  promote racial animus, bias and discriminatory practices by the CITY OF ANTIOCH Police

23  Department. These actions directly led to the damages of the Plaintiffs named herein.

24         84.     Defendant **OFFICER JONATHAN DOWNIE** ("DOWNIE"), at all times

25  mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting

26  within the course and scope of that employment. He is being sued individually and in his official

27  capacity as an OFFICER of the CITY. DOWNIE was involved in the arrests of Plaintiffs CAIN and

28  YARBOROUGH. Defendant's actions are indicative of the conspiracy between the officers at the

1  Antioch Police Department. Antioch Police Department officers acted in concert to promote racial

2  discrimination by officers within the ANTIOCH police department. This conspiracy between the

3  officers directly led to the damages suffered by the Plaintiffs named herein.

4        85.    Defendant **OFFICER STEVEN MILLER** ("MILLER"), at all times mentioned

5  herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the

6  course and scope of that employment. He is being sued individually and in his official capacity as

7  an OFFICER of the CITY. MILLER was involved in the arrest of Plaintiff CAIN. Defendant's

8  actions are indicative of the conspiracy between the officers at the Antioch Police Department.

9  Antioch Police Department officers acted in concert to promote racial discrimination by officers

10  within the ANTIOCH police department. This conspiracy between the officers directly led to the

11  damages suffered by the Plaintiffs named herein.

12        86.    Plaintiffs are ignorant of the true names and capacities of Defendants **DOES** 26

13  through 100 inclusive, and therefore sue these Defendants by such fictitious names, in their

14  individual capacities. Plaintiffs are informed and believe and thereon allege that each defendant so

15  named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set

16  forth herein. Plaintiffs will amend this Complaint to state the names and capacities of DOES 26-

17  100, inclusive, once their identities have been ascertained.

18                                 **FACTUAL ALLEGATIONS**

19        87.    Plaintiffs are informed and believe and thereon allege that DEFENDANTS NUTT,

20  EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN,

21  BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS,

22  GERBER, HILL, MARCOTTE, HUGHES, GEIS, MOORE, HOFFMAN, MILNER, EIGARD,

23  KAWALYA, DUFF, KING, JIMENEZ, LUNDIN, LOWTHER, DIBBLE, KYLE SMITH,

24  GREEN, STENGER, GRAGG, TJAHJADI, MCDONALD, KOCH, NAVARRETTE, EWART,

25  BEDGOOD, DOWNIE, MILLER, and each of them, individually and/or acting in concert with one

26  another, as well as other CITY OF ANTIOCH Police Officers, Sergeants, and leadership (DOES

27  26-100), engaged in a repeated pattern and practice of civil rights violations and other misconduct

28

1  against citizens living, traveling, or visiting the Antioch neighborhoods where they were assigned.

2  Each Plaintiff is likely to suffer a recurrence of the alleged violations of civil rights, or similar

3  violation of civil rights, committed by police officers employed by Defendant CITY OF ANTIOCH.

4       88.     Plaintiffs are further informed and believe and thereon allege that said civil rights

5  violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests,

6  unreasonable searches and seizures, intimidation, false imprisonment, falsifying reports, planting

7  evidence, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or

8  other misconduct.

9       89.     Plaintiffs are further informed and believe and thereon allege that said misconduct

10  included, but was not limited to subjecting people living, visiting, and/or traveling in Antioch

11  neighborhoods to disparate treatment because of their race and/or gender. As a result, Plaintiffs and

12  persons similarly situated to them were subjected to unequal treatment, civil rights violations, and

13  other misconduct by DEFENDANTS NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR,

14  RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO,

15  RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, MARCOTTE, HUGHES, GEIS,

16  MOORE, HOFFMAN, MILNER, EIGARD, KAWALYA, DUFF, KING, JIMENEZ, LUNDIN,

17  LOWTHER, DIBBLE, KYLE SMITH, GREEN, STENGER, GRAGG, TJAHJADI, MCDONALD,

18  KOCH, NAVARRETTE, EWART, BEDGOOD, DOWNIE, MILLER, and/or CITY OF ANTIOCH

19  Police Officers (DOES 26-100). The above-named DEFENDANTS as well as other DOES

20  deployed excessive force beyond any punishment appropriately imposed by the criminal justice

21  system, and/or made repeated references to or suggestion of violating civil rights.

22       90.     Plaintiffs are further informed and believe and thereon allege that despite the

23  repeated and frequent nature of the misconduct and civil rights violations committed by Defendants

24  NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS,

25  LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER,

26  HARRIS, GERBER, HILL, MARCOTTE, HUGHES, GEIS, MOORE, HOFFMAN, MILNER,

27  EIGARD, KAWALYA, DUFF, KING, JIMENEZ, LUNDIN, LOWTHER, DIBBLE, KYLE

28  SMITH, GREEN, STENGER, GRAGG, TJAHJADI, MCDONALD, KOCH, NAVARRETTE,

EWART, BEDGOOD, DOWNIE, MILLER, and DOES 26-100, high ranking CITY OF ANTIOCH officials and/or police department supervisors, including but not limited to, BROOKS, MOREFIELD, FORD, EVANS, BLEDSOE, FORTNER, KOCH, GREEN, HOFFMAN, WISECARVER, STENGER, BROGDON, LOWTHER, DOES 26-100, and each of them, individually and/or acting in concert with one another, failed to take any or appropriate remedial action prior to the subject incidents involving the Plaintiffs. As a result, DEFENDANTS engaged in repeated and serious acts of misconduct and civil rights violations against citizens living, visiting, and/or traveling in Antioch.

91.    Plaintiffs are informed and believe and thereon allege that as a matter of official policy—rooted in an entrenched posture of deliberate indifference to the constitutional rights of black and brown people who live, visit, and/or travel within Antioch in particular—Defendant CITY OF ANTIOCH, including CITY MANAGERS, has long allowed Plaintiffs and persons similarly situated to them, to be abused by its police officers, including by DEFENDANTS NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL,  MARCOTTE, HUGHES, GEIS, HOFFMAN, MILNER, EIGARD, KAWALYA, DUFF, KING, JIMENEZ, LUNDIN, LOWTHER, DIBBLE, KYLE SMITH, GREEN, STENGER, GRAGG, TJAHJADI, MCDONALD, KOCH, NAVARRETTE, EWART, BEDGOOD, DOWNIE, MILLER, and/or other CITY OF ANTIOCH Police Officers (DOES 26-100).

92.    Plaintiffs are informed and believe and thereon allege that Plaintiffs, and each of them, suffered the violation of their constitutional rights as a result of customs, policies, patterns and/or practices of Defendant CITY OF ANTIOCH, Defendants BROOKS, MOREFIELD, FORD, EVANS, BLEDSOE, FORTNER, KOCH, GREEN, HOFFMAN, WISECARVER, STENGER, BROGDON, LOWTHER, DOES 26-100, and each of them, including, but not limited to, deliberate indifference in the hiring, supervision, training, and discipline of members of the Antioch Police Department, including Defendant NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, MARCOTTE, HUGHES, GEIS, MOORE,

1  HOFFMAN, MILNER, EIGARD, KAWALYA, DUFF, KING, JIMENEZ, LUNDIN, LOWTHER,

2  DIBBLE, KYLE SMITH, GREEN, STENGER, GRAGG, TJAHJADI, MCDONALD, KOCH,

3  NAVARRETTE, EWART, BEDGOOD, DOWNIE, MILLER, and/or DOES 26-100, and/or each of

4  them.

5  **TRENT ALLEN**

6      93.    In March 2021, multiple Defendant CITY OF ANTIOCH Police Department

7  Officers, including ROMBOUGH, MARCOTTE, and RAMIREZ, arrested Plaintiff TRENT

8  ALLEN on an attempted murder charge. During the arrest, ROMBOUGH brutally beat Mr.

9  ALLEN, kicking his head multiple times. DEFENDANTS used specific racial slurs while beating

10 Plaintiff ALLEN, including but not limited to "nigger." Defendant MATTHEW KOCH, who was a

11 CITY OF ANTIOCH police sergeant at the time, witnessed the arrest.

12     94.    On April 11, 2023, ALLEN discovered that DEFENDANT CITY Police Officers

13 had been texting about ALLEN concurrent with his interactions with CITY Officers. The texts,

14 included but are not limited to the following:

15   **ROMBOUGH:**      **Bro I can't wait to 40 all of them.**
     **GERBER:**         **Hell yeah**
16   **ROMBOUGH:**      Looks like terryon is using **TRENT's** IG
                        **[…]**
17                      **Sooo many black people** [sic].
     **ADAMS:**          **Bro. They all look the same.**
18   **ROMBOUGH:**      **Tell me about it. I feel like I'm at the zoo.**
     **ROMBOUGH:**      **Theyre getting ice cream.**
19                      **Swarming to it like Hennessy.**
                        **I bet it's chicken**
20   **ADAMS:**          **Could be ribs**
     **ROMBOUGH:**      **for sure watermelon and Kool aid**
21                      **I hate these idiots**
     **ADAMS:**          **the cops or the niggers?**
22   **ROMBOUGH:**      **All of them. It looks like TRENTs there too.**
     **ADAMS:**          [Photo depicts Plaintiff, **TRENT ALLEN**]
23
24     95.    On March 31, 2021 DEFENDANTS ROMBOUGH, MARCOTTEE, and CITY OF

25 ANTIOCH DOE Officers exchanged the following text messages about taking down a suspect with

26 a 40mm, ROMBOUGH's "Trophy flag":

27   **OFFICER-14:**     😎 **That 40 flag is coming along!! Murica!!**
     **ROMBOUGH:**      [Liked above message]
28                      **You take 40?**
     **MARCOTTEE:**     **Yep heading back now tho**

| | |
|---|---|
| **ROMBOUGH:** | Coo |
| MARCOTTE: | I'm out front |
| **ROMBOUGH:** | **I can believe he says he has no pain to his back lol** |
| **MARCOTTE:** | **The nurse saw me smiling when he was making noises** |
| | **in pain and she started laughing 🐖** |
| **ROMBOUGH:** | **LMAO what a bitch** |

96.    Throughout the day, Defendant ROMBOUGH boastfully recounted administering

violence on Mr. ALLEN, including his civilian loved ones:

| | |
|---|---|
| **ROMBOUGH:** | Yeah 40 deployment |
| | Faggot got his ass whooped. |
| **[UNKNOWN]:** | Nice babe, another one for the mantle |

97.    Officer ROMBOUGH also exchanged texts with multiple Defendant CITY Police

Officers, including Defendants MANLY-WILLIAMS, DUGGAR, and ADAMS. exchanged the

following text messages further celebrating the use of force in arresting TRENT ALLEN:

| | |
|---|---|
| **ROMBOUGH:** | **Lol I 40d him right next to his throat** |
| **MARCOTTE:** | **Oh fuck cuz he ducked so fast** |
| **ROMBOUGH:** | **Eh he deserved it made us fucking run** |
| **MANLY WILLIAMS:** | **Is he dead** |
| **ROMBOUGH:** | **Just his manliness** |
| **MANLY WILLIAMS:** | 😵 😵 |
| ROMBOUGH: | Think I can forty u as u go by? |
| ADAMS: | Just saw your text. Asshole! |
| ROMBOUGH: | Lol I was gonna try. |
| | **Bro my foot hurts lol** |
| **ADAMS:** | **Did you kick the guy?** |
| **ROMBOUGH:** | **Yup like a fucking field goal** |
| | **Gotta stop kicking niggas in their head** |
| **ADAMS:** | **Oh shit!! And 40'd. Fuck yeah.** |
| **ROMBOUGH:** | **And about 6 muzzle thumps** |
| | **He's gonna be sore.** |
| **ADAMS:** | **Fuck yeah. I didn't realize that.** |
| **ROMBOUGH:** | **Bro he's gonna be hurting fuck that guy.** |
| **ADAMS:** | **I like your last comment lol** |
| | **Haha. I forgot that KOCH wanted us to stop sending dumb shit.** |
| | **OOPS.** |
| ROMBOUGH: | Laughed at [above message] |
| **ROMBOUGH:** | **Bro my foot hurts.** |
| | **TRENT [ALLEN]S head is like a bowling ball.** |
| **GERBER:** | **Haha!** |

98.    From approximately 3:21 pm to 7:21 pm, Defendant ROMBOUGH separately texted

Defendant EVANS to continue to gloat about injuring TRENT ALLEN:

| | |
|---|---|
| **ROMBOUGH:** | **Gotta stop kicking niggers in their head.** |
| | **[photograph of TRENT ALLEN in hospital]** |
| **EVANS:** | **You plugged him in the neck? Lol.** |

| | | |
|---|---|---|
| **ROMBOUGH:** | **He ducked lol** | |
| **EVANS:** | **Sounds like it's his fault.** | |
| **ROMBOUGH:** | **So was the 6 muzzle thumps and me trying to kick his head over the fence.** | |
| **EVANS:** | **Lol all of my favorite things** | |
| **ROMBOUGH:** | **Me too Brock salty and I in a backyard with no cameras lol** | |
| **EVANS:** | **40 pic?** | |
| **ROMBOUGH:** | **I'll send it in a few. I shot him in the ass bro. Fuck that guy.** | |
| **EVANS:** | **Lol that's funny.** | |
| **ROMBOUGH:** | **Obviously wasn't complying.** | |
| | **[photograph of TRENT ALLEN in hospital]** | |

99.     At approximately 3:10 pm, still in relation to his brutalizing Plaintiff TRENT ALLEN, Defendant ROMBOUGH separately texted United States Post Officer Garcia:

| | |
|---|---|
| **ROMBOUGH:** | **I 40d and field goal kicked one that fled from us on foot today** |
| **GARCIA:** | 😊 |
| **ROMBOUGH:** | **Bro my foot fucking hurts [gif]** |
| **GARCIA:** | **Did you find any guns on any of them?** |
| **ROMBOUGH:** | **Sorry we were taking down a second murder suspect and he got 40d too.** |
| **GARCIA:** | 😊 **That 40 flag is coming along!! Murica!** |

100.     At approximately 3:21pm, ROMBOUGH sent the following text messages to an unknown contact, which contained photographs of the individuals he had injured that day, including TRENT ALLEN:

| | |
|---|---|
| **UNKNOWN:** | **You got him in the neck?!** |
| **ROMBOUGH:** | **Yup and another faggot in the butt** |
| | **2 for the day** |
| UNKNOWN: | Nice babe. |
| **ROMBOUGH:** | [photo of subject **PLAINTIFF TRENT ALLEN** in hospital] |
| UNKNOWN: | Ouchie! |

101.     Also concurrent to Mr. ALLEN's arrest, Defendant MANLY-WILLIAMS was working on a wiretap operation related to the CITY OF ANTIOCH's criminal investigation into TRENT ALLEN, with assistance from federal agencies, including the Federal Bureau of Investigation. MANLY-WILLIAMS has since been federally indicted for criminal activity relating to this wiretap.

102.     Defendants KOCH and FORTNER reviewed the use of force against TRENT ALLEN and found that it was consistent with CITY OF ANTIOCH Police Department best practices and policy. Defendant MOREFIELD performed the final review of the use of force and

took no action.

103.    As a result of the culture of racism, homophobia, and unconstitutional violence illustrated by the above text messages, DEFENDANTS maliciously and unfairly targeted, brutalized, and prosecuted TRENT ALLEN.  Defendant Officers' behavior both contributed to and stemmed from the discriminatory and violent culture of the CITY OF ANTIOCH Police Department. TRENT ALLEN withstood humiliation and associated emotional distress related to the rampant unconstitutional conduct revealed in 2023 with the CITY OF ANTIOCH text message scandal.  Mr. ALLEN suffered severe physical injuries caused by Defendants ROMBOUGH, MARCOTTE, RAMIREZ, and other DEFENDANTS in their use of excessive force against him.

104.    Mr. ALLEN has been incarcerated since his arrest and the use of excessive force by ROMBOUGH, tolling his statute of limitations.

**TERRYONN PUGH**

MARCH 2021 INCIDENT

105.    In March 2021, multiple Defendant CITY OF ANTIOCH Police Department Officers, including ROMBOUGH, MARCOTTE, MANLY WILLIAMS, DUGGAR, and MCDONALD, arrested Plaintiff TERRYONN PUGH on an attempted murder charge. PUGH had been the subject of a long-term investigation by CITY OF ANTIOCH Police Department Officer John "Spencer" Cox. During the arrest, ERIC ROMBOUGH brutally shot Mr. PUGH with a 40mm rubber bullet. On April 11, 2023, PUGH discovered that Officer ROMBOUGH texted about him during the time of his arrest. DEFENDANTS used specific racial slurs while beating Plaintiff PUGH, including but not limited to "nigger."

106.    On April 11, 2023, PUGH discovered that DEFENDANT CITY Police Officers had been texting about PUGH concurrent with his interactions with CITY Officers, planning to and executing a plan to use excessive force on PUGH by shooting him with 40mm rubber bullets. The texts, included but are not limited to the following:

On 3/20/2021, at 1: 20 p.m., APD Officer ROMBOUGH texted Detective GERBER, "Been checking ig not sure if terryon found his phone yet."

At 1:27p.m., Detective GERBER responded, "For sure thx brah. I bet he did."

