JOHN L. BURRIS, Esq., SBN 69888
BENJAMIN NISENBAUM, Esq., SBN 222173
JAMES COOK, Esq., SBN 300212
KATHERINE MACELHINEY, Esq., SBN 355532
KRITHI BASU, Esq., SBN 359258
**Burris Nisenbaum Curry & Lacy, LLP**
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (844) 273-6873
John.Burris@bncllaw.com
Ben.Nisenbaum@bncllaw.com
James.Cook@bncllaw.com
Katherine@bncllaw.com
Krithi.Basu@bncllaw.com

Attorneys for Plaintiffs except TERRYONN PUGH

CARMELA CARAMAGNO, SBN 139279
**Law Offices of Carmela Caramagno**
P.O. Box 1811
Lafayette, CA 94549
Telephone: (510) 525-1001

Attorney for Plaintiff
TERRYONN DESHANN PUGH

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRENT ALLEN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ANTIOCH, et al.,<br><br>Defendants. | CASE NO.: 3:23-cv-01895-VC<br>Consolidated with case nos.<br>23-cv-03773-VC and 3:23-cv-06573-VC<br><br>**PLAINTIFF TRENT ALLEN'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT ROMBOUGH AND DOE DEFENDANT OFFICERS**<br><br>**Date:** May 15, 2025<br>**Time:** 10:00 A.M.<br>**Courtroom:** 4, 17th Floor<br>**Judge:** Hon. Vince Chhabria |

1

## <u>NOTICE OF MOTION</u>

2

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD**:**

3

PLEASE TAKE NOTICE that on May 15, 2025, at 10:00 am or as soon as thereafter as the matter

4

can be heard, in the courtroom of the Honorable Judge Vince Chhabria, Plaintiff Trent Allen will

move for partial summary judgment and/or summary adjudication of issues.

5

This motion for summary judgment shall be based upon Federal Rule of Civil Procedure 56.

6

This motion is further based upon this Notice, the attached Memorandum of Point and Authorities;

7

the Declaration of Benjamin Nisenbaum and the exhibits attached thereto; upon the records filed in

8

this action; and upon such further evidence and argument as may be presented prior to or at the time

9

of the heating on this motion.

10

11

Dated: March 31, 2025                               **BURRIS, NISENBAUM, CURRY & LACY LLP**

12

13

/s/ *Ben Nisenbaum*
Ben Nisenbaum

14

John L. Burris

15

James Cook
Katherine MacElhiney

16

Krithi Basu
Attorneys for Plaintiffs except Terryonn Pugh

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF FACTS ................................................................................... 1

   A.    March 9, 2021 Shooting Investigation and Text Messages ...................... 1

   B.    March 31, 2021 Arrest of Trent Allen and Text Messages........................ 5

   C.    Defendant Rombough's Guilty Plea and Testimony in the Criminal Trial of
      Defendant Morteza Amiri .......................................................................... 10

III.    ARGUMENT .................................................................................................... 13

   A.    Legal Standard. ......................................................................................... 13

   B.    Defendant Rombough is Collaterally Estopped from Relitigating the Issues
      Underlying his Guilty Plea......................................................................... 14

   C.    Defendant Rombough's Guilty Plea Establishes that he Used Excessive Force
      Against Trent Allen in Violation of his Fourth Amendment Rights. ................... 15

   D.    Defendant Rombough's Admissions Demonstrate that he Racially
      Discriminated Against Trent Allen in Violation of the Fourteenth Amendment
      as his Decision to Use Excessive Force was Based Primarily on Allen's Race. ......... 16

   E.    Defendant Rombough's Guilty Plea Establishes that he Conspired with Other
      Antioch Police Department Officers to Violate Trent Allen's Constitutional
      Right to be Free from Excessive Force by Law Enforcement Officers. ............... 17

IV.    CONCLUSION .................................................................................................. 18

i

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 13, 14

*Ayers v. City of Richmond*, 895 F.2d 1267 (9th Cir. 1990) ................................................................. 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................................................... 13

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) ......................................................................... 14

*Ricci v. DeStefano*, 557 U.S. 557 (2009) ............................................................................................. 14

*S.E.C. v. Hilsenrath*, 406 Fed.Appx. 197 (9th Cir. 2010) ................................................................... 15

*United States v. $31,697.59 Cash*, 665 F.2d 903 (9th Cir. 1980) ........................................................ 14

*United States v. Real Property Located at Section 18*, 976 F.2d 515 (9th Cir. 1992) ................. 14, 15

**Rules**

Fed. R. Civ. P. 56 ................................................................................................................................... 13

Fed. R. Evid. 801(d) .............................................................................................................................. 15

# I.  INTRODUCTION

Defendant Eric Rombough's plea of guilty to violations of 18 U.S.C. § 241 (Conspiracy Against Rights) and 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law), along with the underlying facts that he agreed were true, supply the Court with a sufficient factual basis upon which to enter summary judgment to Plaintiff Trent Allen on his Fourth Amendment excessive force claim and Fourteenth Amendment discriminatory enforcement claim against Defendant Rombough. Defendant Rombough's admissions in his guilty plea also establish as undisputed fact that there was a conspiracy involving Defendant Rombough and other Antioch Police Department officers to use excessive force against Trent Allen, and as a part of this conspiracy, Defendant Rombough and other involved officers, including Defendants Brock Marcotte and John Ramirez, omitted Rombough's admitted conduct in kicking Trent Allen in the head from their police reports, even though they were required to do so pursuant to Antioch Police Department policy. Defendant Rombough is collaterally estopped from relitigating these issues that were necessarily decided in his guilty plea. This Court should therefore grant Plaintiff Trent Allen partial summary judgment on his excessive force claim, discriminatory enforcement claim, and conspiracy claim against Defendant Rombough and Doe Defendant Officers.

# II.  STATEMENT OF FACTS

## A.  March 9, 2021 Shooting Investigation and Text Messages

In March 2021, Antioch Police Department officers were conducting a criminal investigation into a March 9, 2021 shooting in Antioch, California. APD Police Report for Allen and Pugh, attached to the Declaration of Ben Nisenbaum ("Nisenbaum Dec.") as Exhibit A. Using social media surveillance, Automated License Plate Recognition (ALPR), cell phone call detail records, and DNA from a McDonald's cup, Defendant detectives Robert Gerber, Thomas Smith, and Casey Brogdon identified multiple suspects, including Plaintiffs Trent Allen and Terryonn Pugh, who are both Black men. *Id.* at pp. 122-23, 126-28, 208. On March 28, 2023, the Office of the District Attorney of Contra Costa County published an investigative report detailing text messages sent between various Antioch police officers, including Defendant Rombough, about Trent Allen and

Terryonn Pugh during the investigation and their March 31, 2021 arrests. Larry Wallace 14-page Report for Allen and Pugh Arrests, attached as Exhibit B to Nisenbaum Dec. These text messages included racially derogatory language and revealed extreme uses of force that were not documented in the accompanying police reports.