On 3/21/2021, at 9:14a.m., APD Officer ROMBOUGH text APD Detective GERBER, "I haven't seen Pugh with his phone or updates on his ig. He's still posting."

At 9:15a.m., APD Detective GERBER responded, "Pugh is so screwed."

At 9:16 a.m., APD Detective GERBER added, "He better still have his phone, almost done with his affidavit."

At 9:16p.m., APD Officer ROMBOUGH responded, "Bro I can't wait to forty all of them ("forty" or "40" are references to the deployment of the 40mm less-lethal launcher)."

At 9:16 p.m., APD Detective GERBER texted, "Hell yeah."

At 9:44 a.m., APD Officer ROMBOUGH texted, "Looks like terryon is using trents ig".

At 9:50 a.m., APD Detective GERBER texted, "I saw that he posted a quick live He better have his damn phone."

At 9:54a.m., APD Officer ROMBOUGH text, "22 that I think he has it back I mix up all the number 2s igs."

On 3/29/2021, at 6:38 p.m., APD Officer ROMBOUGH and APD Detective GERBER continue texting during the investigation of plaintiff:

On 3/29/2021, at 6:38 p.m., APD Officer ROMBOUGH text APD Detective GERBER, "Not sure if this fag is with any of our targets or not but here u go."

At 6:54 p.m., APD Detective GERBER responded, "That fag is one of our four targets heh, he appears to be goin to la."

At 6:55p.m., APD Officer ROMBOUGH text, "Yeah I can't remember all their names just another number 2".

At 6:57p.m., APD Detective GERBER responded, "Hah facts."

107.    Defendant SERGEANT JOSH EVANS sent text messages about an unknown subject, detailing plans to "smash in and bite him, 40mm him, and call him a cunt." EVANS referred to Black people as "niggers" numerous times, and in discussing an unknown subject, he once stated: "I'm going to bury that nigger in my fields." His actions are indicative of the defendant officers acting in concert to promote racial bigotry and bias in the Antioch police department. These actions directly led to the damages of the Plaintiffs named herein.

108.     On March 31, 2021, Defendant ROMBOUGH carried out his plan, and shot Plaintiff PUGH with a 40mm rubber bullet. ROMBOUGH and defendant EVANS exchanged text messages reveling in the injuries inflicted on Plaintiffs Pugh and Trent Allen. After sending a picture of Allen's injuries, defendants ROMBOUGH and EVANS engaged in the following text messaging:

At 3:41 p.m., APD Sgt. Josh EVANS replied, "Lol all of my favorite things." APD Officer ROMBOUGH texted, "Me too Brock [MARCOTTE] salty and I in a backyard with no cameras lol."

At 6:22 p.m., APD Sgt. Josh EVANS texted, "40 pic?" APD Officer ROMBOUGH replied, "I'll send it in a few. I shot him in the ass bro" and "Fuck that guy." APD Sgt. Josh EVANS responded, "Lol, that's funny".

At 6:25p.m., APD Officer ROMBOUGH text, "Obviously wasn't complying."

At 7:21 p.m., APD Officer ROMBOUGH sent APD Sgt. Josh EVANS the following photo: APD Officer ROMBOUGH also texted his wife XXXX after deploying the 40mm weapon for the second time that day. APD Officer ROMBOUGH sent XXXX photos of both men (ALLEN and PUGH) and their injuries.

At 4:38 p.m., XXXX responded, "You got him in the neck?!"

At 4:43 p.m., APD Officer ROMBOUGH replied, "Yup and another faggot in the butt" and "2 for the day."

At 4:49 p.m., XXXX responded, "Nice babe."

At 7:21 p.m., APD Officer ROMBOUGH sent XXXX the following photo of Pugh: At 7:25p.m., XXXX text, "Ouchie."

109.     APD officer ROMBOUGH kept the 40mm bullets as trophies. APD officer MARCOTTE collected the 40mm ROMBOUGH used to shoot PUGH as a trophy for ROMBOUGH. They engaged in the following text messaging:

On 3/31/2021, at 7:30 a.m., APD Officer ROMBOUGH text APD Officer Brock MARCOTTE, "You take 40?"

At 7:31 a.m., APD Officer MARCOTTE responded, "Yep" and "Heading back now tho."

At 7:32 p.m., APD Officer ROMBOUGH text, "Coo."

1    At 7:59 a.m., APD Officer MARCOTTE text, "I'm out front". APD Officer ROMBOUGH

2    responded, "Copy."

3    At 9:11a.m., APD Officer ROMBOUGH text, "I can believe he says he has no pain to his

4    back lol."

5    110.    As a result, the text messages discovered in April 2023 imply that Antioch Police

6    Department maliciously and unfairly targeted, brutalized, and prosecuted PUGH, and that

7    Defendant Officers' behavior stemmed from the discriminatory and violent culture of the Antioch

8    Police Department. Moreover, Mr. PUGH withstood humiliation and associated emotional distress

9    corresponding to the text message scandal. Mr. PUGH suffered severe physical injuries caused by

10    Defendant ROMBAUGH's use of excessive force.

11    111.    Mr. PUGH has been incarcerated since his arrest and the use of excessive force by

12    Defendant ROMBOUGH, tolling his statute of limitations.

13    NOVEMBER 2020 INCIDENT

14    112.    The incident took place on November 10, 2020. The time was approximately 11:00

15    A.M. The location was the Shell Gas Station located at 2838 Lone Tree Drive, Antioch, CA

16    94509. DEFENDANT CITY OF ANTIOCH police officers CALVIN PRIETO, ANDREA

17    RODRIGUEZ, MATTHEW NUTT and others were involved in the arrest of PUGH.

18    113.    On the above-date, Mr. PUGH was a passenger in the backseat of a parked car at a

19    gas pump. Defendants PRIETO, RODRIGUEZ, and other DEFENDANT officers pulled PUGH out

20    of the backseat. Plaintiff PUGH was slammed face-first to the ground, his arms pulled behind him,

21    he was kneed in the neck, tased, hog tied, and placed him in a full body wrap device. During the

22    incident involving plaintiffs Pugh and McCullough, Plaintiff PUGH is informed and believes that

23    officers PRIETO and RODRIGUEZ and others used racially derogatory terms, and that the racial

24    epithets included "the 'N' word".

25    114.    Unbeknownst to plaintiff, Defendants NUTT, PRIETO, RODRIGUEZ and other

26    DOE officers were racially biased against and discriminated against plaintiff PUGH. The force used

27    during that arrest was designed to humiliate, embarrass, belittle, dehumanize and denigrate plaintiff

28    PUGH based on his race.

115.     On March 27, 2023, the Contra Costa County District Attorney's office produced a report regarding racist text messages exchanged between Antioch police officers. In one entry, on June 10, 2020, PRIETO and RODRIGUEZ "blame[d] the blacks" for all the crime in the area. (Pg. 10 DA Report). In another entry, on September 9, 2020, PRIETO and RODRIGUEZ used text messages their plans to target specific groups, implying blacks and Latinos, for traffic citations. The last page of the report provides data regarding PRIETO and RODRIGUEZ's arrest statistics between September 2020 and October 2020. These statistics demonstrate that the DEFENDANT CITY Officers targeted Black and Latino people. The largest percentage of their arrests were of black people. The report was released to Plaintiff PUGH on or about April 11, 2023.

116.     On March 28, 2023, the Contra Costa County District Attorney's office produced a report regarding racist text messages exchanged between CITY OF ANTIOCH police officers EVANS, ADAMS, DUGGAR, GERBER, T. SMITH, MARCOTTE, MANLY WILLIAMS, ROMBOUGH, including those referenced the above, during the investigation and March 2021 arrest of PUGH. The report was released to defendant PUGH on or about April 11, 2023.

**SHAGOOFA KHAN**

117.     Beginning in the Summer of 2020, SHAGOOFA KHAN organized police reform protests throughout the CITY OF ANTIOCH. On January 15, 2021, Defendants, CITY OF ANTIOCH Police Department Officers EVANS, MANLY WILLIAMS, LENDERMAN, BLEDSOE, and THOMAS SMITH arrested Ms. KHAN for burning a "Blue Lives Matter" flag at a protest. During the investigation of her case, Defendant Officer BROGDON authored a search warrant for KHAN's phone and performed a forensic extraction of her communications. KHAN was charged with felony arson and battery of an officer. KHAN completed diversion, however she never entered a plea agreement, and the charges were eventually dismissed. The arresting Defendant Officers EVANS, MANLY WILLIAMS, LENDERMAN, BLEDSOE, and SMITH are key participants in the discriminatory text messages sent among Antioch Police Department officers and sergeants.

118.     On April 11, 2023, KHAN discovered that she had been mentioned by name in the salacious text threads, including in the following texts, which were sent to CITY OF ANTIOCH

Police supervisors and sergeants STENGER, HOFFMAN, WISECARVER, and BROGDON amongst others:

> LENDERMAN:      They were in Martinez for the BLM shit.
> **EVANS:**            **SHAGOOFA looks like an arabian nights cum dumpster**
> LENDERMAN:      At least my shagoof is looking hot AF

119.    Defendant Officer THOMAS SMITH similarly sent text messages to CITY OF ANTIOCH Police Officers in which he referred to women as "bitches." Following SHAGOOFA KAHN's arrest, Defendant Officers CALVIN PRIETO and ANDREA RODRIGUEZ exchanged messages referring to a female Black Lives Matter activist as "that black bitch." Defendant ROMBOUGH also texted Defendant EVANS that he "should have 40d this black bitch today," and in a separate message to an unknown recipient, ROMBOUGH referred to Black women as "water buffalo." Defendant Officer MANLY WILLIAMS sent multiple texts messages in which he joked about the brutalization of Black arrestees. Defendant BLEDSOE was a member of these group chats and received all of the salacious text messages uncovered in this scandal, including the above and the text thread in which RAMIREZ offered a steak dinner prize for a CITY OF ANTIOCH Defendant Officer to "40 that gorilla Thorpe" in reference to then Mayor of the CITY OF ANTIOCH during the BLM protests.

120.    As a result, the text messages discovered in April 2023 demonstrate that Antioch Police Department Defendant Officers EVANS, MANLY WILLIAMS, LENDERMAN, BLEDSOE, and THOMAS SMITH maliciously and unfairly prosecuted SHAGOOFA KHAN and that Defendant Officers' behavior contributed to and stemmed from the discriminatory and violent culture of the Antioch Police Department. Moreover, Ms. KHAN withstood humiliation and associated emotional distress corresponding to the text message scandal.

## ADAM CARPENTER

121.    On November 3, 2020, multiple CITY OF ANTIOCH Police Department officers, including ROMBOUGH, MARCOTTE, DUGGAR, AMIRI, and MANLY WILLIAMS, arrested CARPENTER for possession of a firearm without probable cause and with malice. The charges against CARPENTER were later dropped. From January 2020 up until the date of his arrest, these and other CITY OF ANTIOCH Police Officers conducted nearly ten traffic stops on Mr.

CARPENTER. All of these Defendant Officers are implicated in the offensive text message scandal. Concurrent with CARPENTER's arrest, Defendant Officers sent numerous text messages about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). Concurrent to CARPENTER's arrest, Defendant ROMBOUGH described his on-duty game plan and conduct as "violating civil rights," and "only stopping [people] cuz they black [sic]." Defendant DUGGAR also sent text messages to other CITY OF ANTIOCH Police Officers in which he referred to Black people as "niggas." Defendant AMIRI admitted to serious offenses of falsification of criminal confessions, claiming: "I sometimes just say people gave me a full confession when they didn't. gets filed easier [sic]." Defendant MANLY WILLIAMS sent text messages in which he joked about the brutalization of an arrestee and asked, "is he dead?"

122.    As a result, the text messages discovered in April 2023 imply that Antioch Police Department maliciously and unfairly targeted and prosecuted CARPENTER and that Defendant Officers' behavior stemmed from the discriminatory and violent culture of the Antioch Police Department. Moreover, Mr. CARPENTER withstood humiliation and associated emotional distress corresponding to the text message scandal.

**JOSHUA BUTLER**

123.    On February 3, 2022, multiple CITY OF ANTIOCH Police Department officers, including Defendants JOSH EVANS, BRAYTON MILNER, and KYLE HILL, arrested Plaintiff JOSHUA BUTLER in Antioch, CA for allegedly discharging a firearm. Officers never found a weapon. On May 26, 2023, BUTLER's case was dismissed. Since the date of the arrest, CITY OF ANTIOCH Police Officers have conducted nearly ten traffic stops on Mr. BUTLER, each time verbally accosting him with racist obscenities. None of these traffic stops have resulted in additional arrests. Concurrent with BUTLER's arrest, officers, including JOSH EVANS and BRAYTON MILNER, sent numerous text messages about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). On one occasion, EVANS sent text messages about an unknown subject, detailing plans to "smash in and bite him, 40mm him, and call him a cunt." EVANS regularly referred to Black

1  people as "niggers," and in discussing an unknown subject, he once stated: "I'm going to bury that

2  nigger in my fields." Additionally, about a month before BUTLER's arrest, MILNER sent a text

3  message stating: "I violate rights on the street but don't [lie] in the courtroom."

4      124.    As a result, the text messages discovered in April 2023 imply that Antioch Police

5  Department maliciously and unfairly prosecuted BUTLER and that Defendant Officers' behaviors

6  and actions stemmed from the discriminatory and violent culture of the Antioch Police Department.

7  Moreover, Mr. BUTLER withstood humiliation and associated emotional distress corresponding to

8  the text message scandal.

9  **DEJON RICHARDS**

10      In 2020, DEJON RICHARDS was arrested and brutalized by CITY OF ANTIOCH Police

11 Officers, including Defendant Officer DUGGAR. During the arrest, DUGGAR repeatedly called

12 RICHARDS a "bitch," told him that he had no rights, and slammed RICHARDS' head on the car

13 cutting the left side of his face. DUGGAR is a key participant in the discriminatory text messages

14 sent among Antioch Police Department officers and sergeants. DUGGAR sent text messages to

15 other Antioch officers in which he referred to Black people as "niggas." RICHARDS was

16 incarcerated for one year prior to his case being dismissed. Concurrent to RICHARDS' arrest,

17 multiple CITY OF ANTIOCH Police Officers, including DUGGAR and other named and DOE

18 DEFENDANTS, planned over text messages an operation to arrest wanted individuals in Antioch,

19 in which the Officers described plans to deploy excessive force. At least one CITY OF ANTIOCH

20 Police Sergeant was an active participant in encouraging this conduct and joked with other

21 DEFENDANTS about the fact that in 2020, CITY OF ANTIOCH Police Department was in the

22 eighty-fourth percentile (84%) for use of deadly force, which was acknowledged as "crimes

23 committed by the police."

24      As a result, the text messages discovered in April 2023 imply that CITY OF ANTIOCH

25 Police Officer DUGGAR maliciously and unfairly targeted and arrested RICHARDS without

26 probable cause and that Defendant Officers' behaviors and actions contributed to and stemmed from

27 the discriminatory and violent culture of the CITY OF ANTIOCH Police Department. Moreover,

28

1  Mr. RICHARDS withstood humiliation and associated emotional distress corresponding to the text

2  message scandal.

3  **DRESHAWN JACKSON**

4      125.    DRESHAWN JACKSON was arrested on February 12, 2018 by CITY OF

5  ANTIOCH Police Department Officers, including Defendant Officer ROMBOUGH. During the

6  arrest, ROMBOUGH admitted to JACKSON that he had "a beer or two," then demanded that

7  JACKSON get out of his car. JACKSON was charged with possession of a firearm and was

8  incarcerated for 15 months. In April 2022, his case was dismissed by the District Attorney.

9  Arresting officer Defendant ROMBOUGH is a key participant in the ongoing investigation into the

10  unconstitutional misconduct and discriminatory text messages sent among Antioch Police

11  Department officers and sergeants. Concurrent to JACKSONS' arrest, ROMBOUGH and other

12  Defendant Officers deployed uses of force as punishment to subjects beyond any punishment

13  appropriately imposed by the criminal justice system, and made repeated references to or suggestion

14  of violating civil rights. (Indictment 4:23-cr-00269 AMO) ROMBOUGH proudly admitted to

15  brutalizing arrestees on multiple occasions. ROMBOUGH referred to arrestees as "faggots" and

16  "niggers" multiple times. On other occasions, ROMBOUGH boasted about "violating civil rights"

17  and "only stopping [people] cuz they black [sic]."

18      126.    As a result, the text messages discovered in April 2023 demonstrate that CITY OF

19  ANTIOCH Police Officers maliciously and unfairly targeted and arrested JACKSON and that

20  Defendant Officers' behaviors and actions contributed to and stemmed from the discriminatory and

21  violent culture of the CITY Police Department. Moreover, Mr. JACKSON withstood humiliation

22  and associated emotional distress corresponding to the text message scandal.