A day before the shooting, on March 8, 2021, Defendants Eric Rombough and Jonathan Adams, who were both involved in the shooting investigation and arrests, exchanged the following text messages:

March 8, 2021:

| | | |
|---|---|---|
| 10:24 am | ROMBOUGH: | Pay attention turd |
| 10:25 am | **ADAMS**: | **I don't care about these black people.** |
| 10:25 am | **ROMBOUGH**: | **I don't care about them either** |

Phone Extraction for Eric Rombough at pp. 22-23, attached as Exhibit C to Nisenbaum Dec. Beginning on March 15, 2021, Defendant detectives Smith and Gerber informed Defendant Antioch police officers of their belief that the suspects, including Plaintiffs Trent Allen and Terryonn Pugh, were in Los Angeles. APD Police Report for Allen and Pugh at pp. 125-27, attached as Exhibit A. On March 17, 2021, Defendants Rombough and Adams exchanged the following text messages:

March 17, 2021:

| | | |
|---|---|---|
| 9:47 am | **ADAMS**: | **Now we're gonna be looking for black people with phones in south-central.** |
| 9:47 am | **ROMBOUGH**: | **Shouldn't be too hard** |
| 9:48 am | **ROMBOUGH**: | **Stop bitching, it's like a gold mine of number 2**[1] |
| 9:49 am | **ADAMS**: | **[image of a Black man with the caption "I'M RITCH BIATCH"]** |
| 9:49 am | **ROMBOUGH**: | **[image of two Black men with the caption "Give it up for black people!"]** |

Phone Extraction for Eric Rombough at pp. 25-28, attached as Exhibit C. In the following days, Antioch police officers, including Defendants Rombough and Gerber, continued to track suspects'

---

[1] Contra Costa County District Attorney's Office Senior Inspector Larry Wallace determined that Defendant Rombough used terms associated with feces (e.g., "2s," "number 2," "piece of shit," and "turds") to refer to Black individuals. Larry Wallace 21-page Report at p. 18, attached as Exhibit D to Nisenbaum Dec.

social media accounts and cell phone pings. APD Police Report for Allen and Pugh at pp. 127-28, attached as Exhibit A. On March 21, 2021, Defendants Rombough and Gerber exchanged the following text messages:

March 21, 2021:

| | | | |
|---|---|---|---|
| 9:14 am | ROMBOUGH: | I haven't seen Pugh with his phone or updates on his ig. He's still posting |
| 9:15 am | GERBER: | Pugh is so screwed |
| 9:16 am | GERBER: | He better still have his phone, almost done with his affidavit |
| 9:16 am | **ROMBOUGH:** | **Bro I can't wait to forty all of them** |
| 9:16 am | **GERBER:** | **Hell yeah** |
| 9:44 am | ROMBOUGH: | Looks like terryon is using trents ig |
| 9:50 am | GERBER: | I saw that he posted a quick live He better have his da.m.n phone |
| 9:54 am | **ROMBOUGH:** | **22 that I think he has it back I mix up all the number 2s igs** |

Larry Wallace 14-page Report for Allen and Pugh Arrests at pp. 4-5, attached as Exhibit B.

During the week of March 22, 2021, the Antioch Police Department decided to conduct a "wide scale take down" of the suspects, including Plaintiffs Trent Allen and Terryonn Pugh. APD Police Report for Allen and Pugh at p. 135, attached as Exhibit A. Shortly thereafter, on March 23, 2021, Defendant Rombough texted his wife, "I'm so over it. I'm gonna unleash the 40 god next week." Larry Wallace 14-page Report for Allen and Pugh Arrests at p. 5, attached as Exhibit B.

On March 25, 2021, while plain-clothed Antioch police officers were conducting surveillance on Plaintiffs Trent Allen and Terryonn Pugh, who were barbecuing with a group of other people at John F. Baldwin Park in Antioch (APD Police Report for Allen and Pugh at pp. 166-67, attached as Exhibit A), Defendant Rombough exchanged the following messages with Defendants Brock Marcotte, Adams, and Smith:

March 25, 2021 (between Rombough and Marcotte):

| | | | |
|---|---|---|---|
| 2:44 pm | ROMBOUGH: | The Mazda just left could not see in the window as it passed |
| 2:44 pm | **MARCOTTE:** | **I saw it, it was a black chick with long hair.** I didn't see any passengers. |
| 2:45 pm | **MARCOTTE:** | **She's coming back** |
| 2:45 pm | ROMBOUGH: | Saw it smashing bro |
| 2:46 pm | **ROMBOUGH:** | **She forgot her edd card** |
| 2:47 pm | **MARCOTTE:** | **[laughing emoji]** |

| | | | |
|---|---|---|---|
| 2:50 pm | MARCOTTE: | | I've got a good spot seeing incoming traffic I just won't be able to see the door. There were hella kids and ppl out on the opposite side of the house |
| 2:50 pm | **ROMBOUGH:** | | **Yeah there people strolling around from gas city. Number 2s** |
| 2:50 pm | **MARCOTTE:** | | **Shocking** |

Phone Extraction for Eric Rombough at pp. 88-92, 120-22, attached as Exhibit C.

March 25, 2021 (between Rombough and Adams):

| | | |
|---|---|---|
| 4:32 pm | ROMBOUGH: | That fat dude in the minivan and the fat bf [black female] on the balcony belong to that apartment I'll go grab the plate to the mini van |
| 4:38 pm | ROMBOUGH: | I pulled out and into the los medanos lot. The fat fucks were eye fucking me |
| 5:52 pm | **ROMBOUGH:** | **Sooo many black peolpe [sic]** |
| 6:22 pm | **ADAMS:** | **Bro. They all look the same** |
| 6:22 pm | **ROMBOUGH:** | **Tell me about it** |
| 6:22 pm | **ROMBOUGH:** | **I feel like I'm at the zoo** |
| 6:24 pm | **ROMBOUGH:** | **They're getting ice cream** |
| 6:24 pm | **ROMBOUGH:** | **Swarming to it like Hennessy** |
| 6:39 pm | **ROMBOUGH:** | **I bet it's chicken** |
| 6:39 pm | **ADAMS:** | **Could be ribs** |
| 6:39 pm | **ROMBOUGH:** | **For sure watermelon and kool aid** |
| 7:14 pm | **ROMBOUGH:** | **I hate these idiots** |
| 7:17 pm | **ADAMS:** | **The cops or the niggers?** |
| 7:18 pm | **ROMBOUGH:** | **All of them it looks like Trent is here too** |
| 7:31 pm | **ADAMS:** | |



**[Photo depicting Plaintiff Trent Allen]**

| | | |
|---|---|---|
| 7:36 pm | ROMBOUGH: | Well we knew they wouldn't be by the pool |
| 7:39 pm | ROMBOUGH: | Look at all the Infiniti's |
| 7:40 pm | **ROMBOUGH:** | **And cuz they're dark black.** |
| 7:40 pm | **ADAMS:** | **[Laughing emoji]** |
| 7:41 pm | **ROMBOUGH:** | **Gotta get them to smile** |
| 8:02 pm | **ROMBOUGH:** | **Definitely can't see them** |

Larry Wallace 14-page Report for Allen and Pugh Arrests at pp. 5-6, attached as Exhibit B.