23  **KARDELL SMITH**

24      127.    KARDELL SMITH was arrested on state possession charges in 2019 by multiple

25  CITY OF ANTIOCH Police Officers. Defendant Officer AMIRI and other CITY OF ANTIOCH

26  Police Officers prepared a false police report which was used to maliciously prosecute Mr. SMITH.

27  Specifically, Defendant Officer AMIRI claimed he saw, from outside the building where Mr.

28  SMITH was located, a bathroom window be broken and a handgun thrown out of the window into a

side yard. Defendant Officers entered the apartment and arrested Mr. SMITH, claiming SMITH had thrown the gun out of the bathroom window.  In reality, no weapon was possessed by Mr. SMITH, and no weapon or any object was thrown by anyone through that window in Defendants' presence or within that timeframe. A picture purported to be taken by Defendants of the weapon at the scene shows it was covered by leaves and dirt. The window had been broken for months. KARDELL SMITH served a parole violation and then later got charged on the same false factual basis by the Federal government on Federal charges. On April 13, 2022, a Federal judge dismissed KARDELL SMITH's case, dropped every charge, and withdrew all previous pleadings.

128.    Defendant Officers AMIRI and ROMBOUGH were involved in the arrest of KARDELL SMITH and each were integral participants in maliciously prosecuting him. Concurrent with SMITH's arrest, Defendants AMIRI and ROMBOUGH, along with DOE Officers of the CITY OF ANTIOCH Police Department, discussed with another intentions to deploy force against, and inflict harm upon, individuals in and around Antioch through excessive uses of force:

| | |
|---|---|
| **ROMBOUGH:** | Yeah buddy we gonna fuck some people up…<br> I'll roll with u and Percy<br> Didn't know if you were already there |
| **AMIRI:** | LOL No i was planning on enjoying the day off but fuck them for fucking with an officer. |
| **ROMBOUGH:** | Me too and exactly I'm gonna fuck someone up and hopefully get you a bite |
| **AMIRI;** | Exactly! Blood for blood! |
| | |
| **WENGER:** | Please find this guys and fuck him in the ass |
| **ROMBOUGH:** | Deal |
| **WENGER:** | [IMG_0897, a screenshot of identification records]<br> He's the fuck face that ran. Wants are 108 and 2800 |
| **AMIRI:** | ill bit em |
| […] | |
| | |
| **ROMBOUGH:** | Fuck i just want to punch the shit out of someone lol |
| **AMIRI:** | do it bro |
| **ROMBOUGH:** | Don't have my road dog out here |
| **AMIRI:** | the guy i bit today was proned out. No fucks given. |

129.    AMIRI, ROMBOUGH, and DOES, also concealed and hid, and caused to be concealed and hidden, the acts done and the purpose of the acts done in furtherance of the scheme, including to further perpetuate the scheme.

130.     Concurrent to Mr. SMITH's arrest, Defendant CITY OF ANTIOCH Police Officers sent numerous text messages about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). ROMBOUGH proudly admitted to brutalizing arrestees on multiple occasions. ROMBOUGH boasted about "violating civil rights" and "only stopping [people] cuz they black [sic]." AMIRI admitted to serious offenses of falsification, claiming: "I sometimes just say people gave me a full confession when they didn't. gets filed easier [sic]." Consistent with this admission, Defendant AMIRI prepared a false police report in which he fabricated an alleged confession by KARDELL SMITH, that he claimed took place while they smoked a cigarette together outside the police station. In reality, Defendant AMIRI acted friendly to Mr. SMITH, offered to smoke a cigarette with him outside the police station, but Mr. SMITH never possessed and never confessed to having any weapon, much less a gun.  Defendant AMIRI lied in his police report and claimed that Mr. SMITH confessed to possession of the gun. This false report was then used to fabricate the gun charge against Mr. SMITH.

131.     As a result, the text messages discovered in April 2023 demonstrate that Defendant CITY OF ANTIOCH Police Officers maliciously and unfairly targeted and arrested KARDELL SMITH and that Defendant Officers' behaviors and actions contributed to and stemmed from the discriminatory and violent culture of the CITY Police Department. Moreover, Mr. KARDELL SMITH withstood humiliation and associated emotional distress corresponding to the text message scandal.

**DANIEL MACKIN**

132.     DANIEL MACKIN was brutalized on Tuesday, June 15, 2021, by CITY OF ANTIOCH Police Department Officers, including Defendant Officers ROMBOUGH, MARCOTTE, and MILNER, in the presence of Defendant Sergeant KOCH, during the execution of a search warrant operation set up by Defendant Officer ADAMS. During the interaction, Defendant Officer ROMBOUGH deployed a 40 mm less-lethal launcher against Mr. MACKIN, who was beaten so severely that he sustained a metacarpal fracture in his foot. He spent six months in a wheelchair and underwent multiple surgeries. Defendants HOFFMAN and MOREFIELD reviewed

1 the use of force, found it to be within CITY OF ANTIOCH Police Department policy, and took no

2 action.

3      133.   On June 2, 2021, about two weeks before Mr. MACKIN suffered this violent

4 encounter, Defendant Officers ROMBOUGH and MILNER exchanged text messages planning in

5 advance to deploy a 40 mm less-lethal launcher against Mr. MACKIN:

6        **ROMBOUGH**:     Hoffman wanted me to vet mackin and where he stashes his stuff before we do a search

7        **ROMBOUGH**:     Can I forty dvance please?

8        **MILNER**:       Read my mind. I was just going to nicely ask you to find a reason to 40 him

9      134.   On Sunday, June 13, 2021, two days before Mr. MACKIN suffered this violent

10 encounter, Defendant Officers ROMBOUGH and AMIRI exchanged the following plans to hurt

11 suspects they would encounter while next on together, which fell on the day ROMBOUGH

12 participated in the violence inflicted on Mr. MACKIN:

13        **ROMBOUGH:**     You working?

14        **AMIRI:**        yeah. 40 mins until the weekend.
       **ROMBOUGH:**     It's your friday right? Copy **until you come in on Tuesday**

15        **AMIRI:**        lol yea
       **ROMBOUGH:**     **Yeah buddy dog bite and 40 deployment**

16        **AMIRI:**        [loved above message]

17      135.   As a result, the text messages discovered in April 2023 show that CITY OF

18 ANTIOCH Police Department Officers, including ADAMS, ROMBOUGH,AMIRI, MARCOTTE,

19 and MILNER intentionally, maliciously, and unfairly targeted and brutalized DANIEL MACKIN.

20 Theirs and other Defendant CITY OF ANTIOCH Police Officers' behavior contributed to and

21 stemmed from the discriminatory and violent culture of the CITY Police Department. Moreover,

22 Mr. MACKIN withstood humiliation and associated emotional distress corresponding to the text

23 message scandal. Mr. MACKIN suffered severe physical injuries caused by Defendant

24 ROMBAUGH's use of excessive force.

25 **TERRY ROBINSON, JR.**

26      136.   On July 1, 2022, during a traffic stop where TERRY ROBINSON, JR. was a

27 passenger in his brother's car, multiple Antioch Police Department officers, including MATTHEW

28

NUTT, JOSHUA EVANS, and DUSTIN DIBBLE, arrested ROBINSON on the purported basis of two allegedly outstanding arrest warrants. However, the arrest warrants had previously been resolved by ROBINSON JR. at court. During the arrest, Defendants NUTT, EVANS, and DIBBLE brutally beat Mr. ROBINSON while he was handcuffed. NUTT and EVANS threw ROBINSON to the ground, after which NUTT AND DIBBLE repeatedly shoved, kicked, punched, and knee-struck him in the legs, stomach, and ribs. Despite ROBINSON's pleas that he was having a panic attack and needed medical attention, NUTT and DIBBLE continued to attack ROBINSON and failed to call an ambulance while EVANS watched. ROBINSON spent six days in jail and was released with no criminal charges. Concurrent with ROBINSON's arrest, Antioch Police Department officers, including MATTHEW NUTT and JOSHUA EVANS, sent and/or received numerous text messages about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch").

137.    As a result, the text messages discovered in April 2023 imply that Antioch Police Department maliciously and unfairly targeted, arrested, and brutalized ROBINSON and that Defendant Officers' behavior contributed to and stemmed from the discriminatory and violent culture of the Antioch Police Department. Moreover, Mr. ROBINSON withstood humiliation and associated emotional distress corresponding to the text message scandal.  Furthermore, Mr. ROBINSON suffered severe physical injuries caused by Defendants NUTT, DIBBLE, and EVANS's use of excessive force.

**MANDINGO CAIN**

138.    On October 3, 2022, CITY OF ANTIOCH Police Department Officers DEVIN EIGARD, CONSTANTINE KAWALYA, THOMAS SMITH, JONATHAN DOWNIE, and STEVEN MILLER seized MANDINGO CAIN's registered firearm after conducting an unlawful stop and search of Mr. CAIN's vehicle, then without cause, arrested Mr. CAIN. After briefly entering the Quik Stop store at 1108 Sycamore Dr, Antioch, CA 94509, Mr. CAIN and his wife drove out of the store parking lot when Defendants EIGARD and DOWNIE followed them in a police car and turned on their sirens. EIGARD and DOWNIE ordered CAIN through a loudspeaker to pull over in an area where there were no other people around. When CAIN asked why he was

being pulled over, EIGARD claimed that it was because his headlights and windows were tinted. As CAIN provided EIGARD with his driver's license information, Defendants KAWALYA, T. SMITH, serving as KAWALYA's Field Training Officer, and STEVEN MILLER arrived. Defendants EIGARD and DOWNIE then told CAIN to get out of the car. CAIN initially refused and told the officers that he was not on parole. EIGARD then yanked CAIN out of his car while T. SMITH and KAWALYA made his wife exit the car. MILLER instructed KAWALYA to search CAIN's wife, but the search did not yield anything. The officers proceeded to search CAIN's car thoroughly. While searching the car, the officers found marijuana and a registered firearm. The officers put back the marijuana after CAIN asked them to place it back, but they accused CAIN of illegally transporting a firearm. The officers arrested CAIN and transported him to the Martinez Detention Facility. CAIN posted bail and went to court three times, but the charges against him were ultimately dropped. CAIN is still waiting to get his firearm back from the Antioch Police Department. Concurrent with CAIN's arrest, multiple CITY OF ANTIOCH officers sent numerous text messages about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). At least one of the officers involved in CAIN's arrest is a key participant in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants.

139.    As a result, the text messages discovered in April 2023 imply that Antioch Police Department maliciously and unfairly targeted and prosecuted CAIN, and that Defendant CITY OF ANTIOCH officers' behavior stemmed from the discriminatory and violent culture of the CITY OF ANTIOCH Police Department. Moreover, Mr. CAIN withstood humiliation and associated emotional distress corresponding to the text message scandal. Furthermore, Mr. CAIN lost his lawfully possessed firearm and suffered physical and emotional distress from watching CITY OF ANTIOCH Police Officers sexually harass his wife and from being yanked out of his car, arrested, and jailed.

**AMADEO GARCIA, JR.**

On December 19, 2022, CITY OF ANTIOCH Police Department officers used excessive force during an unlawful search of AMADEO GARCIA, JR.'s vehicle, resulting in the arrest of

GARCIA. CITY OF ANTIOCH police Officers (DOES) staked out a motel room rented by GARCIA in Antioch, CA. The DOE officers pulled GARCIA over while he was driving his vehicle, purportedly due to the absence of license plates.  The automobile was newly purchased with dealer tags in the window. The Officers confirmed that the vehicle was in legal standing. Multiple officer DOES arrived on the scene, including a K-9 unit. The K-9 unit alerted officers to the vehicle. The K-9 unit displayed unprofessional behavior, including jumping onto the hood of the vehicle. Officer DOES then removed GARCIA from the vehicle by reaching into the car and unlocking the car door. After removing GARCIA from the vehicle, they proceeded to deploy their taser on GARCIA for an extended length of time. GARCIA was charged with multiple counts of possession. These charges were later dismissed by the court under California Penal Code § 1385. Concurrent with GARCIA's arrest, multiple CITY OF ANTIOCH officers sent numerous racist text messages describing subjects of arrest, and at various points discussed plans to "violate civil rights" and conduct racially-targeted vehicular stops.

As a result, the text messages discovered in April 2023 imply that Antioch Police Department maliciously and unfairly targeted, brutalized, and prosecuted GARCIA, and that Defendant officers' behavior stemmed from the discriminatory and violent culture of the Antioch Police Department. Moreover, Mr. GARCIA withstood humiliation and associated emotional distress corresponding to the text message scandal. Furthermore, due to the Antioch police officers' use of excessive force, GARCIA suffered physical injury as well as incarceration.

**ARON TYSON**

140.    On October 3, 2020, CITY OF ANTIOCH Police Department Officers AMIRI and DOES pulled over ARON TYSON at the intersection of Sycamore Drive and Peppertree Way in Antioch, CA for having tinted car windows, threw TYSON to the ground, searched his vehicle, and arrested him. After TYSON provided the officers with his license and registration, the officers told him to get out of the car, claiming that they could smell marijuana. Neither TYSON nor his girlfriend had been smoking marijuana. The officers asked TYSON if they could search the car, but when TYSON said no, the officers pushed him to the ground, painfully twisted his arms upwards behind his back, and handcuffed him. TYSON had a metal plate in his arm, so he asked the officers

to not be rough with him. However, the officers continued to force TYSON to the ground and hurt his arms. The officers then searched the car and found a firearm and some marijuana. The officers also searched TYSON's girlfriend and found drugs, which they falsely stated belonged to TYSON. The officers arrested TYSON and took him to the station for booking. TYSON posted bail and was later charged with possession of controlled substances. However, the charges were dropped in August 2022.

141.    Concurrent with TYSON's arrest, Defendant CITY OF ANTIOCH Police Officers sent numerous text messages about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). This includes DOE Officers who requested videos of suspects' injuries at the hands of Defendant Officers, and promising to withhold that information:

> **DOE-6:**     Looks so painful lol
> **AMIRI:**     [Video file of a suspect's injuries]
>                Don't share the video…lol
> **DOE-6:**     I don't share anything lol not even the pics bro! It's
>                Good that even though the laws don't keep them in jail they
>                Still get fucked up […]

142.    In the days following Mr. TYSON's arrest, Defendant RAMIREZ texted a group thread of CITY OF ANTIOCH Police Officers and Sergeants, including Defendants AMIRI, ROMBOUGH, HARRIS, GERBER, ADAMS, SMITH, EVANS, HUGHES, GONZALEZ, NUTT, MARCOTTE, DUGGAR, MANLY WILLIAMS, and BLEDSOE, and non-defendant parties, including, but not limited to, John "Spencer" Cox:

**RAMIREZ:**



> **RAMIREZ:**    Bended knee nigger.
> **AMIRI:**      Thirsty nigger,

|  | Donkey nigger |
|---|---|
|  | Ass nigger, |
|  | Transient nigger, |
|  | Panhandling nigger, |
| **RAMIREZ**: | Ungreatful nigger, |
|  | Jackass nigger |
|  | Jaywalking nigger |
|  | 11-25 nigger |
|  | ACO nigger |
|  | Bitch nigger |
| **RAMIREZ**: | Bitch nigger |
|  | Slow nigger |
|  | dead nigger |
|  | body bag nigger |
|  | n10-55 nigger |
|  | 187 nigger |
|  | wild west nigger |
|  | huckleberry nigger |

143.    As a result, the text messages discovered in April 2023 indicate that CITY OF ANTIOCH Police Department maliciously and unfairly targeted, brutalized, and prosecuted ARON TYSON, and that Defendant Officers' behavior contributed to and stemmed from the discriminatory and violent culture of the Antioch Police Department. Moreover, Mr. TYSON withstood humiliation and associated emotional distress corresponding to the text message scandal. Furthermore, due to the Antioch police officers' use of excessive force, TYSON suffered physical injuries in his arms and emotional distress. The items that the officers took while searching him and his vehicle have not yet been returned to him.

## DAUNTE GELLINGTON

On April 30, 2023 at around 5:00 pm,  Defendant CITY OF ANTIOCH Police Department Officer (DOES) falsely accused DAUNTE GELLINGTON of threatening his brother, slammed him to the ground, and attacked him while he was handcuffed. GELLINGTON went to the Antioch Police Department in Antioch, CA with his mother and siblings to file a report for an unrelated matter. After the family submitted the report and went outside, an Antioch Police Officer claimed that GELLINGTON had threatened his brother, even though nobody in the family heard him do so. Four Defendant Officers (DOES) threw GELLINGTON to the ground, handcuffed him, picked him up, slammed him against the ground again, dragged him through concrete, and kicked him while holding him face down. At least one officer DOE pushed their knees into GELLINGTON's back.

When GELLINGTON's mother begged the officers to stop, they threatened to tase or handcuff her if she did not back off. The officer DOES then detained GELLINGTON for an hour before releasing him. GELLINGTON went to the Sutter Health hospital for medical attention afterwards. Concurrent with the officers' beating of GELLINGTON, multiple CITY OF ANTIOCH officers sent numerous text messages about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch").

As a result, the text messages discovered in April 2023 imply that Antioch Police Department maliciously and unfairly targeted and brutalized GELLINGTON, and that Defendant officers' behavior stemmed from the discriminatory and violent culture of the Antioch Police Department. Moreover, Mr. GELLINGTON withstood humiliation and associated emotional distress corresponding to the text message scandal. Furthermore, due to the Antioch police officers' use of excessive force, GELLINGTON suffered severe physical injuries, including a broken toe, bruised ribs, and scars on his knees and shoulders, as well as emotional distress.