On March 29, 2021, Ramey warrants were authored for Plaintiffs Trent Allen, Terryonn Pugh, and two other suspects. APD Police Report for Allen and Pugh at p. 134, attached as Exhibit A. On the same day, Defendant Rombough exchanged the following text messages with Defendant Gerber:

March 29, 2021:

| | | |
|---|---|---|
| 6:38 pm | ROMBOUGH: | Not sure if this fag is with any of our targets or not but here u go |
| | | [photo of a cell phone showing an Instagram story with the location Traver, California] |
| 6:54 pm | GERBER: | That fag is one of our four targets heh, he appears to be goin to la |
| 6:55 pm | **ROMBOUGH:** | **Yeah I can't remember all their na.m.es just another number 2** |
| 6:57 pm | **GERBER:** | **Hah facts** |

Larry Wallace 14-page Report for Allen and Pugh Arrests at pp. 7-8, attached as Exhibit B.

**B. March 31, 2021 Arrest of Trent Allen and Text Messages**

On March 31, 2021, Antioch police officers from the Antioch Police Department's Special Operations Unit, including Defendants Adams, Marcotte, Rombough, Ramirez, Scott Duggar, Timothy Manly-Williams, and Matthew Koch, executed the arrest warrant for Plaintiff Trent Allen near 4119 Mattole Road in Antioch. APD Police Report for Allen and Pugh at pp. 135, 193-97, 219-22, 225-29, attached as Exhibit A.

On the morning of the arrest, Defendant Rombough exchanged the following text messages with Defendant Marcotte:

March 31, 2021:

| | | |
|---|---|---|
| 7:30 am | **ROMBOUGH:** | **You take 40?** |
| 7:31 am | **MARCOTTE:** | **Yep** |
| 7:31 am | MARCOTTE: | Heading back now tho |
| 7:32 am | ROMBOUGH: | Coo |
| 7:59 am | MARCOTTE: | I'm out front |
| 7:59 am | ROMBOUGH: | Copy |

Larry Wallace 14-page Report for Allen and Pugh Arrests at p. 8, attached as Exhibit B.

Defendant Adams, who was conducting surveillance on 4119 Mattole Road, informed the Problem-Oriented Policing (POP) team, which consisted of Defendants Rombough, Marcotte,

Duggar, and Manly-Williams, that he observed Allen get into a vehicle. APD Police Report for

Allen and Pugh at p. 238, attached as Exhibit A. Defendants Marcotte and Rombough, riding in a 2-

man unit, reported that they initiated a traffic stop on the vehicle while Defendants Duggar and

Manly-Williams used their patrol car to block the vehicle from the front. *Id.* at pp. 193-94, 226.

Defendants Marcotte and Rombough then reported that Allen exited the vehicle and began to run,

so they pursued him on foot. *Id.* at pp. 194, 227. During the foot pursuit, Defendant Marcotte

deployed his taser but reportedly missed Allen. Defendant Ramirez also joined the pursuit, first in

his vehicle and then on foot. *Id.* at pp. 220.

Eventually, Defendants Marcotte, Rombough, and Ramirez located Allen in a backyard at 4704

Blackburn Peak Court. *Id.* at pp. 220-21. Marcotte reported that he entered the backyard first,

verbally called out for other officers to assist, and then observed Allen come out from behind

bushes with his hands raised. *Id.* at p. 195. As Rombough and Ramirez joined Marcotte, Allen

complied with Marcotte's commands to walk down a hillside with his hands raised. *Id.* at pp. 195,

227. According to Marcotte's report, once Allen reached the bottom of the hillside which ended at a

raised retaining wall, he suddenly dropped his hands down towards the ground towards a thick

brush which Marcotte could not see into. *Id.* at p. 195. Rombough reported that Allen dropped both

of his arms and hunched over at his waist, while Ramirez reported that Allen took a seated position

behind the shrubs. *Id.* at pp. 221, 227. Claiming that he did not know if Allen was reaching for a

weapon or attempting to conceal himself, Rombough deployed a 40 mm less lethal weapon which

hit Allen in the right clavicle. *Id.* at p. 228. Marcotte and Ramirez then pulled Allen from the

retaining wall onto the ground. *Id.* at pp. 195, 221, 228.

According to Ramirez's, Rombough's, and Marcotte's reports, while Allen was on his stomach

on the ground, he kept his arms tucked underneath his body and ignored commands to put his arms

behind his back. *Id.* at p. 195, 222, 228. Ramirez reported that he punched Allen in the left side of

his ribs with a closed fist three times and delivered a knee strike to his left rib area. *Id.* at p. 222.

Ramirez then claimed that he heard Marcotte say that he had control of Allen's right hand, and that

Allen complied with Ramirez's subsequent command to give him his left hand. *Id.* Ramirez was

then able to place Allen in handcuffs. *Id.* Rombough reported that after watching Marcotte and

1   Ramirez struggle to pull Allen's arms out from underneath him for approximately ten to fifteen

2   seconds, Rombough used his 40 mm less lethal weapon's barrel as an impact weapon to strike Allen

3   twice in the right and left shoulders. *Id.* at p. 228. Rombough claimed that after the second strike,

4   Allen rolled over in pain, allowing Marcotte and Ramirez to gain control of his arms for

5   handcuffing. *Id.* Marcotte's report indicates that Rombough only struck Allen once in the right

6   shoulder, after which Allen "release[d] the tension on his arm" and allowed Marcotte to pull his arm

7   out for handcuffing. *Id.* at p. 195. Marcotte's and Rombough's reports make no mention of

8   Ramirez's three punches and knee strike, while Ramirez's report makes no mention of Rombough's

9   strikes to Allen's shoulders with the barrel of his 40 mm less lethal weapon.