## ROBERT YOUNG

On July 3, 2022 at approximately 3 pm, Defendant Officer ERIC ROMBOUGH illegally pulled over, harassed, and robbed ROBERT YOUNG. ROMBOUGH pulled over YOUNG near 1080 Sycamore Drive, Antioch, CA 94509. ROMBOUGH refused to tell YOUNG why he pulled him over. ROMBOUGH then took $900 from YOUNG, locked YOUNG in his patrol car, and stole YOUNG's marijuana. ROMBOUGH then let YOUNG out of the patrol car and drove off without filing a report. Concurrent with YOUNG's encounter with ROMBOUGH, multiple CITY OF ANTIOCH officers sent numerous text messages about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). Additionally, ROMBOUGH boasted about "violating civil rights" and "only stopping [people] cuz they black [sic]."

As a result, the text messages discovered in April 2023 imply that Antioch Police Department maliciously and unfairly targeted YOUNG, and that Defendant Officer ROMBOUGH's behavior stemmed from the discriminatory and violent culture of the Antioch Police Department. Moreover, Mr. YOUNG withstood humiliation and associated emotional distress corresponding to

1  the text message scandal. Furthermore, due to ROMBOUGH's conduct in robbing YOUNG,

2  YOUNG lost $900 and suffered emotional distress.

3  **TERRY THOMAS**

4      144.    On July 12, 2022 at 2903 Campbell Lane, Tracy, CA 95377, CITY OF ANTIOCH

5  Police Department officers, including Defendant Officers ERIC ROMBOUGH, ROBERT

6  GERBER, KYLE HILL, and SCOTT DUGGAR, unlawfully raided the home of TERRY

7  THOMAS's mother without a search warrant, slammed TERRY THOMAS to the ground, and

8  arrested him. Several Antioch police officers and a SWAT team raided the home of Tiffany Turner,

9  TERRY THOMAS's mother. The officers did not present Ms. Turner with a warrant when she

10  asked for one. The officers then slammed TERRY THOMAS to the ground, claiming that he was

11  trying to escape through a window in the back of the home. The officers then arrested, handcuffed,

12  and transported TERRY THOMAS to the juvenile detention hall. While TERRY THOMAS was

13  being transported, the officers continued to search Ms. Turner's home. The officers searched the

14  home for five hours and seized TERRY THOMAS's ID and cell phone. TERRY THOMAS was

15  charged with murder and incarcerated, but his charges were ultimately dropped in August 2023.

16  Concurrent with TERRY THOMAS's arrest, multiple CITY OF ANTIOCH officers sent numerous

17  text messages about Black people, calling them "gorillas," "niggers," "monkeys," and using other

18  targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). In these texts,

19  ROMBOUGH boasted about "violating civil rights" and "only stopping [people] cuz they black

20  [sic]." GERBER also sent texts containing photos of gorillas and referring to Black people as

21  "fag[s]."

22      145.    As a result, the text messages discovered in April 2023 imply that Antioch Police

23  Department maliciously and unfairly targeted, brutalized, and prosecuted TERRY THOMAS, and

24  that Defendant Officers' behavior stemmed from the discriminatory and violent culture of the

25  Antioch Police Department. Moreover, TERRY THOMAS withstood humiliation and associated

26  emotional distress corresponding to the text message scandal. Furthermore, due to the officers' use

27  of excessive force in slamming TERRY THOMAS to the ground, TERRY THOMAS suffered

28  physical pain and injuries as well as emotional distress.

**SHAQUILLE HILLARD**

146.    In September 2022, Antioch PD officers including Officers ARRON HUGHES, and

MORTEZA AMIRI, stopped HILLARD on Pepper Tree and Sycamore in Antioch, and searched his

car.  They found nothing, however, they illegally confiscated HILLARD'S phone. Concurrent with

this incident, CITY OF ANTIOCH officers sent numerous text messages about Black people,

calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects

(i.e.: "faggot," "pussies," "cunt," "fat bitch"). Concurrent to the ongoing harassment of Mr.

HILLARD, Defendant Officers actively engaged in constitutional violations against suspects and to

inflict extrajudicial punishment.

| | |
|---|---|
| **OFFICER-9:** | […]  **"Officer [DOE-9] how long did you know Officer AMIRI and in the course of your friendship did you ever know him to act under color of authority"** |
| **AMIRI:** | **lol putting a pistol in someone's mouth and telling them to stop stealing isn't illegal… it's an act of public service to prevent further victims of crimes.** |
| […] | |
| **ROMBOUGH:** | Can u please get photos of him |
| **OFFICER-15:** | Yup |
| | [photograph] Black tip tattoo 😂 |
| **ROMBOUGH:** | Lmao |

147.    These actions by officers show a conspiracy within the CITY OF ANTIOCH Police

Department in which Defendant Officers and Sergeants acted in concert to illegally detain, search,

assault, and wrongfully arrest people based on racial bias and discrimination.. This conspiracy to act

with discrimination within the ANTIOCH Police Department directly lead to officers wrongfully

detaining and searching Mr. HILLARD, and seizing his phone.

148.    As a result, the text messages discovered in April 2023 imply that Antioch Police

Department maliciously and unfairly targeted and prosecuted Mr. HILLARD, and that Defendant

Officers' behavior stemmed from the discriminatory and violent culture of the Antioch Police

Department. Moreover, Mr. HILLARD withstood ongoing humiliation, physical pain and suffering,

and associated emotional distress corresponding to the text message scandal. HILLARD was

previously searched by the same group of CITY officers in multiple incidents between January of

2020 and September of 2022, during which Antioch officers beat HILLARD (April, 2020), took

1   cash from HILLARD, and accused HILLARD of being part of a gang. Additionally, Antioch PD

2   turned HILLARD over to Oakland gang task force officers, who then interrogated HILLARD about

3   a shooting in 2021.

4       149.    All charges were dropped against HILLARD in June 2023.

5   **DANYEL EARL LACY**

6       150.    On April 22, 2020, at around 2:00 P.M. at 1600 Buchanan Road in Antioch, CA,

7   Antioch police officers wrongfully arrested DANYEL EARL LACY for a gun charge. Antioch

8   Officers, including officers ERIC ROMBOUGH, TIM MANLY WILLIAMS,  AARON HUGHES,

9   KYLE SMITH, JAKE EWART, and JAMES BEDGOOD, began to search a car that did not belong

10  to LACY. The officers claimed they discovered a gun inside of the car. The officers then falsely

11  accused Mr. LACY of illegal possession of a firearm. LACY stated that the gun was not his. The

12  officers arrested Mr. LACY.  These actions by officers show a conspiracy within the ANTIOCH

13  police department by ANTIOCH officers to act in concert to illegally detain, search, assault, and

14  wrongfully arrest people based on racial bias and discrimination. This conspiracy to act with

15  discrimination within the ANTIOCH Police Department directly led to Defendant Officers and

16  DOES wrongfully detaining, searching, and arresting Mr. LACY.

17      151.    As a result, LACY was arrested. Mr. LACY was charged with illegal possession of a

18  firearm. He spent three months in jail. Mr. LACY was unaware of any gun being in the vehicle,

19  never possessed the gun, and made clear to defendants that neither the car, nor the gun, were his.

20  Though Defendants were able to confirm that the vehicle was not owned by Mr. LACY, they

21  arrested him anyway. Concurrent to Mr. LACY's arrest, Defendant CITY OF ANTIOCH Police

22  Department Leadership, was aware of the ongoing racial animus and constitutional violations within

23  the CITY OF ANTIOCH Police Department:

24          **ADAMS:**          I'm in a meeting with [ANTIOCH POLICE
                                DEPARTMENT LEADERSHIP] **GERBER** and
25                              **HOFFMAN** discussing black people.
            **ROMBOUGH**:       I heard 101 bottom line it doesn't matter some gorilla killed
26                              another gorilla.

27

28

152.    Plaintiffs allege Defendants arrested Mr. LACY either having fabricated that a gun was found in the vehicle (without probable cause and with malice), or refusing to investigate Mr. LACY's contentions of innocence with respect to being unaware of the alleged presence of the gun in the vehicle. All the charges were dismissed in August 2023.

**KAYCEE SUITTER**

On December 19, 2022, several CITY OF ANTIOCH Police Department officers who were motivated by racial bias (including but were not limited to Defendant Officers MARCOTTE, SMITH and RODRIGUEZ encountered SUITTER in a parking garage. There, the officers handcuffed and detained SUITTER, subjected her to a search of her person and the vehicle, and arrested her. Concurrent with SUITTER's arrest, multiple CITY OF ANTIOCH officers sent numerous text messages about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). These actions by officers show a conspiracy within the ANTIOCH police department by ANTIOCH officers to act in concert to illegally detain, search, assault, and wrongfully arrest people based on racial bias and discrimination. This conspiracy to act with discrimination within the ANTIOCH police department directly lead to officers wrongfully detaining, searching, and arresting Ms. SUITTER.

The text messages discovered in April 2023 imply that the Antioch Police Department maliciously and unfairly targeted and prosecuted Ms. SUITTER, and that Defendant Officers' behavior stemmed from the discriminatory and violent culture of the Antioch Police Department. Moreover, Ms. SUITTER withstood humiliation, physical injury, financial and property loss, and associated emotional distress corresponding to the text message scandal. Ms. SUITTER spent eight days in jail and missed her first day at a new job, resulting in the loss of employment and opportunity. All charges against SUITTER were dismissed on December 27, 2022.

**MARCELL LEWIS**

153.    On November 15, 2020, at approximately 8:00 A.M., at Sycamore Drive and L Street Antioch, CA 94509, Defendants, CITY OF ANTIOCH Police Officers MORTEZA AMIRI, DANIEL NAVARRETTE, and one unknown Officer (DOE), wrongfully arrested Mr. LEWIS as he

exited a store. Officers AMIRI and NAVARRETTE approached Mr. LEWIS and stated that he had been accused of selling drugs. When Mr. LEWIS denied the accusation, Defendants AMIRI and NAVARRETTE restrained Mr. LEWIS. As AMIRI handcuffed Mr. LEWIS, Officers NAVARRETTE and/or DOE-26 took LEWIS'S bag and wallet and began to search Mr. LEWIS's car. Officers NAVARRETTE and/or DOE-26 found one ounce of marijuana, which was lawfully possessed by Mr. LEWIS. Officers AMIRI, NAVARRETTE, and DOE-26 arrested Mr. LEWIS and transported him to jail. In the days prior to Mr. LEWIS's encounter with DEFENDANTS, Defendant MARCOTTE texted with Defendants ROMBOUGH, MANLY WILLIAMS, DUGGAR, and DOES, in which Defendant ROMBOUGH described their on-duty conduct as "violating civil rights." Defendant CITY OF ANTIOCH Police Sergeant EVANS and Officer ROMBOUGH lamented that bruising "never looks as good, [on Black people] just like jobs and responsibilities" in reference to Black victims of Defendants' violence.  Moreover, CITY OF ANTIOCH Police Department Leadership was fully aware of this race-based misconduct by Defendant Officers, and actively participated in it:

> **AMIRI:**          **["Nigger"] is commonly used around the pd tbh**
> **OFFICER:**       Yea but given the times I wouldn't say that out loud.
> **AMIRI:**          **Every group messages with supervisors and IA sgt's matter of fact it was just said today in our group thread with multiple supervisors in it.**

154.    Resulting from his arrest, Mr. LEWIS was charged with intent to sell. The charge was dropped on June 15, 2023. LEWIS suffered lost wages on the days that he had to dispute the charge in court. Mr. LEWIS sustains emotional distress from the encounter with Defendants.

**GREGORIO YARBOROUGH**

155.    On August 15, 2023, at approximately 3:00 a.m., at 5004 Union Mine Drive, Antioch, CA 94531, Defendant CITY OF ANTIOCH Police Officer JACOB KING shot Gregorio YARBOROUGH multiple times using 40 mm rubber bullets, at the direction of Defendant CITY OF ANTIOCH Police Officers RYAN GEIS, RYAN DUFF, JONATHAN DOWNIE, GUSTAVO JIMENEZ, ASHLEY LUNDIN, and Sergeant GARY LOWTHER. Mr. YARBOROUGH was standing near his girlfriend's house when Defendant Officers GEIS, DUFF, KING, DOWNIE,

1  JIMENEZ, LUNDIN, and LOWTHER held YARBOROUGH at gunpoint and ordered him to raise

2  his hands and lie on his stomach. Mr. YARBOROUGH complied with the officers' instructions.

3  YARBOROUGH did not have any weapons. Mr. YARBOROUGH asked why the officers had

4  stopped him, but GEIS, DUFF, KING, DOWNIE, JIMENEZ, LUNDIN, and LOWTHER did not

5  respond. Instead, Defendant KING shot YARBOROUGH twice in the back using 40mm less lethal

6  rounds. GEIS, DUFF, KING, DOWNIE, JIMENEZ, LUNDIN, and LOWTHER then arrested Mr.

7  YARBOROUGH. LOWTHER and Defendant CITY OF ANTIOCH Lieutenant JOHN FORTNER

8  reviewed the use of force against Mr. YARBOROUGH and found that it was consistent with CITY

9  OF ANTIOCH Police Department training and policy.

10       156.    As a result, Mr. YARBOROUGH suffered from gunshot wounds and bruised ribs.

11  Officers GEIS, DUFF, KING, DOWNIE, JIMENEZ, LUNDIN, and LOWTHER arrested

12  YARBOROUGH for criminal threats, obstruction of a police officer, and violation of a peaceful

13  contact order. The charges were dropped on September 29, 2023. While in custody, Mr.

14  YARBOROUGH was unable to financially provide for his family. YARBOROUGH spent

15  additional money on costs associated with his detention by CITY. Mr. YARBOROUGH sustained

16  emotional distress, physical pain and suffering, physical injuries, medical expenses, and impaired

17  earning capacity as a result of the forceful arrest.

18  **QUINCY MASON**

19       157.    On approximately September 12, 2018, at 5:00 p.m., at 806 W. 7th Street, Antioch,

20  CA 94509, Defendant CITY OF ANTIOCH Police Officers EVANS, AMIRI, STENGER, KYLE

21  SMITH, TJAHJADI, HUGHES, and DOES assaulted and harassed Plaintiff, QUINCY MASON.

22  Mr. MASON was driving and had stopped at a stop sign when Defendant Officers approached Mr.

23  MASON's vehicle from behind. Mr. MASON drove a few more blocks and Defendant Officers

24  turned on their sirens. MASON pulled over and got out of the car with his hands up. While his

25  hands were raised, Defendant Officers, including AMIRI, tased Mr. MASON. Mr. MASON fell to

26  the ground, and Defendant Officers KYLE SMITH and KEVIN TJAHJADI deployed two CITY

27  Police K9s to attack Mr. MASON. While on the ground, Mr. MASON begged the officers to

28  remove the K9s, but Defendant Officers failed to stop the attack. The Defendant Officers placed

1  MASON in handcuffs and he was taken to the CITY OF ANTIOCH Police Department and was

2  subsequently released.

3      158.    During another incident with CITY OF ANTIOCH Police Department which took

4  place on or about December 1, 2020, Defendant Officer ROMBOUGH shot MASON with 40 mm

5  rubber bullets without justification. After spotting MASON while patrolling at his residence,

6  ROMBOUGH and Defendant Officer MARCOTTE claimed that they saw MASON discard a

7  firearm, chased him, and shot him in the chest with a 40 mm less-lethal launcher. ROMBOUGH,

8  MARCOTTE, and Defendant Sergeant RICK HOFFMAN then arrested MASON. HOFFMAN later

9  reviewed the use of force and found it to be within Antioch Police Department policy. Shortly after

10  this incident, on December 7, 2020, ROMBOUGH sent Defendant Sgt. EVANS text messages

11  about Mr. Mason which stated, "Yeah buddy, I was bummed that beast [MASON] was so fat cuz he

12  didn't bruise up very fast." EVANS replied, "It never looks as good on black guys." ROMBOUGH

13  responded: "Just like jobs and responsibilities."  In or around November 2021, Defendant Officer

14  ROMBOUGH sent another text admitting "I'm only stopping them cuz they black." He then

15  followed by saying "Fuck them kill each other." These actions by Defendant Officers show a

16  conspiracy within the CITY OF ANTIOCH Police Department by Defendant Officers to act in

17  concert to illegally detain, search, assault, and wrongfully arrest people based on racial bias and

18  discrimination. This conspiracy to act with discrimination within the ANTIOCH police department

19  directly led to officers wrongfully detaining, searching, and arresting Mr. MASON, and subjected

20  him to unreasonable force.

21      159.    As a result, Mr. MASON suffered from racial profiling and harassment. MASON

22  also suffered unreasonable force from the dog bite wounds when he was arrested forcibly and

23  without probable cause.

24  **TAHJAY MCCULLOUGH**

25      On approximately November 10, 2020, at approximately 11:00 a.m., Defendants CITY OF

26  ANTIOCH Police Officers PRIETO, RODRIGUEZ and DOES assaulted TAHJAY

27  MCCULLOUGH at the Shell Gas Station located at 2838 Lone Tree Drive, Antioch, CA, 94509.

28  The arrest was motivated by racial animus.  At the time, MCCULLOUGH was only a 16-year old

minor.