10  Defendant Sergeant Koch was present during Allen's arrest but claimed in his report that while

11  he "could see Allen on the hillside in the rear yard of 4704 Blackburn Peak Way" and could hear

12  officers giving Allen commands, he did not witness the use of force since by the time he entered the

13  backyard, Allen had already been taken into custody. *Id.* at p. 236. Notably, Koch reported that

14  although he decided not to jump over the fence out of fear that Allen was armed, "for tactical and

15  officer safety reasons, [he] kicked out several fence boards along the side of 4700 Blackburn Peak

16  Way to gain access and visibility into the rear yard." *Id.*

17  Defendant Ramirez's use of force report for Trent Allen's March 31, 2021 arrest only indicates

18  that there were three punches and one knee strike to Allen's left rib area. Trent Allen Use of Force

19  Report at p. 3, attached as Exhibit E to Nisenbaum Dec. Defendant Sergeant Koch and Defendant

20  Lieutenant Fortner reviewed the use of force. *Id.* at pp. 4-5. Defendant Fortner sent the report back

21  to Defendant Ramirez with instructions to "[p]lease review the BT and Case Report regarding the

22  knee strikes. Please return after you have reviewed and updated." *Id.* at p. 4. After receiving and

23  reviewing the report again, Defendant Fortner recommended no action against the reporting officers

24  and determined that the use of force was consistent with agency best practices and policy. *Id.* at p.

25  5. Defendant Police Captain Anthony Morefield conducted the final review and took no action

26  against the reporting officers. *Id.*

27  Shortly after Trent Allen's arrest, Defendant Rombough exchanged the following text messages

28  with Defendants Marcotte, Manly-Williams, Duggar, Adams, Gerber, and Evans as well as United

States Postal Inspector Francisco Garcia and Rombough's wife, revealing that he had actually field goal-kicked Allen in the head, "muzzle thumped" him six times, and shot him in his throat with the 40 mm less lethal weapon:

<u>March 31, 2021 (between Rombough and Marcotte)</u>:

| 9:11 am | **ROMBOUGH**: | **I can [sic] believe he says he has no pain to his back lol** |
| 9:12 am | **MARCOTTE**: | **The nurse saw me smiling when he was making noises in pain and she started laughing [laughing emoji]** |
| 9:13 am | **ROMBOUGH**: | **Lmao** |
| 9:15 am | **ROMBOUGH**: | **What a bitch** |

Larry Wallace 14-page Report for Allen and Pugh Arrests at pp. 8-9, attached as Exhibit B.

<u>March 31, 2021 (between Rombough and his wife)</u>:

| 8:29 am | **ROMBOUGH**: | **Yeah 40 deployment** |
| 8:29 am | **ROMBOUGH**: | **Faggot got his ass whooped** |
| 9:09 am | **[UNKNOWN]**: | **Nice babe, another one for the mantle** |
| 9:10 am | **ROMBOUGH**: | **Murder suspect. In custody and that asshole made me run** |
| 9:10 am | [UNKNOWN]: | Good thing you fast honey |
| 9:11 am | ROMBOUGH: | He was way faster than us |
| 9:11 am | **ROMBOUGH**: | **We chased him through back yard** |
| 9:11 am | **[UNKNOWN]**: | **Lol, still got him, so not fast enough** |
| 9:12 am | **ROMBOUGH**: | **We managed to set up a perimeter and he got his ass whooped in the back yard and I field goal kicked his head** |
| 9:12 am | **[UNKNOWN]**: | **I thought that was a no no** |
| 9:13 am | **ROMBOUGH**: | **No we can do that just no chokes** |
| 9:13 am | **ROMBOUGH**: | **I tried to knock him unconscious. And he got muzzle thumped 6 times before he gave us his hands** |
| 9:24 am | [UNKNOWN]: | Glad you're havin fun babe |
| 9:25 am | ROMBOUGH: | It was nice after a very boring swat op. |
| 3:21 pm | ROMBOUGH: |  |

[Photo depicting Trent Allen in the hospital]

| 4:38 pm | **[UNKNOWN]:** | **You got him in the neck?!** |
| 4:43 pm | **ROMBOUGH:** | **Yup and another faggot in the butt** |
| 4:43 pm | ROMBOUGH: | 2 for the day |
| 4:49 pm | [UNKNOWN]: | Nice babe |

*Id.* at pp. 9, 12-13.

March 31, 2021 (between Rombough, Marcotte, Manly Williams, and Duggar):

| 8:45 am | **ROMBOUGH:** | **Lol I 40d him right next to his throat** |
| 8:46 am | **MARCOTTE:** | **Oh fuck** |
| 8:46 am | **MARCOTTE:** | **Cuz he ducked so fast** |
| 8:46 am | **ROMBOUGH:** | **Eh he deserved it** |
| 8:47 am | **ROMBOUGH:** | **Made us fucking run** |
| 9:22 am | **MANLY:** | **Is he dead** |
| 9:22 am | **ROMBOUGH:** | **Just his manliness** |
| 9:22 am | **MANLY:** | **[smile emojis]** |

*Id.* at pp. 9-10.

March 31, 2021 (between Rombough and Adams):

| 2:44 pm | **ROMBOUGH:** | **Bro my foot hurts lol** |
| 2:44 pm | **ADAMS:** | **Did you kick the guy?** |
| 2:44 pm | **ROMBOUGH:** | **Yup like a fucking field goal** |
| 2:44 pm | **ROMBOUGH:** | **Gotta stop kicking niggas in their head** |
| 2:45 pm | **ADAMS:** | **Oh shit!! And 40d. Fuck yeah** |
| 2:45 pm | **ROMBOUGH:** | **And about 6 muzzle thumps** |
| 2:45 pm | **ROMBOUGH:** | **He's gonna be sore** |
| 2:49 pm | **ADAMS:** | **Fuck yeah. I didn't realize that** |
| 2:50 pm | **ROMBOUGH:** | **Bro he's gonna be hurting fuck that guy** |
| 3:11 pm | **ADAMS:** | **I like your last comment lol** |
| 3:11 pm | **ADAMS:** | **Haha. I forgot that Koch wanted us to stop sending dumb shit. Oops** |
|  | **ROMBOUGH:** | **[*Laughed at* "Haha. I forgot that Koch wanted us to stop sending dumb shit. Oops"]** |

*Id.* at p. 10.

March 31, 2021 (between Rombough and Gerber):

| 12:52 pm | **ROMBOUGH:** | **Bro my foot hurts. Trents head is like a bowling ball** |
| 12:52 pm | **GERBER:** | **Haha!** |

*Id.* at p. 10.