On the above date, Mr. MCCULLOUGH had been a passenger in the backseat of a vehicle parked at a Shell gas pump.  Defendants PRIETO, RODRIGUEZ, and other DOE Officers pulled MCCULLOUGH out of the back seat and handcuffed him.  Then, they slammed MCCULLOUGH face-first to the ground and immediately kicked and punched MCCULLOUGH.  During the beating, officers PRIETO and RODRIGUEZ used racially derogatory terms at Mr. MCCULLOUGH.  The racial epithets included but are not limited to "nigger" and "black Gorilla".

As a result of the actions of PRIETO, RODRIGUEZ and DOE Officers, Mr. MCCULLOUGH suffered from multiple wounds and bruises to his face and was subjected to severe excessive force accompanied by vile, racist language. MCCULLOUGH remains in custody at Martinez Juvenile Detention Facility for multiple criminal charges stemming from this arrest.

On March 27, 2023, the Contra Costa County District Attorney's Office produced a report regarding racist text messages exchanged between Defendant CITY OF ANTIOCH Police Department Officers and Leadership.  In one entry, on June 10, 2020, Defendants PRIETO and RODRIGUEZ "blame[d] the blacks" for all the crime in the area. In another entry, on September 9, 2020, PRIETO and RODRIGUEZ used text messages their plans to target specific groups, implying Black and Latinx people, for traffic citations. The last page of the report provides data regarding PRIETO and RODRIGUEZ's arrest statistics between September 2020 and October 2020. These statistics demonstrate that the Defendants CITY OF ANTIOCH Police Officers and Sergeants, disproportionately targeted Black and Latinx people.  This discrimination directly led to the wrongful and injurious arrest of MCCULLOUGH.

**JAMARI ALLEN**

160.    On approximately August 21, 2020, Plaintiff JAMARI ALLEN was driving in Antioch, CA when he encountered a vehicle checkpoint staffed by multiple DOE Officers of the CITY OF ANTIOCH Police Department. JAMARI ALLEN admitted to one DOE Officer he did not have a driver's license, so the officer directed JAMARI ALLEN to pull away from the checkpoint and into an isolated parking lot nearby. JAMARI ALLEN became fearful by the isolated location and exited the vehicle. A search ensued involving multiple CITY OF ANTIOCH Police

Officers, including Defendants AMIRI with his CITY OF ANTIOCH Canine Unit, WENGER, and GREEN. When JAMARI ALLEN noticed the K9 unit, he announced loudly to the Officers that he was currently hiding in the bushes, and told them: "You don't need to release the dog, I give up. I'm coming out with my hands up. My hands are up!" However, before JAMARI ALLEN could even stand up, a CITY Officer yelled, falsely: "He's got a gun!" JAMARI ALLEN did not have any weapon in his possession, and had clearly raised both hands without holding anything with them. Even so, another CITY Police Officer stated that they would shoot JAMARI ALLEN. While JAMARI ALLEN was already in the custody of CITY Police Officers, Defendant AMIRI repeatedly sicced his K9 onto JAMARI ALLEN. The K9 was not deployed to drag JAMARI ALLEN or get him under control by the CITY Police Officers, in fact, Defendant AMIRI never took the dog off the leash. AMIRI instead stood stationary while the K9 viciously attacked JAMARI ALLEN again and again, no less than six times. As a result of this unnecessary and excessive force, JAMARI ALLEN suffered severe injuries to his left leg and hip.

161.    While JAMARI ALLEN was being treated for these injuries at an Antioch Hospital, Defendant AMIRI entered and took photographs of JAMARI ALLEN's injuries. AMIRI laughed as he told JAMARI ALLEN that he was "lucky that he didn't get it as bad as the others," and that he "didn't get it as bad as he deserved." Defendant AMIRI then authored a false police report that differed from the description AMIRI privately provided to other Defendant Officers via text message. Just after JAMARI ALLEN's encounter with Defendants, on the evening of August 22, 2020, Defendants WENGER and AMIRI planned with each other via text message to use the K9 to bite subjects they were to encounter that night:

> **WENGER:**    We need to get into something tonight bro!! Lets go 3 nights in a row dog bite!!!
> **AMIRI:**    [emphasized above text]
> **WENGER:**    Lets get faggot ass [a lieutenant] something to stress about lol

162.    After Defendant AMIRI took photographs of JAMARI ALLEN in the hospital, AMIRI sent the photographs to Defendants WENGER and ROMBOUGH via text message, among other CITY OF ANTIOCH POLICE DEPARTMENT Officers. In these messages, the extent of JAMARI ALLEN's injuries and AMIRI's use of extreme force were celebrated by multiple Defendant Officers. Defendant

GREEN later reviewed the use of force and took no disciplinary or corrective action.

163.    Criminal charges against JAMARI ALLEN were filed but dismissed subsequent to this encounter with Defendants.

## CAUSES OF ACTION FOR PLAINTIFF TRENT ALLEN

### TRENT ALLEN'S FIRST CAUSE OF ACTION
**(42 U.S.C. § 1983 – Unreasonable Seizure)**
**(Plaintiff TRENT ALLEN against Defendants ROMBOUGH, AMIRI, GERBER, ADAMS, SMITH, MARCOTTE, MANLY-WILLIAMS, DUGGAR, EVANS, RAMIREZ, and DOES 26 - 100)**

164.    The foregoing allegations are realleged and incorporated herein.

165.    In doing the acts complained of herein, Defendants ROMBOUGH, AMIRI, GERBER, ADAMS, SMITH, MARCOTTE, MANLY WILLIAMS, DUGGAR, EVANS, RAMIREZ, and/or DOES 26-100, individually and/or while acting in concert with one another, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

    a.   The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

    b.   The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

166.    In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards minority communities by subjecting them to civil rights violations and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, planting evidence, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. Specifically as to Plaintiff TRENT ALLEN, the DEFENDANTS used racial slurs including "nigger" as they beat ALLEN. As a result, Plaintiff, and persons similarly

1   situated to him, was subjected to unequal and discriminatory treatment, civil rights violations, and

2   other misconduct by Defendants.

3           WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

4   **TRENT ALLEN'S SECOND CAUSE OF ACTION**
    **(42 U.S.C. § 1983 – Discriminatory Enforcement and Violation of Privacy)**

5   **(Plaintiff TRENT ALLEN against Defendants ROMBOUGH, AMIRI, GERBER, ADAMS,**
    **SMITH, MARCOTTE, MANLY-WILLIAMS, DUGGAR, EVANS, RAMIREZ, and DOES 26**

6   **- 100)**

7       167.    The foregoing allegations are realleged and incorporated herein.

8       168.    In doing the acts complained of herein, Defendants ROMBOUGH, AMIRI,

9   GERBER, ADAMS, SMITH, MARCOTTE, MANLY-WILLIAMS, DUGGAR, EVANS,

10  RAMIREZ, and DOES 26 – 100, individually and/or while acting in concert with one another,

11  and/or while failing to intervene and/or obstructing justice, did act under color of state law to

12  deprive Plaintiff TRENT ALLEN as alleged heretofore of certain constitutionally protected rights,

13  including, but not limited to:

14          a.  The right to be free from bias, including racial bias in the performance of the

15              defendant's duties.

16          b.  The right to be free from actions designed to humiliate, embarrass, belittle,

17              dehumanize, humiliate and denigrate Plaintiff TRENT ALLEN based on his race

18              in violation of the Fourteenth Amendment.

19          c.  The right to be free from invasions of privacy by public display of intimate

20              pictures of Plaintiff TRENT ALLEN without lawful purpose.

21      169.    In doing the acts complained of herein, Defendants engaged in discriminatory

22  conduct towards minority communities by subjecting them to civil rights violations and more

23  frequent and aggressive policing than similarly situated individuals. Specifically as to TRENT

24  ALLEN, the DEFENDANTS used racial slurs including "nigger" as they beat TRENT ALLEN.

25  Defendants, including but not limited to ROMBOUGH, photographed TRENT ALLEN's likeness

26  including but not limited to images of the injuries DEFENDANTS inflicted onto Plaintiff's body,

27  and circulated these images of TRENT ALLEN via text messages shared by Defendants with

28

recipients both within the CITY OF ANTIOCH POLICE DEPARTMENT and externally. Said messages included racially discriminatory language and epithets describing TRENT ALLEN, including but not limited to "nigger," as well as general exclamations celebrating the use of force to injure ALLEN. The recipients of these images of TRENT ALLEN, including but not limited to the above-named Defendants, responded in messages celebrating the infliction of medical injury to Plaintiff's person and/or failed to intervene.

170.     As a result of the acts described above, Plaintiff TRENT ALLEN was subjected to unequal and discriminatory treatment, civil rights violations, and deprived of his well-settled constitutional rights to privacy and substantive due process under the Fourteenth Amendment of the United States Constitution, which extends to pretrial detainees. The circulation of the photographic images of TRENT ALLEN were pursuant to a longstanding practice or custom, policy, or ratification wherein leadership, officials, employees, and agents of the CITY OF ANTIOCH Police Department deliberately chose to invade TRENT ALLEN's privacy, photographed his likeness and body including injuries inflicted onto him by DEFENDANTS, and that CITY OF ANTIOCH final-policy makers engaged with, ratified, and that DEFENDANTS knew or should have known were unconstitutional.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**CAUSES OF ACTION FOR PLAINTIFF TERRYONN PUGH**

**TERRYONN PUGH'S FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983 – Unreasonable Seizure)**
**(Plaintiff TERRYONN PUGH against Defendants EVANS, ADAMS, DUGGAR, GERBER, T. SMITH, MARCOTTE, MANLY WILLIAMS, ROMBOUGH, NUTT, MCDONALD, and**
**DOES 26 – 100**

171.     The foregoing allegations are realleged and incorporated herein.

172.     In doing the acts complained of herein, Defendants EVANS, ADAMS, DUGGAR, GERBER, T. SMITH, MARCOTTE, MANLY WILLIAMS, ROMBOUGH, NUTT, MCDONALD, and Does 26 – 100, individually and/or while acting in concert with one another, and/or when

failing to intervene when under a duty to do so, and/or obstructing justice, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

    a. The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

    b. The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

173. In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards minority communities by subjecting them to civil rights violations and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, planting evidence, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. Specifically as to TERRYONN DESHANN PUGH, the DEFENDANTS used racial slurs including "nigger" before and after shooting Pugh with a 40mm rubber bullet and slamming his face into the ground. As a result, Plaintiff, and persons similarly situated to him, was subjected to unequal and discriminatory treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**TERRYONN PUGH'S SECOND CAUSE OF ACTION**
**(42 U.S.C. § 1983 – Discriminatory Enforcement and Violation of Privacy)**
**(Plaintiff TERRYONN PUGH against Defendants EVANS, ADAMS, DUGGAR, GERBER, T. SMITH, MARCOTTE, MANLY WILLIAMS, ROMBOUGH, PRIETO, RODRIGUEZ, NUTT, MCDONALD, and DOES 26 – 100**

174. The foregoing allegations are realleged and incorporated herein.

175. In doing the acts complained of herein, Defendants EVANS, ADAMS, DUGGAR, GERBER, T. SMITH, MARCOTTE, MANLY WILLIAMS, ROMBOUGH, PRIETO, RODRIGUEZ, NUTT, MCDONALD, and DOES 26 - 100, individually and/or while acting in concert with one another, and/or while failing to intervene and/or obstructing justice, did act under

color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

    a.   The right to be free from bias, including racial bias in the performance of the defendant's duties.

    b.   The right to be free from actions designed to humiliate, embarrass, belittle, dehumanize, humiliate and denigrate Plaintiff PUGH based on his race in violation of the Fourteenth Amendment.

    c.   The right to be free from invasions of privacy by public display of intimate pictures of Plaintiff PUGH without lawful purpose.

176.　In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards minority communities by subjecting them to civil rights violations and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, planting evidence, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. Specifically as to TERRYONN DESHANN PUGH, the DEFENDANTS used racial slurs including "nigger" before and after shooting Pugh with a 40mm rubber bullet and slamming his face into the ground, then photographed his bare buttocks to publicly display his injuries for lurid purposes. As a result, Plaintiff, and persons similarly situated to him, was subjected to unequal and discriminatory treatment, civil rights violations, and other misconduct by Defendants. The recipients of these images of TERRYONN PUGH, including but not limited to the above-named Defendants, responded in messages celebrating the infliction of medical injury to Plaintiff's person and/or failed to intervene.

177.　As a result of the acts described above, Plaintiff TERRYONN PUGH was subjected to unequal and discriminatory treatment, civil rights violations, and deprived of his well-settled constitutional rights to privacy and substantive due process under the Fourteenth Amendment of the United States Constitution, which extends to pretrial detainees. The circulation of the photographic images of TERRYONN PUGH were pursuant to a longstanding practice or custom, policy, or

ratification wherein leadership, officials, employees, and agents of the CITY OF ANTIOCH Police Department deliberately chose to invade TERRYONN PUGH's privacy, photographed his likeness and body including injuries inflicted onto him by DEFENDANTS, and that CITY OF ANTIOCH final-policy makers engaged with, ratified, and that DEFENDANTS knew or should have known were unconstitutional.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## CAUSES OF ACTION FOR PLAINTIFF SHAGOOFA KHAN

### SHAGOOFA KHAN'S FIRST CAUSE OF ACTION
**(42 U.S.C. § 1983 –Unreasonable Seizure)**
**(Plaintiff SHAGOOFA KHAN against Defendants EVANS, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, and DOES 26 - 100)**

178.    The foregoing allegations are realleged and incorporated herein.

179.    In doing the acts complained of herein, Defendants EVANS, MANLY WILLIAMS, LENDERMAN, BLEDSOE, SMITH, and/or DOES 26-100, individually and/or while acting in concert with one another, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

        a.  The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

        b.  The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

180.    Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

181.    In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards SHAGOOFA KHAN as a member of minority communities by subjecting them to civil rights violations and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports,

planting evidence, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. As a result, Plaintiff, and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### SHAGOOFA KHAN'S SECOND CAUSE OF ACTION
**(42 U.S.C. § 1983 - Malicious Prosecution)**
**(Plaintiff <u>SHAGOOFA KHAN</u> against Defendants EVANS, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, and DOES 26 - 100)**

182.     The foregoing allegations are realleged and incorporated herein.

183.     Defendants maliciously prosecuted the Plaintiffs as stated herein. Defendants arrested SHAGOOFA KHAN without probable cause to arrest her.

184.     The Defendants brought claims against Plaintiff SHAGOOFA KHAN with subjective malice. Defendants used bias, including racial bias, gender bias, sexuality bias, bias against body-types, and/or religious bias in determining their decisions to prosecute the named Plaintiffs, and/or fabricated evidence used to falsely justify the arrest that was otherwise without probable cause.

185.     The criminal actions against SHAGOOFA KHAN were dismissed, and at no time did Ms. KHAN enter a plea of guilty. Plaintiff suffered damages due to the malicious prosecution brought on by the Defendants in this matter.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### CAUSES OF ACTION FOR PLAINTIFF ADAM CARPENTER

### ADAM CARPENTER'S FIRST CAUSE OF ACTION
**(42 U.S.C. § 1983 –Unreasonable Seizure)**
**(Plaintiff ADAM CARPENTER against Defendants ROMBOUGH, MARCOTTE, DUGGAR, AMIRI, MANLY WILLIAMS, and DOES 26 - 100)**

186.     The foregoing allegations are realleged and incorporated herein.

187.    In doing the acts complained of herein, Defendants ROMBOUGH, MARCOTTE, DUGGAR, AMIRI, MANLY WILLIAMS, and/or DOES 26-100, individually and/or while acting in concert with one another, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

        a.    The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

        b.    The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

188.    Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

189.    In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards ADAM CARPENTER as a member of minority communities by subjecting them to civil rights violations and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, planting evidence, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. As a result, Plaintiffs and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### ADAM CARPENTER'S SECOND CAUSE OF ACTION
**(42 U.S.C. § 1983 - Malicious Prosecution)**
**(Plaintiff ADAM CARPENTER against Defendants ROMBOUGH, MARCOTTE, DUGGAR, AMIRI, MANLY WILLIAMS, and DOES 26 - 100)**

190.    The foregoing allegations are realleged and incorporated herein.

191.    Defendants maliciously prosecuted Plaintiff as stated herein. Defendants arrested ADAM CARPENTER without probable cause to arrest him.

192.    The defendants brought claims against ADAM CARPENTER with subjective malice. Defendants used bias, including racial bias, gender bias, sexuality bias, bias against body-

1   types, and/or religious bias in determining their decisions to prosecute the named Plaintiffs, and/or

2   fabricated evidence used to falsely justify the arrest that was otherwise without probable cause.

3        193.    Plaintiff resolved the actions against him. Plaintiff ultimately resolved the actions in

4   his favor. Plaintiff suffered damages due to the malicious prosecution brought on by the Defendants

5   in this matter.