March 31, 2021 (between Rombough and Defendant Sergeant Evans):

3:21 pm          ROMBOUGH:



[Photo depicting Trent Allen in the hospital]

| 3:37 pm | **EVANS**: | **You plugged him in the neck? Lol** |
|---------|------------|--------------------------------------|
| 3:37 pm | **ROMBOUGH**: | **He ducked** |
| 3:37 pm | **ROMBOUGH**: | **Lol** |
| 3:37 pm | **EVANS**: | **Sounds like it's his fault** |
| 3:38 pm | **ROMBOUGH**: | **So was the 6 muzzle thumps and me trying to kick his head over the fence** |
| 3:41 pm | **EVANS**: | **Lol all of my favorite things** |
| 3:41 pm | **ROMBOUGH**: | **Me too Brock salty and I in a backyard with no cameras lol** |

*Id.* at pp. 10-11.

March 31, 2021 (between Rombough and United States Postal Inspector Francisco Garcia):

| 3:10 pm | **ROMBOUGH**: | **I 40d and field goal kicked one that fled from us on foot today** |
|---------|---------------|---------------------------------------------------------------------|
| 3:11 pm | **GARCIA**: | **[laughing emoji]** |
| 3:12 pm | **ROMBOUGH**: | **Bro but my foot fucking hurts** |
| 3:16 pm | **ROMBOUGH**: | **[image depicting a referee on a field]** |

*Id.* at pp. 13-14.

## C. Defendant Rombough's Guilty Plea and Testimony in the Criminal Trial of Defendant Morteza Amiri

On January 14, 2025, Defendant Rombough plead guilty to Conspiracy Against Rights in violation of 18 U.S.C. § 241 and Deprivation of Rights Under Color of Law in violation of 18 U.S.C. § 242. Rombough Plea Agreement at pp. 1-2, attached as Exhibit F to Nisenbaum Dec. Rombough admitted that the elements of Conspiracy Against Rights are that "(1) there was a conspiracy between two or more persons to commit at least one crime as charged in the Indictment (namely, to injure, oppress, threaten, or intimidate residents of Antioch, California and the Northern

1   District of California in the free exercise or enjoyment of rights secured to them by the Constitution

2   or laws of the United States, to be free from the use of unreasonable force by a law enforcement

3   officer); and (2) [Rombough] became a member of the conspiracy knowing of at least one of its

4   objects and intending to help accomplish it." *Id.* at p. 2, lines 2-8. Rombough further admitted that

5   the elements of Deprivation of Rights Under Color of Law are that "(1) [Rombough] acted under

6   color of law; (2) [Rombough] acted willfully; and (3) [Rombough] deprived a victim of a right

7   secured or protected by the Constitution or laws of the United States." *Id.* at p. 2, lines 16-18.

8       As part of his guilty plea, Defendant Rombough admitted that the Government's statement of

9   the facts underlying his charges was true. *Id.* at p. 3, lines 2-3; Rombough Plea Hearing Transcript

10  at 29:23-30:7, attached as Exhibit G to Nisenbaum Dec. The Government's statement of the facts

11  included the following:

12      Defendant Rombough was employed as a police officer with the Antioch Police Department

13  beginning in approximately 2017. Rombough Plea Agreement at p. 3, lines 4-5, attached as Exhibit

14  F. Rombough and other APD officers, including Defendants Morteza Amiri and Devon Wenger,

15  received training at APD regarding the use of force, de-escalation, crisis intervention, and other

16  topics, including 40mm less lethal training and qualification. *Id.* at p. 3, lines 6-8. The 40mm less

17  lethal training advised APD officers that certain areas of the body are "potentially lethal" when

18  targeted by the 40mm less lethal launcher, including the head, neck, chest, groin area, and portions

19  of the back and lower back. *Id.* at p. 3, lines 9-12. Beginning in February 2019 and continuing

20  through approximately March 2022, Rombough "knowingly and willfully conspired and agreed

21  together with Amiri, Wenger, and other APD officers, to injure, oppress, threaten, and intimidate

22  residents of Antioch, California and the Northern District of California in the free exercise and

23  enjoyment of rights secured to them by the Constitution or laws of the United States, that is, to be

24  free from the use of unreasonable force by a law enforcement officer." *Id.* at p. 3, lines 14-19. As

25  part of the scheme to violate civil rights, Rombough communicated with Amiri, Wenger, and others

26  "about actual and intended uses of force, including about specific violent acts that constituted

27  excessive uses of force by a police officer against individuals in and around Antioch." *Id.* at p. 3,

28  lines 20-22.

Beginning in 2019, Rombough "discussed plans and intentions with Amiri, Wenger, and others to deploy excessive force–specifically, more force than was reasonably necessary to accomplish any legitimate law enforcement objective–and inflict bodily injuries to individuals in and around Antioch." *Id.* at p. 3, lines 22-25. As a further part of the scheme, Rombough "agreed with other APD officers, including Amiri and Wenger, to carry out such violent acts against individuals in and around Antioch even where the force was excessive, knowing that [their] actions constituted excessive uses of force by a police officer under color of law." *Id.* at p. 4, lines 5-8. Rombough and other APD officers, including Amiri and Wenger, "took any opportunity to find an excuse to deploy force against a subject," even when they knew that the force used was "more than reasonably necessary to accomplish any legitimate law enforcement objective," knowing that this approach resulted in their deployment of constitutionally excessive and unlawful uses of force that caused bodily injury. *Id.* at p. 4, lines 5-12.

As part of the scheme to violate civil rights, Rombough "communicated with other APD officers, including Amiri and Wenger, after specific deployments of excessive force and touted [their] applications of force." *Id.* at p. 5, lines 22-23. As a further part of the scheme, Rombough and other officers at APD, including Amiri and Wenger, "harbored and discussed racial animus and/or bias in relation to [their] police work, which impacted [their] approach to policing in an unlawful manner." *Id.* at p. 6, lines 15-17.

As a further part of the scheme, Rombough and other officers at APD, including Amiri and Wenger, "authored police reports that contained false or misleading statements, or material omissions, to suggest that the force [they] used was necessary or justifiable, and encouraged one other to do so. In truth and in fact, and as [they] well knew, [they] willfully used excessive force in numerous incidents." *Id.* at p. 6, lines 20-24. "For instance, during a March 2021 arrest of T.A., [Rombough] kicked T.A. in the head. [Rombough] subsequently texted others that 'my foot hurt[]' because [he] had kicked T.A.'s head 'like a field goal' and 'tr[ied] to kick [T.A.'s] head over the fence,' and also referred to T.A. using a racial slur. [Rombough] did not include this use-of-force in [his] police report, even though [he] was required to do so pursuant to APD policy." *Id.* at p. 6, line 24 to p. 7, line 1. Upon learning of their fellow officers' participation in incidents involving violent

acts that constituted excessive uses of force, Rombough and other APD officers, including Amiri and Wenger, "declined to intercede or report the incidents to certain APD superiors, including as required by APD policies. Instead, [they] encouraged one another to continue the scheme to deprive the individuals in and around Antioch of their constitutional rights." *Id.* at p. 7, lines 3-7.