6        WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

7

8   **CAUSES OF ACTION FOR PLAINTIFF JOSHUA BUTLER**

9   **JOSHUA BUTLER'S FIRST CAUSE OF ACTION**

10  **(42 U.S.C. § 1983 –Unreasonable Seizure)**

11  **(Plaintiff JOSHUA BUTLER against Defendants EVANS, MILNER, HILL, and DOES 26 - 100)**

12       194.    The foregoing allegations are realleged and incorporated herein.

13       195.    In doing the acts complained of herein, Defendants EVANS, MILNER, HILL, and/or

14  DOES 26-100, individually and/or while acting in concert with one another, did act under color of

15  state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights,

16  including, but not limited to:

17          a.   The right to be free from unreasonable police use of force in violation of the

18             Fourth Amendment;

19          b.   The right to be free from unreasonable searches and seizures in violation of the

20             Fourth Amendment.

21       196.    Said rights are substantive guarantees under the Fourth and/or Fourteenth

22  Amendments to the United States constitution.

23       197.    In doing the acts complained of herein, Defendants engaged in discriminatory

24  conduct towards JOSHUA BUTLER as a member of minority communities by subjecting them to

25  civil rights violations and more frequent and aggressive policing than similarly situated individuals.

26  These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings,

27  false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports,

28

planting evidence, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. As a result, Plaintiffs and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### JOSHUA BUTLER'S SECOND CAUSE OF ACTION
**(42 U.S.C. § 1983 - Malicious Prosecution)**
**(Plaintiff JOSHUA BUTLER against Defendants EVANS, MILNER, HILL, and DOES 26 - 100)**

198.     The foregoing allegations are realleged and incorporated herein.

199.     Defendants maliciously prosecuted Plaintiff as stated herein. Defendants arrested JOSHUA BUTLER without probable cause to arrest him.

200.     The defendants brought claims against Plaintiff with subjective malice. Defendants used bias, including racial bias, gender bias, sexuality bias, bias against body-types, and/or religious bias in determining their decisions to prosecute the named Plaintiff, and/or fabricated evidence used to falsely justify the arrest that was otherwise without probable cause.

201.     Plaintiff resolved the actions against him. Plaintiff ultimately resolved the actions in his favors. Plaintiff suffered damages due to the malicious prosecution brought on by the Defendants in this matter.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.


### CAUSES OF ACTION FOR PLAINTIFF DEJON RICHARDS

### DEJON RICHARDS' FIRST CAUSE OF ACTION
**(42 U.S.C. § 1983 –Unreasonable Seizure)**
**(Plaintiff DEJON RICHARDS against Defendants DUGGAR, and DOES 1 - 100)**

202.     The foregoing allegations are realleged and incorporated herein.

203.     In doing the acts complained of herein, Defendants DUGGAR, and/or DOES 1-100, individually and/or while acting in concert with one another, did act under color of state law to

1  deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not

2  limited to:

a.  The right to be free from unreasonable police use of force in violation of the

   Fourth Amendment;

b.  The right to be free from unreasonable searches and seizures in violation of

   the Fourth Amendment.

204.  Said rights are substantive guarantees under the Fourth and/or Fourteenth

Amendments to the United States constitution.

205.  In doing the acts complained of herein, Defendants engaged in discriminatory

conduct towards DEJON RICHARDS as a member of minority communities by subjecting them to

civil rights violation and more frequent and aggressive policing than similarly situated individuals.

These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings,

false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, denial

of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct

based on race and/or gender. As a result, Plaintiffs and persons similarly situated to them, were

subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**DEJON RICHARDS' SECOND CAUSE OF ACTION**
**(42 U.S.C. § 1983 - Malicious Prosecution)**
**(Plaintiff DEJON RICHARDS against Defendants DUGGAR, and DOES 1 - 100)**

206.  The foregoing allegations are realleged and incorporated herein.

207.  Defendants maliciously prosecuted the Plaintiff as stated herein. Defendants arrested

DEJON RICHARDS without probable cause to arrest him.

208.  Defendants brought claims against Plaintiff with subjective malice. Defendants used

bias, including racial bias, gender bias, sexuality bias, bias against body-types, and/or religious bias

in determining their decisions to prosecute the named Plaintiffs, and/or fabricated evidence used to

falsely justify the arrest that was otherwise without probable cause.

209.    Plaintiff ultimately resolved the actions in his favor. Plaintiff suffered damages due to the malicious prosecution brought on by the Defendants in this matter.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## CAUSES OF ACTION FOR PLAINTIFF DRESHAWN JACKSON

### DRESHAWN JACKSON'S FIRST CAUSE OF ACTION
(42 U.S.C. § 1983 – Unreasonable Seizure)
(Plaintiff DRESHAWN JACKSON against Defendants ROMBOUGH and DOES 26 - 100)

210.    The foregoing allegations are realleged and incorporated herein.

211.    In doing the acts complained of herein, Defendants ROMBOUGH and/or DOES 26-100, individually and/or while acting in concert with one another, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

    a.    The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

    b.    The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

212.    Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

213.    In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards DRESHAWN JACKSON as a member of minority communities by subjecting them to civil rights violations and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, planting evidence, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. As a result, Plaintiffs and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

1    WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

2                   **DRESHAWN JACKSON'S SECOND CAUSE OF ACTION**
                        **(42 U.S.C. § 1983 - Malicious Prosecution)**
3    **(Plaintiffs DRESHAWN JACKSON against Defendants ROMBOUGH and DOES 26 - 100)**

4        214.    The foregoing allegations are realleged and incorporated herein.

5        215.    Defendants maliciously prosecuted the Plaintiff as stated herein. Defendants arrested

6    DRESHAWN JACKSON without probable cause to arrest him.

7        216.    Defendants brought claims against Plaintiff with subjective malice. Defendants used

8    bias, including racial bias, gender bias, sexuality bias, bias against body-types, and/or religious bias

9    in determining their decisions to prosecute the named Plaintiffs, and/or fabricated evidence used to

10   falsely justify the arrest that was otherwise without probable cause.

11       217.    Plaintiff ultimately resolved the actions in his favor. Plaintiff suffered damages due

12   to the malicious prosecution brought on by the Defendants in this matter.

13       WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

14

15              **CAUSES OF ACTION FOR PLAINTIFF KARDELL SMITH**

16
              **KARDELL SMITH 'S FIRST CAUSE OF ACTION**
17                      **(42 U.S.C. § 1983 – Unreasonable Seizure)**
     **(Plaintiff KARDELL SMITH against Defendants AMIRI, ROMBOUGH, and DOES 26 - 100)**
18
         218.    The foregoing allegations are realleged and incorporated herein.
19
         219.    In doing the acts complained of herein, Defendants AMIRI, ROMBOUGH, and/or
20
     DOES 26-100, individually and/or while acting in concert with one another, did act under color of
21
     state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights,
22
     including, but not limited to:
23
             a.   The right to be free from unreasonable police use of force in violation of the
24
                  Fourth Amendment;
25
             b.   The right to be free from unreasonable searches and seizures in violation of the
26
                  Fourth Amendment.
27

28

220.     Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

221.     In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards KARDELL SMITH as a member of minority communities by subjecting them to civil rights violations and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, planting evidence, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. As a result, Plaintiffs and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### KARDELL SMITH 'S SECOND CAUSE OF ACTION
**(42 U.S.C. § 1983 - Malicious Prosecution)**
**(Plaintiff KARDELL SMITH Against Defendants AMIRI, ROMBOUGH, and DOES 26 - 100)**

222.     The foregoing allegations are realleged and incorporated herein.

223.     Defendants maliciously prosecuted the Plaintiff as stated herein. Defendants arrested KARDELL SMITH without probable cause to arrest them.

224.     The defendants brought claims against Plaintiff with subjective malice. Defendants used bias, including racial bias, gender bias, sexuality bias, bias against body-types, and/or religious bias in determining their decisions to prosecute the named Plaintiffs, and/or fabricated evidence used to falsely justify the arrest that was otherwise without probable cause.

225.     Plaintiff ultimately resolved the actions in his favor. Plaintiff suffered damages due to the malicious prosecution brought on by the Defendants in this matter.

WHEREFORE, Plaintiff pray for relief as hereinafter set forth.

### CAUSES OF ACTION FOR PLAINTIFF DANIEL MACKIN

### DANIEL MACKIN'S FIRST CAUSE OF ACTION

**(42 U.S.C. § 1983 –Unreasonable Seizure)**
**(Plaintiff DANIEL MACKIN Against Defendants ROMBOUGH, MARCOTTE, MILNER, KOCH, ADAMS, and DOES 26 - 100)**

226.    The foregoing allegations are realleged and incorporated herein.

227.    In doing the acts complained of herein, Defendants ROMBOUGH, MARCOTTE, MILNER, KOCH, ADAMS, and/or DOES 26-100, individually and/or while acting in concert with one another, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

        a.    The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

        b.    The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

228.    Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

229.    In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards DANIEL MACKIN as a member of minority communities by subjecting them to civil rights violations and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, planting evidence, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. As a result, Plaintiffs and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**CAUSES OF ACTION FOR PLAINTIFF TERRY ROBINSON, JR.**

**TERRY ROBINSON, JR.'S FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983 –Unreasonable Seizure)**
**(Plaintiff TERRY ROBINSON, JR. Against Defendants NUTT, DIBBLE, EVANS, and DOES 26 - 100)**

230.    The foregoing allegations are realleged and incorporated herein.

231.    In doing the acts complained of herein, Defendants NUTT, DIBBLE, EVANS, and/or DOES 26-100, individually and/or while acting in concert with one another, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

      a.    The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

      b.    The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

232.    Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

233.    In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards TERRY ROBINSON JR. as a member of minority communities by subjecting them to civil rights violations and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, planting evidence, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. As a result, Plaintiffs and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.


## CAUSES OF ACTION FOR PLAINTIFF MANDINGO CAIN

### MANDINGO CAIN'S FIRST CAUSE OF ACTION
(42 U.S.C. § 1983 –Unreasonable Seizure)
(Plaintiff MANDINGO CAIN against Defendants EIGARD, KAWALYA, T. SMITH, DOWNIE, MILLER, and DOES 26 - 100)

234.    The foregoing allegations are realleged and incorporated herein.

235.    In doing the acts complained of herein, Defendants EIGARD, KAWALYA, T. SMITH, DOWNIE, MILLER, and DOES 26-100, individually and/or while acting in concert with one another, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

        a.  The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

        b.  The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

236.    Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

237.    In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards MANDINGO CAIN as a member of minority communities by subjecting them to civil rights violations and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, planting evidence, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. As a result, Plaintiffs and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## MANDINGO CAIN'S SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 - Malicious Prosecution)
### (Plaintiff MANDINGO CAIN against Defendants EIGARD, KAWALYA, T. SMITH, DOWNIE, MILLER, and DOES 26 - 100)

238.    The foregoing allegations are realleged and incorporated herein.

239.    Defendants maliciously prosecuted MANDINGO CAIN as stated herein. Defendants arrested Plaintiff without probable cause to arrest him.

240.    Defendants brought claims against Plaintiff with subjective malice. Defendants used bias, including racial bias, gender bias, sexuality bias, bias against body-types, and/or religious bias

1  in determining their decisions to prosecute the named Plaintiffs, and/or fabricated evidence used to

2  falsely justify the arrest that was otherwise without probable cause.

3      241.    Plaintiff ultimately resolved the actions in his favor. Plaintiff suffered damages due

4  to the malicious prosecution brought on by the Defendants in this matter.

5      WHEREFORE, Plaintiff pray for relief as hereinafter set forth.

6

7  **CAUSES OF ACTION FOR PLAINTIFF AMADEO GARCIA, JR.**

8  **AMADEO GARCIA, JR.'S FIRST CAUSE OF ACTION**
   **(42 U.S.C. § 1983 –Unreasonable Seizure)**
9  **(Plaintiff AMADEO GARCIA, JR. against Defendants MARCOTT, SMITH, and DOES 1 -**
10  **100)**

11      242.    The foregoing allegations are realleged and incorporated herein.

12      243.    In doing the acts complained of herein, Defendants DOES 1-100, individually and/or

13  while acting in concert with one another, did act under color of state law to deprive Plaintiff as

14  alleged heretofore of certain constitutionally protected rights, including, but not limited to:

15          a.    The right to be free from unreasonable police use of force in violation of the

16                Fourth Amendment;

17          b.    The right to be free from unreasonable searches and seizures in violation of

18                the Fourth Amendment.

19      244.    Said rights are substantive guarantees under the Fourth and/or Fourteenth

20  Amendments to the United States constitution.

21      245.    In doing the acts complained of herein, Defendants engaged in discriminatory

22  conduct towards AMADEO GARCIA JR. as a member of minority communities by subjecting him

23  to civil rights violation and more frequent and aggressive policing than similarly situated

24  individuals. These civil rights violations and/or misconduct included, but was not limited to,

25  assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping,

26  falsifying reports, denial of equal protection, racial discrimination, conspiracy to violate civil rights

27  and/or other misconduct based on race and/or gender. As a result, Plaintiffs and persons similarly

28

situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### AMADEO GARCIA, JR.'S SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 - Malicious Prosecution)
### (Plaintiff AMADEO GARCIA, JR. against Defendants MARCOTTE, SMITH, and DOES 1 - 100)

246.    The foregoing allegations are realleged and incorporated herein.

247.    Defendants maliciously prosecuted the Plaintiff as stated herein. Defendants arrested AMADEO GARCIA JR. without probable cause.

248.    Defendants brought claims against Plaintiff with subjective malice. Defendants used bias, including racial bias, gender bias, sexuality bias, bias against body-types, and/or religious bias in determining their decisions to prosecute AMADEO GARCIA JR., and/or fabricated evidence used to falsely justify the arrest.

249.    Plaintiff ultimately resolved the actions in his favor. Plaintiff suffered damages due to the malicious prosecution brought on by the Defendants in this matter.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.


### CAUSES OF ACTION FOR PLAINTIFF ARON TYSON

### ARON TYSON'S FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983 –Unreasonable Seizure)
### (Plaintiff ARON TYSON against Defendants AMIRI and DOES 26 - 100)

250.    The foregoing allegations are realleged and incorporated herein.

251.    In doing the acts complained of herein, Defendants AMIRI and DOES 26-100, individually and/or while acting in concert with one another, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

a.    The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

b.  The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

252.    Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

253.    In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards ARON TYSON as a member of minority communities by subjecting them to civil rights violations and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, planting evidence, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. As a result, Plaintiffs and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### ARON TYSON'S SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 - Malicious Prosecution)
### (Plaintiff ARON TYSON against Defendants AMIRI and DOES 26 - 100)

254.    The foregoing allegations are realleged and incorporated herein.

255.    Defendants maliciously prosecuted the Plaintiff as stated herein. Defendants arrested ARON TYSON without probable cause.

256.    Defendants brought claims against Plaintiff with subjective malice. Defendants used bias, including racial bias, gender bias, sexuality bias, bias against body-types, and/or religious bias in determining their decisions to prosecute the named Plaintiff, and/or fabricated evidence used to falsely justify the arrest that was otherwise without probable cause.

257.    Plaintiff ultimately resolved the actions in his favor. Plaintiff suffered damages due to the malicious prosecution brought on by the Defendants in this matter.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### CAUSES OF ACTION FOR PLAINTIFF DAUNTE GELLINGTON

## DAUNTE GELLINGTON'S FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983 –Unreasonable Seizure)
### (Plaintiff DAUNTE GELLINGTON against Defendants DOES 1 - 100)

258.    The foregoing allegations are realleged and incorporated herein.

259.    In doing the acts complained of herein, Defendants DOES 1-100, individually and/or while acting in concert with one another, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

    a.    The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

    b.    The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

260.    Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

261.    In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards DAUNTE GELLINGTON as a member of minority communities by subjecting them to civil rights violation and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. As a result, Plaintiffs and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## CAUSES OF ACTION FOR PLAINTIFF ROBERT YOUNG

## ROBERT YOUNG'S FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983 –Unreasonable Seizure)
### (Plaintiff ROBERT YOUNG against Defendants ROMBOUGH, and DOES 1 - 100)

262.    The foregoing allegations are realleged and incorporated herein.

263.    In doing the acts complained of herein, Defendants ROMBOUGH, and/or DOES 1-100, individually and/or while acting in concert with one another, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

        a.     The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

        b.     The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

264.    Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

265.    In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards ROBERT YOUNG as a member of minority communities by subjecting them to civil rights violation and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. As a result, Plaintiffs and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.


**CAUSES OF ACTION FOR PLAINTIFF TERRY THOMAS**

**TERRY THOMAS' FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983 –Unreasonable Seizure)**
**(Plaintiff TERRY THOMAS against Defendants ROMBOUGH, GERBER, HILL, DUGGAR, and DOES 26 - 100)**

266.    The foregoing allegations are realleged and incorporated herein.

267.    In doing the acts complained of herein, Defendants ROMBOUGH, GERBER, HILL, DUGGAR, and/or DOES 26-100, individually and/or while acting in concert with one another, did

act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

   a.   The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

   b.   The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

268.   Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

269.   In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards TERRY THOMAS as a member of minority communities by subjecting them to civil rights violations and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, planting evidence, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. As a result, Plaintiffs and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### TERRY THOMAS' SECOND CAUSE OF ACTION
(42 U.S.C. § 1983 - Malicious Prosecution)
**(Plaintiff TERRY THOMAS against Defendants ROMBOUGH, GERBER, HILL, DUGGAR, and DOES 26 - 100)**

270.   The foregoing allegations are realleged and incorporated herein.

271.   Defendants maliciously prosecuted the Plaintiffs as stated herein. Defendants arrested TERRY THOMAS without probable cause.