On March 6, 2025, Defendant Rombough testified at Defendant Morteza Amiri's criminal trial in *United States v. Morteza Amiri*, No. 23-cr-000269-JSW (N.D. Cal. Aug. 16, 2023). Rombough testified that he "pled guilty to using unnecessary and unjustified use of force against a demographic, and violate civil rights, along with conspiracy to do that." Rombough Trial Testimony at 801:13-16, attached as Exhibit H to Nisenbaum Dec. Rombough also confirmed that the March 2021 incident referenced in the plea agreement referred to Plaintiff Trent Allen's arrest, in which Defendants Rombough, Brock Marcotte, and John Ramirez located Trent Allen in a backyard and Rombough deployed his 40 mm less lethal weapon and kicked Trent Allen in the head. *Id.* at 877:22-878:12. Rombough testified that he did not include his kick to Trent Allen's head in his police report, that he subsequently sent text messages to others about kicking Trent Allen's head, and that in some of the text messages, he used racial slurs to refer to Trent Allen. *Id.* at 878:13-879:5.

## III. ARGUMENT

### A. Legal Standard.

This Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of presenting the basis of its motion and identifying those portions of the record it believes show, together with affidavits, the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the burden shifts to the nonmoving party to show with specific evidence, not mere conclusory allegations, the existence of a genuine issue of disputed material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Summary judgment is appropriate if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (cleaned up). But in deciding a summary judgment motion, the Court must view the

evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

**B. Defendant Rombough is Collaterally Estopped from Relitigating the Issues Underlying his Guilty Plea.**

The doctrine of collateral estoppel prevents relitigation by the parties of issues actually litigated and necessarily decided in a prior action. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979). Collateral estoppel applies when the issues in the subsequent action are identical to those in the first action. *Id.* In the Ninth Circuit, the criteria for the application of collateral estoppel are: "(1) the prior conviction must have been for a serious offense so that the defendant was motivated to fully litigate the charges; (2) there must have been a full and fair trial to prevent convictions of doubtful validity from being used; (3) the issue on which the prior conviction is offered must of necessity have been decided at the criminal trial; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior trial." *Ayers v. City of Richmond*, 895 F.2d 1267, 1271 (9th Cir. 1990).

It is settled law in the Ninth Circuit that a guilty plea may be used to establish issue preclusion in a subsequent civil suit if an element of the crime to which the defendant pled guilty is at issue in the second suit. *See United States v. $31,697.59 Cash*, 665 F.2d 903, 904-06 (9th Cir. 1980); *United States v. Real Property Located at Section 18*, 976 F.2d 515, 519 (9th Cir. 1992). Defendant Rombough's convictions for Conspiracy Against Rights (violation of 18 U.S.C. § 241) and Deprivation of Rights Under Color of Law (violation of 18 U.S.C. § 242) were for serious offenses such that Rombough was adequately motivated to fully litigate the criminal charge. Violations of 18 U.S.C. § 241 and 18 U.S.C. § 242 are each punishable by a maximum of ten years in prison. Rombough Plea Agreement at p. 2, attached as Exhibit F; *see Real Property Located at Section 18*, 976 F.2d at 518 (finding that where a defendant pled guilty to a drug felony punishable by more than one year in prison, the conviction was for a serious offense).

There can be no dispute as to the validity of Rombough's conviction, or as to whether he was a party to the criminal prosecution, as his guilty plea admitted the truth of all the elements charged in each offense. *See Real Property Located at Section 18*, 976 F.2d at 518. As such, his guilty plea established the validity of the underlying facts for purposes of collateral estoppel. *See id.* Namely, the underlying facts of Defendant Rombough's convictions that he agreed were true conclusively

1  resolve the issues of whether he and other Antioch Police Department officers used excessive force

2  and racially discriminated against Trent Allen during his March 31, 2021 arrest and knowingly and

3  willfully conspired to do so as part of a scheme to injure, oppress, threaten, and intimidate residents

4  of Antioch, California in the free exercise and enjoyment of their constitutional right to be free from

5  the use of unreasonable force by a law enforcement officer. Rombough Plea Agreement at pp. 3, 6-

6  7, attached as Exhibit F. The guilty plea necessarily required a determination of these issues as they

7  established that Defendant Rombough was guilty of Conspiracy Against Rights in violation of 18

8  U.S.C. § 241 and Deprivation of Rights Under Color of Law in violation of 18 U.S.C. § 242.

9      Thus, collateral estoppel precludes Defendant Rombough from disputing the facts he admitted

10  to in his guilty plea. As such, the Government's statement of the facts underlying his plea is

11  undisputed for summary judgment purposes.

**C. Defendant Rombough's Guilty Plea Establishes that he Used Excessive Force Against
Trent Allen in Violation of his Fourth Amendment Rights.**

13      Defendant Rombough's admissions in his plea agreement can properly be considered non-

14  hearsay party admissions. Fed. R. Evid. 801(d)(2); *S.E.C. v. Hilsenrath*, 406 Fed.Appx. 197, 200

15  (9th Cir. 2010). As part of his plea agreement, Defendant Rombough admitted that as a part of an

16  overarching conspiracy to violate civil rights, he and other officers at the Antioch Police

17  Department authored police reports that contained false or misleading statements, or material

18  omissions, to suggest that the force used was necessary or justifiable, and encouraged each other to

19  do so, even though they knew that they "willfully used excessive force in numerous incidents,

20  including those identified in the Indictment." Rombough Plea Agreement at p. 6, lines 20-24,

21  attached as Exhibit F. Rombough admitted that the March 31, 2021 arrest of Trent Allen was one

22  such instance of his and other officers' conduct in authoring police reports that containing material

23  omissions to make it appear as though the force used was justifiable, despite knowing that they

24  willfully used excessive force.

25      Rombough specifically admitted that he "kicked [Trent Allen] in the head" and texted others

26  that "my foot hurt[]" because he had kicked Trent Allen's head "like a field goal" and "tr[ied] to

27  kick [Trent Allen's] head over the fence." *Id.* at p. 6, lines 24-26. Rombough further admitted that

28  he did not include this use of force in his police report, even though Antioch Police Department

policy required him to do so. *Id.* at p. 6, lines 26-27. Although the plea agreement referred to the

subject involved in the March 2021 incident as "T.A.," Rombough confirmed in his testimony during Defendant Amiri's criminal trial that this incident involved Trent Allen. Rombough Trial Testimony at 877:22-24, attached as Exhibit H.