272.   The defendants brought claims against Plaintiffs with subjective malice. Defendants used bias, including racial bias, gender bias, sexuality bias, bias against body-types, and/or religious bias in determining their decisions to prosecute TERRY THOMAS, and/or fabricated evidence used to falsely justify the arrest.

273.     Plaintiff ultimately resolved the actions in his favor. Plaintiff suffered damages due to the malicious prosecution brought on by the Defendants in this matter.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## CAUSES OF ACTION FOR PLAINTIFF SHAQUILLE HILLARD

### SHAQUILLE HILLARD'S FIRST CAUSE OF ACTION
**(42 U.S.C. § 1983 –Unreasonable Seizure)**
**(Plaintiff SHAQUILLE HILLARD against Defendants HUGHES, AMIRI, and DOES 1 - 100)**

274.     The foregoing allegations are realleged and incorporated herein.

275.     In doing the acts complained of herein, Defendants HUGHES, AMIRI, and/or DOES 1-100, individually and/or while acting in concert with one another, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

      a.   The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

      b.   The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

276.     Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

277.     In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards SHAQUILLE HILLIARD as a member of minority communities by subjecting them to civil rights violation and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. As a result, Plaintiffs and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SHAQUILLE HILLARD'S SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 - Malicious Prosecution)
### (Plaintiff SHAQUILLE HILLARD against Defendants HUGHES, AMIRI, and DOES 1 - 100)

278.    The foregoing allegations are realleged and incorporated herein.

279.    Defendants maliciously prosecuted the Plaintiffs as stated herein. Defendants arrested each SHAQUILLE HILLARD without probable cause.

280.    The defendants brought claims against Plaintiff with subjective malice. Defendants used bias, including racial bias, gender bias, sexuality bias, bias against body-types, and/or religious bias in determining their decisions to prosecute the named Plaintiffs, and/or fabricated evidence used to falsely justify the arrest that was otherwise without probable cause.

281.    Plaintiff ultimately resolved the actions in his favor. Plaintiff suffered damages due to the malicious prosecution brought on by the Defendants in this matter.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.


## CAUSES OF ACTION FOR PLAINTIFF DANYEL EARL LACY

## DANYEL EARL LACY'S FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983 –Unreasonable Seizure)
### (Plaintiff DANYEL EARL LACY against Defendants ROMBOUGH, MANLY WILLIAMS, HUGHES, K. SMITH, EWART, BEDGOOD, and DOES 26 - 100)

282.    The foregoing allegations are realleged and incorporated herein.

283.    In doing the acts complained of herein, Defendants ROMBOUGH, MANLY WILLIAMS, HUGHES, K. SMITH, EWART, BEDGOOD, and/or DOES 26-100, individually and/or while acting in concert with one another, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

    a.    The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

    b.    The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

284.     Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

285.     In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards DANYEL EARL LACY as a member of minority communities by subjecting them to civil rights violations and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, planting evidence, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. As a result, Plaintiffs and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**DANYEL EARL LACY'S SECOND CAUSE OF ACTION**
**(42 U.S.C. § 1983 - Malicious Prosecution)**
**(Plaintiff DANYEL EARL LACY against Defendants ROMBOUGH, MANLY WILLIAMS, HUGHES, K. SMITH, EWART, BEDGOOD, and DOES 26 - 100)**

286.     The foregoing allegations are realleged and incorporated herein.

287.     Defendants maliciously prosecuted the Plaintiffs as stated herein. Defendants arrested DANYEL EARL LACY without probable cause.

288.     The Defendants brought claims against Plaintiff with subjective malice. Defendants used bias, including racial bias, gender bias, sexuality bias, bias against body-types, and/or religious bias in determining their decisions to prosecute DANYEL EARL LACY, and/or fabricated evidence used to falsely justify the arrest.

289.     Plaintiff ultimately resolved the actions in his favor. Plaintiff suffered damages due to the malicious prosecution brought on by the Defendants in this matter.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.


**CAUSES OF ACTION FOR PLAINTIFF KAYCEE SUITTER**

**KAYCEE SUITTER'S FIRST CAUSE OF ACTION**

**(42 U.S.C. § 1983 –Unreasonable Seizure)**
**(Plaintiff KAYCEE SUITTER against Defendants MARCOTTE, SMITH, and DOES 1 - 100)**

290.    The foregoing allegations are realleged and incorporated herein.

291.    In doing the acts complained of herein, Defendants MARCOTTE, SMITH, RODRIGUEZ, and/or DOES 1-100, individually and/or while acting in concert with one another, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

   a.    The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

   b.    The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

292.    Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

293.    In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards KAYCEE SUITTER by subjecting her to civil rights violation and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on gender. As a result, Plaintiffs and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**KAYCEE SUITTER'S SECOND CAUSE OF ACTION**
**(42 U.S.C. § 1983 - Malicious Prosecution)**
**(Plaintiff KAYCEE SUITTER against Defendants MARCOTTE, SMITH, RODRIGUEZ, and DOES 1 - 100)**

294.    The foregoing allegations are realleged and incorporated herein.

295.    Defendants maliciously prosecuted the Plaintiff as stated herein. Defendants arrested KAYCEE SUITTER without probable cause.

296.    The defendants brought claims against Plaintiff with subjective malice. Defendants used bias, including racial bias, gender bias, sexuality bias, bias against body-types, and/or religious bias in determining their decisions to prosecute the named Plaintiffs, and/or fabricated evidence used to falsely justify the arrest that was otherwise without probable cause.

297.    Plaintiff ultimately resolved the actions in her favor. Plaintiff suffered damages due to the malicious prosecution brought on by the Defendants in this matter.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## CAUSES OF ACTION FOR PLAINTIFF MARCELL LEWIS

### MARCELL LEWIS' FIRST CAUSE OF ACTION
#### (42 U.S.C. § 1983 –Unreasonable Seizure)
**(Plaintiff MARCELL LEWIS against Defendants AMIRI, NAVARRETTE, and DOES 26 - 100)**

298.    The foregoing allegations are realleged and incorporated herein.

299.    In doing the acts complained of herein, Defendants AMIRI, NAVARRETTE, and/or DOES 26-100, individually and/or while acting in concert with one another, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

        a.   The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

        b.   The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

300.    Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

301.    In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards MARCELL LEWIS as a member of minority communities by subjecting them to civil rights violations and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings,

false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, planting evidence, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. As a result, Plaintiffs and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### MARCELL LEWIS' SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 - Malicious Prosecution)
### (Plaintiff MARCELL LEWIS against Defendants AMIRI, NAVARRETTE, and DOES 26 - 100)

302. The foregoing allegations are realleged and incorporated herein.

303. Defendants maliciously prosecuted the Plaintiffs as stated herein. Defendants arrested MARCELL LEWIS without probable cause.

304. The Defendants brought claims against Plaintiff with subjective malice. Defendants used bias, including racial bias, gender bias, sexuality bias, bias against body-types, and/or religious bias in determining their decisions to prosecute the named Plaintiffs, and/or fabricated evidence used to falsely justify the arrest that was otherwise without probable cause.

305. Plaintiff ultimately resolved the actions in his favor. Plaintiff suffered damages due to the malicious prosecution brought on by the Defendants in this matter.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.


### CAUSES OF ACTION FOR PLAINTIFF GREGORIO YARBOROUGH

### GREGORIO YARBOROUGH'S FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983 –Unreasonable Seizure)
### (Plaintiff GREGORIO YARBOROUGH against Defendants GEIS, DUFF, KING, DOWNIE, JIMENEZ, LUNDIN, LOWTHER, and DOES 26 - 100)

306. The foregoing allegations are realleged and incorporated herein.

307. In doing the acts complained of herein, Defendants GEIS, DUFF, KING, DOWNIE, JIMENEZ, LUNDIN, LOWTHER, and/or DOES 26-100, individually and/or while acting in

concert with one another, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

      a.   The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

      b.   The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

308.    Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

309.    In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards GREGORIO YARBOROUGH as a member of minority communities by subjecting them to civil rights violations and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, planting evidence, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. As a result, Plaintiffs and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### GREGORIO YARBOROUGH'S SECOND CAUSE OF ACTION
**(42 U.S.C. § 1983 - Malicious Prosecution)**
**(Plaintiff GREGORIO YARBOROUGH against Defendants GEIS, DUFF, KING, DOWNIE, JIMENEZ, LUNDIN, LOWTHER, and DOES 26 - 100)**

310.    The foregoing allegations are realleged and incorporated herein.

311.    Defendants maliciously prosecuted the Plaintiff as stated herein. Defendants arrested GREGORIO YARBOROUGH without probable cause.

312.    Defendants brought claims against Plaintiff with subjective malice. Defendants used bias, including racial bias, gender bias, sexuality bias, bias against body-types, and/or religious bias in determining their decisions to prosecute the named Plaintiffs, and/or fabricated evidence used to falsely justify the arrest.

313.    Plaintiff ultimately resolved the actions in his favor. Plaintiff suffered damages due to the malicious prosecution brought on by the Defendants in this matter.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## CAUSES OF ACTION FOR PLAINTIFF QUINCY MASON

### QUINCY MASON'S FIRST CAUSE OF ACTION
**(42 U.S.C. § 1983 – Unreasonable Seizure)**
**(Plaintiff QUINCY MASON against Defendants ROMBOUGH, EVANS, AMIRI, STENGER, K. SMITH, TJAHJADI, HUGHES, MARCOTTE, HOFFMAN, and DOES 26 - 100)**

314.    The foregoing allegations are realleged and incorporated herein.

315.    In doing the acts complained of herein, Defendants ROMBOUGH, EVANS, AMIRI, STENGER, K. SMITH, TJAHJADI, HUGHES, MARCOTTE, HOFFMAN and/or DOES 26-100, individually and/or while acting in concert with one another, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

      a.    The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

      b.    The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

316.    Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

317.    In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards QUINCY MASON as a member of minority communities by subjecting them to civil rights violations and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, planting evidence, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. As a result, Plaintiffs and persons similarly

situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## CAUSES OF ACTION FOR PLAINTIFF TEHJAY MCCULLOUGH

### TEHJAY MCCULLOUGH'S FIRST CAUSE OF ACTION
**(42 U.S.C. § 1983 –Unreasonable Seizure)**
**(Plaintiff TEHJAY MCCULLOUGH against Defendants PRIETO, RODRIGUEZ, MOORE, AMIRI, and DOES 1 - 100)**

318.    The foregoing allegations are realleged and incorporated herein.

319.    In doing the acts complained of herein, Defendants PRIETO, RODRIGUEZ, and/or DOES 1-100, individually and/or while acting in concert with one another, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

        a.      The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

        b.      The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

320.    Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

321.    In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards TEHJAY MCCULLOUGH as a member of minority communities by subjecting them to civil rights violation and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. As a result, Plaintiffs and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## TEHJAY MCCULLOUGH'S SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 - Malicious Prosecution)
**(Plaintiff TEHJAY MCCULLOUGH against Defendants PRIETO, RODRIGUEZ, MOORE, AMIRI, and DOES 1 - 100)**

322.    The foregoing allegations are realleged and incorporated herein.

323.    Defendants maliciously prosecuted the Plaintiffs as stated herein. Defendants arrested TEHJAY MCCULLOUGH without probable cause.

324.    The defendants brought claims against Plaintiff with subjective malice. Defendants used bias, including racial bias, gender bias, sexuality bias, bias against body-types, and/or religious bias in determining their decisions to prosecute Plaintiff, and/or fabricated evidence used to falsely justify the arrest.

325.    Plaintiff ultimately resolved the actions in his favor. Plaintiff suffered damages due to the malicious prosecution brought on by the Defendants in this matter.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.


## CAUSES OF ACTION FOR PLAINTIFF JAMARI ALLEN

## JAMARI ALLEN'S FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983 –Unreasonable Seizure)
**(Plaintiff JAMARI ALLEN against Defendants AMIRI, WENGER, GREEN, and DOES 26 - 100)**

326.    The foregoing allegations are realleged and incorporated herein.

327.    In doing the acts complained of herein, Defendants AMIRI, WENGER, GREEN, and/or DOES 26-100, individually and/or while acting in concert with one another, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

    a.    The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

    b.    The right to be free from unreasonable searches and seizures in violation of the Fourth Amendment.

328.     Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

329.     In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards JAMARI ALLEN as a member of minority communities by subjecting them to civil rights violations and more frequent and aggressive policing than similarly situated individuals. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, planting evidence, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender. As a result, Plaintiffs and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## JAMARI ALLEN'S SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 - Malicious Prosecution)
### (Plaintiff JAMARI ALLEN against Defendants AMIRI, and DOES 26 - 100)

330.     The foregoing allegations are realleged and incorporated herein.

331.     Defendants maliciously prosecuted Plaintiff as stated herein. Defendants arrested JAMARI ALLEN without probable cause. The Defendants brought claims against Plaintiff with subjective malice. Defendants used bias, including racial bias, gender bias, sexuality bias, bias against body-types, and/or religious bias in determining their decisions to prosecute Plaintiff, and/or fabricated evidence used to falsely justify the arrest.

332.     Plaintiff ultimately resolved the actions in his favor. Plaintiff suffered damages due to the malicious prosecution brought on by the Defendants in this matter.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## JAMARI ALLEN'S THIRD CAUSE OF ACTION
### (42 U.S.C. § 1983 – Discriminatory Enforcement and Violation of Privacy)
### (Plaintiff JAMARI ALLEN against Defendants AMIRI, WENGER, GREEN, and DOES 26 - 100)

333.     The foregoing allegations are realleged and incorporated herein.

334.    In doing the acts complained of herein, Defendants AMIRI, WENGER, GREEN, and DOES 26 – 100, individually and/or while acting in concert with one another, and/or while failing to intervene and/or obstructing justice, did act under color of state law to deprive Plaintiff JAMARI ALLEN as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

      a.   The right to be free from bias, including racial bias in the performance of the defendant's duties.

      b.   The right to be free from actions designed to humiliate, embarrass, belittle, dehumanize, humiliate and denigrate Plaintiff JAMARI ALLEN based on his race in violation of the Fourteenth Amendment.

      c.   The right to be free from invasions of privacy by public display of intimate pictures of Plaintiff JAMARI ALLEN without lawful purpose.

335.    In doing the acts complained of herein, Defendants engaged in discriminatory conduct towards minority communities by subjecting them to civil rights violations and more frequent and aggressive policing than similarly situated individuals. Defendants, including but not limited to AMIRI, photographed JAMARI ALLEN's body while he was in the hospital being treated for the injuries DEFENDANTS inflicted, and then Defendants circulated these images of JAMARI ALLEN via text messages shared by Defendants with recipients both within the CITY OF ANTIOCH POLICE DEPARTMENT and externally. Said messages included racially discriminatory language and epithets describing JAMARI ALLEN, including but not limited to "turd," as well as general exclamations celebrating the use of force to injure ALLEN. The recipients of these images of JAMARI ALLEN, including but not limited to the above-named Defendants, responded in messages celebrating the infliction of medical injury to Plaintiff's person and/or failed to intervene.

336.    As a result of the acts described above, Plaintiff JAMARI ALLEN was subjected to unequal and discriminatory treatment, civil rights violations, and deprived of his well-settled constitutional rights to privacy and substantive due process under the Fourteenth Amendment of the United States Constitution, which extends to pretrial detainees. The circulation of the photographic

images of JAMARI ALLEN were pursuant to a longstanding practice or custom, policy, or ratification wherein leadership, officials, employees, and agents of the CITY OF ANTIOCH Police Department deliberately chose to invade JAMARI ALLEN's privacy, photographed his likeness and body including injuries inflicted onto him by DEFENDANTS, and that CITY OF ANTIOCH final-policy makers engaged with, ratified, and that DEFENDANTS knew or should have known were unconstitutional.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## CAUSES OF ACTION FOR ALL PLAINTIFFS

### FIRST COMMON CAUSE OF ACTION
### *Monell* - 42 U.S.C. § 1983
**(All Plaintiffs Against Defendants CITY OF ANTIOCH, BERNAL, JOHNSON, EBBS, REED, BROOKS, MOREFIELD, FORD, EVANS, BLEDSOE, HOFFMAN, WISECARVER, FORTNER, GREEN, STENGER, KOCH, LOWTHER, and DOES 26-100)**

337.    The foregoing allegations are realleged and incorporated herein.

338.    DEFENDANT Officers and Sergeants acted under color of state law at all times relevant to this Complaint. DEFENDANT Officers' and Sergeants acts, as alleged herein, deprived Plaintiffs of their Fourth and Fourteenth Amendment rights under the United States Constitution;

339.    Defendants CITY OF ANTIOCH, CITY OF ANTIOCH CITY MANAGERS BERNAL, JOHNSON, EBBS, and REED, and together with DOES 26-100 through their employment by CITY OF ANTIOCH and ANTIOCH POLICE DEPARTMENT, were at all times relevant hereto the final policy-makers for Defendant CITY OF ANTIOCH and the ANTIOCH POLICE DEPARTMENT, and acted under color of state law;

340.    Defendants BROOKS, MOREFIELD, FORD, EVANS, BLEDSOE, FORTNER, KOCH, GREEN, HOFFMAN, WISECARVER, STENGER, LOWTHER, and together with DOES 26-100 through their employment as leadership, supervisors, and command staff for the CITY OF ANTIOCH POLICE DEPARTMENT had the duty to communicate the misconduct by DEFENDANTS alleged herein and thus had actual or constructive notice and duty to investigate,

1    impose discipline, and report to CITY OF ANTIOCH Managers recommendations to change

2    policies and conduct to put a stop to the widespread misconduct.