Defendant Rombough has thus admitted that he knowingly and willfully used excessive force against Trent Allen in his March 31, 2021 arrest by unnecessarily and unjustifiably kicking him in the head. Viewing the facts in the light most favorable to defendants, there is no genuine dispute of material fact that Defendant Rombough violated Trent Allen's Fourth Amendment right to be free of excessive force. The Court should grant Plaintiff Trent Allen summary judgment on his Fourth Amendment unreasonable seizure claim against Defendant Rombough.

**D. Defendant Rombough's Admissions Demonstrate that he Racially Discriminated Against Trent Allen in Violation of the Fourteenth Amendment as his Decision to Use Excessive Force was Based Primarily on Allen's Race.**

As part of his plea agreement, Defendant Rombough admitted that he and other APD officers, including Defendants Amiri and Wenger, "harbored and discussed racial animus and/or bias in relation to their police work, which impacted their approach to policing in an unlawful manner." Rombough Plea Agreement at p. 6, lines 15-17, attached as Exhibit F. Defendant Rombough also testified in Defendant Amiri's criminal trial that he "pled guilty to using unnecessary and unjustified use of force *against a demographic*, and violate civil rights, along with conspiracy to do that." Rombough Trial Testimony at 801:13-16, attached as Exhibit H (emphasis added). Rombough's testimony confirms that the demographic in question is the Black community as he admitted to sending text messages with racially derogatory language, such as "gorillas," to refer to Black people, including a text message stating, "Oh, well. One less gorilla procreating" in response to a message from Defendant Amiri about the possibility that his K-9 could have killed a Black individual. *Id.* at 891:1-19, 929:7-930:23.

Defendant Rombough admitted, as a part of his plea agreement, that in his text messages to other officers about the force he used against Trent Allen, a Black man, during his March 31, 2021 arrest, he referred to Allen using a racial slur. Rombough Plea Agreement at p. 6, lines 24-26, attached as Exhibit F. The text message in question specifically stated, "Gotta stop kicking niggas in their head." Larry Wallace's Investigation Report for Allen and Pugh Arrests at p. 10, attached as Exhibit B. Other text messages that Defendant Rombough sent during the investigation of the

March 9, 2021 shooting to reference Allen, Pugh, and other Black individuals were replete with racially derogatory language, such as "number 2s," "They all look the same," and "I feel like I'm at the zoo." *Id.* at pp. 5-6, 8. Defendant Rombough's admissions thus establish that Plaintiff Trent Allen's arrest was one of many instances in which Rombough's racial animus and/or bias against Black people caused him to use more force against a Black subject than necessary or justified. As such, the Court should grant Plaintiff Trent Allen summary judgment on his Fourteenth Amendment discriminatory enforcement claim against Defendant Rombough.

**E.    Defendant Rombough's Guilty Plea Establishes that he Conspired with Other Antioch Police Department Officers to Violate Trent Allen's Constitutional Right to be Free from Excessive Force by Law Enforcement Officers.**

As part of his plea agreement, Defendant Rombough pled guilty to Conspiracy Against Rights in violation of 18 U.S.C. § 242, agreeing that the elements of this crime are that: "(1) there was a conspiracy between two or more persons to commit at least one crime as charged in the Indictment (namely, to injure, oppress, threaten, or intimidate residents of Antioch, California and the Northern District of California in the free exercise or enjoyment of rights secured to them by the Constitution or laws of the United States, to be free from the use of unreasonable force by a law enforcement officer); and (2) [Defendant Rombough] became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it." Rombough Plea Agreement at p. 2, lines 2-7, attached as Exhibit F. Rombough admitted that from February 2019 to approximately March 2022, he "knowingly and willingly conspired and agreed together with Amiri, Wenger, and other APD officers, to injure, oppress, threaten, and intimidate residents of Antioch, California and the Northern District of California in the free exercise and enjoyment of rights secured to them by the Constitution or laws of the United States, that is, to be free from the use of unreasonable force by a law enforcement officer." *Id.* at p. 3, lines 14-19. As discussed above, Rombough further admitted that *as a part of the conspiracy*, he and other APD officers, including Defendants Amiri and Wenger, authored police reports containing false or misleading statements, including material omissions to suggest that the force they used was necessary or justifiable, even though they knew that they willfully used excessive force in numerous incidents. *Id.* at p. 6, lines 20-24. Rombough admitted that his omission of his use of force in kicking Trent Allen in the head during his March

31, 2021 arrest from Rombough's police report was an example of this conduct that was a part of the conspiracy. *Id.*

Plaintiffs contend that, amongst other Antioch police officers, Defendants Brock Marcotte and John Ramirez were also part of the conspiracy with Defendant Rombough to violate Plaintiff Trent Allen's constitutional rights. Both Marcotte's and Ramirez's police reports indicate that they were in close proximity to Rombough as they all used force against Allen to arrest and handcuff him but omit any mention of Rombough's kick to Allen's head, six "muzzle thumps" to Allen's shoulders with the barrel of his 40 mm less lethal weapon, and 40 mm deployment to Allen's neck (which Rombough admitted is a "potentially lethal" area according to Antioch Police Department training). *Id.* at p. 3, lines 9-12; APD Police Report for Allen and Pugh at pp. 193-97, 219-23, 225-31, attached as Exhibit A. While it seems indisputable that these individual defendants were in fact a part of the conspiracy admitted by Defendant Rombough, Plaintiffs recognize that they were not parties to Rombough's plea, admissions, or testimony, and that collateral estoppel would not apply under these circumstances to them. However, the admitted conspiracy must include others, who Plaintiffs identify as Does for purposes of the instant motion.

Given Defendant Rombough's admissions, there is no genuine dispute of material fact that Rombough conspired with other Antioch Doe officers to violate Plaintiff Trent Allen's Fourth Amendment right to be free of excessive force. The Court should therefore grant Plaintiff Trent Allen summary judgment on his conspiracy claim against Defendant Rombough and Doe Defendant Officers.

## IV. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request this Court to grant Plaintiff Trent Allen's motion for partial summary judgment against Defendant Rombough and Doe Defendant Officers.