3          341.    As against Defendant CITY OF ANTIOCH, CITY OF ANTIOCH CITY

4    MANAGERS BERNAL, JOHNSON, EBBS, and REED, and/or DOES 26-100, in their capacity as

5    official policy-maker(s) for the CITY OF ANTIOCH, including the policies and practices or lack of

6    policies and practices of the ANTIOCH POLICE DEPARTMENT. Plaintiffs, and each of them,

7    further allege that the acts and/or omissions alleged in the Complaint herein are representative of a

8    repeated course of conduct by members of the CITY OF ANTIOCH Police Department tantamount

9    to a custom, policy, or repeated practice of condoning and tacitly encouraging the abuse of police

10   authority, and disregard for the constitutional rights of citizens.

11         342.    Plaintiffs are informed and believe and thereon allege that Defendants were biased

12   toward the public. Defendants demonstrated bias, including, but not limited to, bias toward the race,

13   gender, and ethnicity of the Plaintiffs. In doing the acts complained of herein, Defendants, and/or

14   DOES 26-100, individually and/or while acting in concert with one another, engaged in a pattern

15   and practice of discriminatory conduct towards minority communities by subjecting them to more

16   frequent and aggressive policing than similarly situated individuals of a different race, gender, and

17   sexual orientation, by using racial slurs, excessive force, and harassment tactics, and by denying

18   them the same level of protection and services afforded to individuals of a different race. These civil

19   rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests,

20   unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, planting evidence,

21   denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other

22   misconduct based on race and/or gender.

23         343.    Plaintiffs are further informed and believe and thereon allege that said misconduct

24   included, but was not limited to, subjecting people living, visiting, and/or traveling in Antioch

25   neighborhoods to disparate treatment because of their race and/or gender. As a result, Plaintiffs and

26   persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and

27   other misconduct by Defendants.

28

344.     Plaintiffs are informed and believe and thereon allege that as a matter of official policy—rooted in an entrenched posture of deliberate indifference to the constitutional rights of Black people who live, visit, and/or travel within Antioch in particular—Defendants CITY OF ANTIOCH and BERNAL, JOHNSON, EBBS, REED, has long allowed Plaintiffs and persons similarly situated to them, to be abused by its Police Officers, including by DEFENDANTS NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, MARCOTTE, HUGHES, GEIS, HOFFMAN, MILNER, EIGARD, KAWALYA, DUFF, KING, JIMENEZ, LUNDIN, LOWTHER, DIBBLE, KYLE SMITH, GREEN, STENGER, GRAGG, TJAHJADI, MCDONALD, KOCH, NAVARRETTE, EWART, BEDGOOD, DOWNIE, MILLER, and/or other CITY OF ANTIOCH Police Officers (DOES 26-100).

345.     Plaintiffs are further informed and believe and thereon allege that despite the repeated and frequent nature of the misconduct and civil rights violations committed by Defendants NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, MARCOTTE, HUGHES, GEIS, HOFFMAN, MILNER, EIGARD, KAWALYA, DUFF, KING, JIMENEZ, LUNDIN, LOWTHER, DIBBLE, KYLE SMITH, GREEN, STENGER, GRAGG, TJAHJADI, MCDONALD, KOCH, NAVARRETTE, EWART, BEDGOOD, DOWNIE, MILLER, and DOES 26-100, high ranking CITY OF ANTIOCH officials and/or police department supervisors, including but not limited to Defendants BROOKS, MOREFIELD, FORD, EVANS, BLEDSOE, FORTNER, KOCH, GREEN, HOFFMAN, WISECARVER, STENGER, LOWTHER, DOES 26-100, and each of them, individually and/or acting in concert with one another, failed to take any or appropriate remedial action prior to the subject incidents involving the Plaintiffs. As a result, Defendants engaged in repeated and serious acts of misconduct and civil rights violations against citizens living, visiting, and/or traveling in Antioch.

346.     Plaintiffs are informed and believe and thereon allege that Plaintiffs, and each of them, suffered the violation of their constitutional rights as a result of customs, policies, patterns

1   and/or practices of Defendants CITY OF ANTIOCH, BERNAL, JOHNSON, EBBS, REED,

2   Defendants BROOKS, MOREFIELD, FORD, EVANS, BLEDSOE, FORTNER, KOCH, GREEN,

3   HOFFMAN, WISECARVER, STENGER, LOWTHER, DOES 26-100, and each of them;

4   including, but not limited to, deliberate indifference in the hiring, supervision, training, and

5   discipline of members of the Antioch Police Department, including the named Defendant Officers

6   and Officers DOES 26-100, and/or each of them as set forth in this Complaint. Therefore, Plaintiffs

7   also seek relief against the Defendants for their failure to take reasonable steps to prevent and

8   remedy the discriminatory conduct of its officers.

9          347.    Plaintiffs further allege that the actions/inactions of Defendants CITY OF

10  ANTIOCH, BERNAL, JOHNSON, EBBS, REED, Defendants BROOKS, MOREFIELD, FORD,

11  EVANS, BLEDSOE, FORTNER, KOCH, GREEN, HOFFMAN, WISECARVER, STENGER,

12  LOWTHER, DOES 26-100, were so closely related to the deprivation of the Plaintiffs' rights as to

13  be the moving force that has caused Plaintiffs to suffer damages, including but not limited to

14  physical harm, emotional distress, and/or injury to reputation.

15         348.    Upon information and belief, Plaintiffs further allege that numerous African

16  Americans were systematically physically and verbally harassed by members of the CITY OF

17  ANTIOCH Police Department when they were stopped for "walking while black" or "driving while

18  black" without probable cause or reasonable suspicion, searched without consent, and verbally

19  abused. Plaintiffs further allege that Defendant CITY OF ANTIOCH Police Department

20  encouraged, condoned, and ratified its police officers long-standing, deep-rooted racist,

21  homophobic, and misogynistic actions, statements, and conduct as illustrated by the vile and

22  despicable text messages described herein, which were circulated amongst nearly half of the Police

23  Department, including some supervising and command staff.  In spite of legal obligations to report

24  the conduct admitted to in the text messages, and to also report the racist and misogynistic

25  statements themselves to command staff, Plaintiffs allege the text messages went unreported and

26  were only discovered by the F.B.I. secondary to an investigation of a steroid distribution ring in the

27  CITY OF ANTIOCH Police Department.  The messaging was so widespread that CITY Police

28

1    Department command staff must have known of the actions and attitudes reflected in the widely-

2    shared text messages, but looked the other way.

3        349.    Plaintiffs are further informed and believe and thereon allege that the acts alleged

4    herein are the direct and proximate result of the deliberate indifference of Defendants CITY OF

5    ANTIOCH, BERNAL, JOHNSON, EBBS, REED, Defendants BROOKS, MOREFIELD, FORD,

6    EVANS, BLEDSOE, FORTNER, KOCH, GREEN, HOFFMAN, WISECARVER, STENGER,

7    LOWTHER, DOES 26-100, and each of them, to repeated acts of police misconduct which were

8    tacitly authorized, encouraged, or condoned by Defendants CITY OF ANTIOCH, BERNAL,

9    JOHNSON, EBBS, REED, BROOKS, MOREFIELD, FORD, BLEDSOE, EVANS, FORTNER,

10   KOCH, GREEN, HOFFMAN, WISECARVER, STENGER, LOWTHER, DOES 26-100, and each

11   of them.

12       350.    The injuries to the Plaintiffs, and each of them, were the foreseeable and proximate

13   result of said customs, policies, patterns, and/or practices of Defendants CITY OF ANTIOCH,

14   BERNAL, JOHNSON, EBBS, and REED. This conduct was condoned and ratified, by Antioch

15   Police Department Supervisors, including Defendants BROOKS, MOREFIELD, FORD, EVANS,

16   BLEDSOE, FORTNER, KOCH, GREEN, HOFFMAN, WISECARVER, STENGER, LOWTHER,

17   DOES 26-100, and each of them. and there was no discipline against any of the named Defendant

18   Officers for their conduct.

19       351.    Plaintiffs are further informed and believe and thereon allege that the damages

20   sustained as alleged herein were the direct and proximate result of Defendants, CITY OF

21   ANTIOCH, BERNAL, JOHNSON, EBBS, and REED's, municipal customs and/or policies of

22   deliberate indifference in the training, supervision, and/or discipline of members of the CITY OF

23   ANTIOCH Police Department.

24       352.    Plaintiffs are further informed and believe and thereon allege that Plaintiffs' damages

25   and injuries were caused by the customs, policies, patterns, or practices of the CITY OF ANTIOCH,

26   BERNAL, JOHNSON, EBBS, REED, BROOKS, MOREFIELD, FORD, BLEDSOE, EVANS,

27   FORTNER, KOCH, GREEN, HOFFMAN, WISECARVER, STENGER, LOWTHER, DOES 26-

28   100, and each of them, of deliberate indifference in the training, supervision, and/or discipline of

1  Antioch Police Officers including, but not limited to, NUTT, EVANS, ROMBOUGH, AMIRI,

2  DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH,

3  PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, MARCOTTE,

4  HUGHES, GEIS, HOFFMAN, MILNER, EIGARD, KAWALYA, DUFF, KING, JIMENEZ,

5  LUNDIN, LOWTHER, DIBBLE, KYLE SMITH, GREEN, STENGER, GRAGG, TJAHJADI,

6  MCDONALD, KOCH, NAVARRETTE, EWART, BEDGOOD, DOWNIE, MILLER, DOES 26-

7  100, and/or each of them.

8      353.    The aforementioned customs, policies, or practices of Defendants CITY OF

9  ANTIOCH, BERNAL, JOHNSON, EBBS, REED, BROOKS, MOREFIELD, FORD, EVANS,

10  BLEDSOE, FORTNER, KOCH, GREEN, HOFFMAN, WISECARVER, STENGER, LOWTHER,

11  DOES 26-100, and each of them, resulted in the deprivation of Plaintiffs' connotational rights

12  including, but not limited to, the following:

13          a.   The right to be free from excessive and unnecessary police use of force;

14          b.   The right to a Familial Relationship.

15          c.   The right to be free from unreasonable search and seizure including the use of

16               Racial Bias in the conduct of Antioch police officers in violation of 42. U.S.C.

17               section 1983.

18  WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

19                        **SECOND COMMON CAUSE OF ACTION**
                    **42 U.S.C. § 1985-86 – Conspiracy To Violate Civil Rights**
20               **(All Plaintiffs Against All Defendants, and DOES 26 - 100)**

21      354.    The foregoing allegations are realleged and incorporated herein.

22      355.    The collective actions by Defendant Officers named herein show a conspiracy within

23  the CITY OF ANTIOCH Police Department by CITY OF ANTIOCH Police Officers to violated

24  Plaintiffs' Civil Rights by acting in concert to illegally detain, search, assault, wrongfully arrest

25  people, subject people to malicious prosecution, and discriminate against the citizenry based on

26  their race, ethnicity, and gender. This conspiracy to deprive the Plaintiffs of their legal and

27  constitutional rights within the CITY OF ANTIOCH Police Department directly led officers within

28

1   the department to deprive people of the constitutional rights and to act with discrimination and

2   racial bias when interacting with people. This deprivation of constitutional rights, bias and

3   discrimination directly led to the Plaintiffs suffering from damages stemming from the wrongful

4   acts committed by the defendant officers against the Plaintiffs.

5       356.    In doing the acts complained of herein, Defendants CITY, BROOKS, MOREFIELD,

6   FORD, NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS,

7   LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER,

8   HARRIS, GERBER, HILL, MARCOTTE, HUGHES, GEIS, MOORE, HOFFMAN,

9   WISECARVER, FORTNER, MILNER, EIGARD, KAWALYA, DUFF, KING, JIMENEZ,

10  LUNDIN, LOWTHER, DIBBLE, KYLE SMITH, GREEN, STENGER, GRAGG, TJAHJADI,

11  MCDONALD, KOCH, NAVARRETTE, EWART, BEDGOOD, BROGDON, DOWNIE, MILLER,

12  and/or DOES 26-100, individually and/or while acting in concert with one another, conspired for

13  the purpose of depriving Plaintiffs and/or persons similarly situated to Plaintiffs, either directly or

14  indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws

15  as alleged in this complaint in violation of 42 U.S.C. § 1985.

16      357.    Plaintiffs are further informed and believe and thereon allege that Defendants CITY

17  OF ANTIOCH, BERNAL, JOHNSON, EBBS, and REED, as well as Defendants BROOKS,

18  MOREFIELD, FORD, EVANS, BLEDSOE, FORTNER, KOCH, GREEN, HOFFMAN,

19  WISECARVER, STENGER, BROGDON, LOWTHER, DOES 26-100, and each of them, had the

20  power to stop and/or aid in preventing the conspiracy and/or conspiracies by Defendants NUTT,

21  EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN,

22  BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS,

23  GERBER, HILL, MARCOTTE, HUGHES, GEIS, MOORE, HOFFMAN, MILNER, EIGARD,

24  KAWALYA, DUFF, KING, JIMENEZ, LUNDIN, LOWTHER, DIBBLE, KYLE SMITH,

25  GREEN, STENGER, GRAGG, TJAHJADI, MCDONALD, KOCH, NAVARRETTE, EWART,

26  BEDGOOD, DOWNIE, MILLER, DOES 26-100, and/or each of them, as alleged herein, but

27  instead maintained customs, policies, and/or practices which encouraged, authorized, condoned,

28  ratified, failed to prevent, and/or failed to aid in the prevention of the wrongs conspired to be done

1  by Defendants NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY

2  WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS,

3  WENGER, HARRIS, GERBER, HILL, MARCOTTE, HUGHES, GEIS, MOORE, HOFFMAN,

4  MILNER, EIGARD, KAWALYA, DUFF, KING, JIMENEZ, LUNDIN, LOWTHER, DIBBLE,

5  KYLE SMITH, GREEN, STENGER, GRAGG, TJAHJADI, MCDONALD, KOCH,

6  NAVARRETTE, EWART, BEDGOOD, DOWNIE, MILLER, DOES 26-100, and/or each of them.

7      358.    As a result of the failure and/or refusal of Defendants CITY OF ANTIOCH,

8  BERNAL, JOHNSON, EBBS, and REED, BROOKS, MOREFIELD, FORD, EVANS, BLEDSOE,

9  FORTNER, KOCH, GREEN, HOFFMAN, WISECARVER, STENGER, BROGDON, LOWTHER,

10  DOES 26-100, and each of them, to prevent or aid in preventing the commission of the conspiracy

11  and/or conspiracies by Defendants NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR,

12  RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO,

13  RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, MARCOTTE, HUGHES, GEIS,

14  MOORE, HOFFMAN, MILNER, EIGARD, KAWALYA, DUFF, KING, JIMENEZ, LUNDIN,

15  LOWTHER, DIBBLE, KYLE SMITH, GREEN, STENGER, GRAGG, TJAHJADI, MCDONALD,

16  KOCH, NAVARRETTE, EWART, BEDGOOD, DOWNIE, MILLER, and DOES 26-100,

17  Plaintiffs and persons similarly situated to them are entitled to recover damages in amounts to be

18  determined according to proof.

19      WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

20

21  **JURY DEMAND**

22  Plaintiffs hereby demand a jury trial in this action.

23  **PRAYER**

24  WHEREFORE, Plaintiffs pray for relief, as follows:

25  1.   For general damages according to proof;

26

27

28

2.  For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;

3.  For punitive damages and exemplary damages in amounts to be determined according to proof as to the individually named Defendants, and DOES 26-100, or each of them;

4.  Any and all permissible statutory damages;

5.  For reasonable attorney's fees pursuant to 42 U.S.C. §1988;

6.  For cost of suit herein incurred;

7.  For injunctive relief, including necessary policy and practice changes to Defendant CITY OF ANTIOCH'S police department and Court Monitoring to ensure compliance with such necessary policy and practice changes; and

8.  For such other and further relief as the Court deems just and proper.


DATED: February 3, 2025                   **BURRIS NISENBAUM CURRY & LACY, LLP**


                                          /s/ *John L. Burris*
                                          John L. Burris,
                                          Benjamin Nisenbaum,
                                          James Cook,
                                          Katherine MacElhiney,
                                          Krithi Basu,
                                          Attorneys for Plaintiffs except for
                                          Terryonn Pugh


                                          /s/CARMELA CARAMAGNO
                                          Carmela Caramagno,
                                          Attorney for Plaintiff Terryonn Pugh