## V.

DATED: March 31, 2025                    **BURRIS NISENBAUM CURRY & LACY LLP**

                                    */s/ Ben Nisenbaum*
                                    Benjamin Nisenbaum
                                    John L. Burris
                                    James Cook
                                    Katherine MacElhiney
                                    Krithi Basu
                                    Attorneys for Plaintiffs

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>PROOF OF SERVICE</u>

I, Krithi Basu, declare as follows:

I am over the age of 18 years and not a party to this action. My business address is 7677 Oakport Street, Suite 1120, Oakland, CA 94621. I caused the foregoing:

- Plaintiff Trent Allen's Motion for Partial Summary Judgment against Defendant Rombough and Doe Defendant Officers

to be served on the following parties in the following manner:

Mail [ ]       Overnight Mail [   ]       Personal Service [   ]       Email [X]

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
TONY M. SAIN
TORI L. N. BAKKEN
ABIGAIL J. R. McLAUGHLIN
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900
Abigail.McLaughlin@lewisbrisbois.com
Tony.Sain@lewisbrisbois.com
Tori.Bakken@lewisbrisbois.com

CITY OF ANTIOCH, TAMMANY BROOKS, TONY MOREFIELD, STEVEN FORD, SCOTT DUGGAR, TOM LENDERMAN, LOREN BLEDSOE, THOMAS SMITH, ROBERT GERBER, KYLE HILL, RYAN GEIS, JONATHAN ADAMS, KWAME REED, CONSTANTINE KAWALYA, RYAN DUFF, JACOB KING, ASHLEY LUNDIN, GARY LOWTHER, KYLE SMITH, ROBERT GREEN, JONATHAN DOWNIE, DUSTIN DIBBLE, KEVIN TJAHJADI, STEVEN MILLER, RICK HOFFMAN, JIMMY WISECARVER, JOHN FORTNER, DEVIN EIGARD, GUSTAVO JIMENEZ, DANIEL NAVARRETTE, AND RYAN MCDONALD

**ALLEN, GLAESSNER, HAZELWOOD, & WERTH LLP**
DALE ALLEN
KELSEY MOE
180 Montgomery Street, Suite 1200
San Francisco, CA 94104
Telephone: (415) 697-2000
Fax: (415) 813-2045
dallen@aghwlaw.com
kmoe@aghlaw.com

ATTORNEYS FOR DEFENDANT:
ERIC ROMBOUGH

1

**McNAMARA, AMBACHER, WHEELER,**          ATTORNEYS FOR DEFENDANT:
**HIRSIG & GRAY LLP**                     TIMOTHY MANLY WILLIAMS

2  NOAH BLECHMAN
   JOHN SWAFFORD

3  SABRINA AHIA
   3480 Buskirk Avenue, Suite 250

4  Pleasant Hill, CA 94523
   Telephone: (925) 939-5330

5  Fax: (925) 939-0203
   noah.blechman@mcnamaralaw.com

6  sthorne@mcnamaralaw.com

7

8  **RIDLEY MASTER**                      ATTORNEYS FOR DEFENDANT:
   TODD MASTER                            MORTEZA AMIRI
   SHANGYAYI LIU

9  1900 O'Farrell Street, Suite 280
   San Mateo, CA 94403

10 Telephone: (650) 365-7715
   Fax: (650) 364-2597

11 tmaster@hrmrlaw.com
   sliu@hrmrlaw.com

12 fkelly@hrmrlaw.com

13

14 **CASTILLO MORIARTY TRAN AND**          ATTORNEYS FOR DEFENDANT:
   **ROBINSON LLP**                        BRAYTON MILNER
   JOHN ROBINSON

15 EDWARD VIERA-DUCEY
   75 Southgate Avenue

16 Daly City, CA 94015
   Telephone: (415) 213-4098

17 jrobinson@cmtrlaw.com
   evieira-ducey@cmtrlaw.com

18 kkarpenske@cmtrlaw.com

19

20 **RIVERA HEWITT PAUL LLP**             ATTORNEYS FOR DEFENDANT:
   JONATHAN B. PAUL                       DEVON WENGER
   WENDY MOTOOKA

21 11341 Gold Express Drive, Suite 160
   Gold River, CA 95670

22 Telephone: (916) 922-1200
   jpaul@rhplawyers.com

23 wmotooka@rhplawyers.com
   mgreen@rhplawyers.com

24

25

26

27

28

1

**DAVIS, BENGTSON & YOUNG, APLC**
Steven B. Dippell

2  Eric J. Bengston
1960 The Alameda, Suite 210

3  San Jose, CA 95126
Telephone: (408) 261-4206

4  Fax: (408) 985-1814
sdippell@dby-law.com

5  eric@dby-law.com
mnery@dby-law.com

6

7  **CLAPP, MORONEY, VUCINICH, BEEMAN and SCHELEY**

8  KENNY C. PARK
JEFFREY M. VUCINICH

9  1730 S El Camino Real, Suite 500
San Mateo, CA 94402

10  Telephone: (650) 989-5400
Facsimile: (650) 989-5499

11  JVucinich@clappmoroney.com
kpark@clappmoroney.com

12

**LONGYEAR & LAVRA, LLP**

13  NICOLE M. CAHILL
VAN LONGYEAR

14  ASHLEY M. CALVILLO
555 University Avenue, Suite 280

15  Sacramento, CA 95285
Telephone: (916) 974-8500

16  Facsimile: (916) 974-8510
longyear@longyearlaw.com

17  cahill@longyearlaw.com
calvillo@longyearlaw.com

18  gonzales@longyearlaw.com

19

**COLLINS + COLLINS LLP**

20  ROBERT C. LEIFORD III
MICHAEL L. WRONIAK

21  KATHLEEN A. HUPKE
750 The City Drive, Suite 400

22  Orange, CA 92868
Telephone: (714) 823-4100

23  Facsimile: (714) 823-4101
RLeiford@ccllp.law

24  MWroniak@ccllp.law
KHupke@ccllp.law

25

26

27

28

ATTORNEYS FOR DEFENDANT:
JAMES STENGER

ATTORNEYS FOR DEFENDANT:
JOHN RAMIREZ

ATTORNEYS FOR DEFENDANT:
JOSHUA EVANS

ATTORNEYS FOR DEFENDANT:
AARON HUGHES

1    **LITIGATION ENGINEERED**                    ATTORNEYS FOR DEFENDANT:
     CHESTER E. WALLS                               MATTHEW NUTT
2    1300 E. Shaw Avenue, Suite 125
     Fresno, CA 93710
3    Mobile: (559) 593-8707
     Telephone: (559) 221-2771 ext. 104
4    Facsimile: (559) 221-2775
     cew@litg-engr.com
5    drp@litg-engr.com

6

7    **SWINGLE, VAN EGMOND & HEITLINGER**          ATTORNEYS FOR DEFENDANT:
     BRADLEY SWINGLE                                BROCK MARCOTTE
     GRAHAM SCOTT
8    P.O. Box 3287
     1207 I Street
9    Modesto, CA 95354
     Telephone: (209) 522-2211
10   Facsimile: (209) 522-2980
     bswingle@svhlaw.com
11   graham@svhlaw.com

12

13        I declare under penalty of perjury that the foregoing is true and correct and that this
     declaration of service was executed in Oakland, California, on March 31, 2025.
14

15                                                     Signed: /s/ *Krithi Basu*

16

17

18

19

20

21

22

23

24

25

26

27

28